

RECEIVED
NOV 29 2004
2 9 2004

04-12025 MLW
20

1    that sentence to run concurrently with Indictment No.

2    96977.  The Court further orders that five years and

3    nine months of that sentence to be served

4    concurrently with Indictment No. 96977, the balance

5    to be suspended, and you be placed on probation for a

6    term of three years.

7        As to Indictment No. 96979, receiving

8    stolen property, and 96980, possession of burglarious

9    tools, the Court will place those on file in

10   receiving your guilty plea with your consent.  Do you

11   consent?

12       THE DEFENDANT:  Yes.

13       MS. CLARKE:  Your Honor, as to the

14   victim/witness fee, I would ask the Court to consider

15   perhaps staying that until he is actually on

16   probation so that he can pay it then.  He is going to

17   be in custody and does not have a job, and it is

18   unlikely that he will be able to earn that amount of

19   money while he is serving his sentence.

20       THE COURT:  Did he have a victim/witness

21   fee in Essex County?

22       THE DEFENDANT:  They waived it until after

23   I get out.

24       MS. CLARKE:  What he is saying is that

18

THE COURT: No, then he was on the default, but then bail was set.

MS. CLARKE: What happened, Your Honor, was that he was released to you, I think, November 14th or 15th. He gets arrested, according to the probation sheet, and he is in Peabody on November 23rd. I believe that is the day that I just said.

THE COURT: All right. And then when does this court set bail?

MS. CLARKE: He was defaulted in December, but he was already up in Essex being held. Bail wasn't actually set here. We didn't get him in here until February 24th.

MR. CASEY: We were unaware that he was arrested in Essex.

THE COURT: Right.

MS. CLARKE: So, it just shy of three months that he is loosing.

THE COURT: So, he doesn't get credit for that three months, right?

I'm acknowledging the fact that he was in Essex while not on bail here; nevertheless, he wouldn't get credit for that time. I think it is appropriate to give him credit on this sentence, so I

16

1    has a very short leash.

2         He received an eight to ten with five

3    years to be served. He also received a two and a

4    half to six year sentence suspended on and after

5    that, so he has got a very short leash for a very

6    long time after his release. I think that is what he

7    was trying to tell the Court. He knows that if he

8    does anything wrong he will be back in prison on the

9    balance of the eight to ten, as well as with the two

10   and a half to six on and after that.

11        THE COURT: Counsel, let me ask you this.

12   On the amount of time that he was given credit for

13   his Essex sentence, even if this Court were to give

     him credit for all the time in which he was in

     custody while under a Norfolk bail but not serving

     another sentence, how much time difference is that?

          MS. CLARKE: I think if the Court gave him

     the credit, if he got all of the jail credit from

     before either sentence, we would add probably two or

     three months to what he received in Essex.

          THE COURT: When did he get the Essex

     sentence?

          MS. CLARKE: He got the Essex sentence at

     the end of September -- I'm sorry, it was September

14

Your Honor, and he has told me he wishes to plead guilty. I don't think he has any reservations about it.

THE COURT: Are you satisfied there is a basis in the facts for the plea?

MS. CLARKE: Yes.

THE COURT: Very well. Mr. Clerk, I find that the plea is knowingly and voluntarily offered and that there is a basis in the facts for the plea.

You can join your attorney at counsel table.

(Defendant steps down.)

THE COURT: Yes, sir.

THE DEFENDANT: In my other case, the judge gave me the sentence on special circumstances.

THE COURT: Yes.

THE DEFENDANT: Yeah, because there is no chance of me getting a parole, none.

THE COURT: That's right.

THE DEFENDANT: There is no chance of getting a minimum or pre-release, nothing.

THE COURT: I think that's why the judge gave you the split sentence.

THE DEFENDANT: He gave me the five for

12

1    to say, through a window. In picking out Mr.

2    Glawson, she did say that she was sure, in fact, that

3    Mr. Glawson was the individual.

4    (By the Court)

5    Q    Those are the facts that the Government feels they

6    could present at trial. They feel if those facts

7    were believed by the jury, there would be a

8    sufficient basis for that jury to find you guilty on

9    all of these indictments which includes the two

10    breaking and enterings in the daytime, receiving

11    stolen property, and possession of burglarious tools

12        Is there anything you heard that you

13    disagree with, or anything else you would like to

14    tell me about these cases?

15    A    I don't understand the question. What do you mean by

16    that?

17    Q    The Government's lawyer has just told you what the

18    evidence would be against you at trial.

19    A    Right.

20    Q    Those are the facts from the standpoint of the

21    Government. I want to know if you disagree.

22    A    Well, I don't understand. You asked me to plead

23    guilty down there a minute ago, and then I don't

24    understand all that change of circumstances.

10

out the second floor window onto the first floor roof. A pair of sunglasses was found in a small bag similar to the one that Officer Nelson saw that was on the apartment floor. A check indicated that it had an answering machine, jewelry, and a crowbar. It is my understanding that the crowbar was not the property of any resident there.

The bag was secured and processed later. Another officer observed a motor vehicle parked close by on Route 9 with a female inside. Officer Nelson approached this individual. At one point she identified herself as Monique Paris. She produced an accident report. She produced a wallet that had the defendant, Mr. Glawson's, name and residence phone number. Mr. Glawson was known to some of the Brookline Police Officers.

The woman, who has since deceased as a result of drug overdose, I'm told, told some story about her having picked up the car from her boyfriend, Mr. Glawson.

The police called Mr. Glawson's residence and spoke with a person who identified himself as his father. That individual said that the defendant had departed the home that morning and wasn't home, which

8

1    picked up and were given bail in another county.

2    Then, you came back to Norfolk and Norfolk gave you a

3    bail.  That was behind that bail.

4  A    Yeah.

5  Q    I would give you credit for Norfolk, even though you

6    were first held by the other place.  It's just a

7    matter of fairness.  I'm not doing for you what I

8    wouldn't do for everybody else.

9  A    Right.

10  Q    You understand that.

11  A    I understand.

12  Q    Insofar as other good time, that's jail time.

13  A    Right.

14  Q    As far as good time, you would earn for good behavior

15    the same amount.  These events happened before the

16    law changed, so you would have the full opportunity

17    for earning good time on this case.

18  A    Yes.

19        THE COURT:  May I hear from the

20  Commonwealth some facts that would support this plea?

21        MR. CASEY:  On July 14th of 1993 at

22  approximately 1:40 p.m., a resident of 485 Heath

23  Street in Brookline called the police to report

24  suspicious noises coming from her neighbor's

6

1          If the case were tried before a judge

2     without a jury, the judge would have to be convinced

3     of guilt beyond a reasonable doubt.

4          If you had a trial, you would have the

5     right to face your accusers, to have your lawyer

6     question each and every witness appearing against

7     you, a right to have your lawyer present evidence in

8     your favor, and at your own trial you would have the

9     right to testify or to elect not to testify.  If you

10    elected not to testify, the jury would be told that

11    they could not hold that against you, and the judge

12    would not hold that against you.

13         If I accept your pleas of guilty, it means

14    that the only thing left would be for me to determine

15    what the appropriate punishment shall be.  Do you

16    understand that?

17  A  Yes, Your Honor.

18  Q  I was told that you are now serving a sentence of

19    eight to ten years, five years to be served, the

20    remainder suspended for a period of time.

21         Your lawyer asked me if I would be willing

22    to do two things:  No. 1, to give you a concurrent

23    sentence in this case; and No. 2, regardless of what

24    the sentence is, to give you credit for any time that

4

talk with your lawyer in private whenever you want
to.

What is your full name?

A  Richard David Glawson.

Q  How old are you?

A  I'm 27.

Q  Where were you born?

A  Boston.

Q  And where were you raised?

A  In Brookline.

Q  How far did you go in school?

A  Sixth grade.

Do you have any difficulty understanding the English
language?

No.

Have you had any difficulty in communicating with
your lawyer?

No.

You are an American citizen?

Yes.

And what is the status of your health today?

All right.

Are you under the care of any doctor or any therapist
for any medical, mental, or emotional problem?

1-2

## A P P E A R A N C E S

**ROBERT COSGROVE, Esquire**
**Assistant District Attorney**
**Norfolk Superior Court**
**Washington Street**
**Dedham, Massachusetts  02026**
         FOR:   The Commonwealth


**LARRY J. COLBY, Esquire**
**Box 7420**
**Lowell, Massachusetts  01852**
     FOR:   The Defendant


**STEVEN A. KOENIG, Probation Officer**
**(Norfolk County Probation Department)**
**20 Eastbrook Road**
**Suite   101**
**Dedham, Massachusetts  02026**
         FOR:   The Commonwealth

1-15

1   was filed on Number 96977.  And an appeal went

2   forward alleging certain defects in the

3   probation surrender proceedings.  Whether those

4   were defects or were not defects, is neither

5   here nor there at the moment because that was

6   never adjudicated.  What was adjudicated was the

7   fact that 96977 was initially an illegal

8   sentence.

9         If the Defendant had been

10  notified at the time -- and this is not blaming

11  anybody for what was a clerical error -- he

12  would have had the opportunity to by now have an

13  appeal, and have a decision on, the validity of

14  that probation surrender.

15         So one can -- if the Court

16  wishes, one can mark the papers non pro tunc or

17  however that he was surrendered on 96978, if

18  that's the Court's determination.

19         But I don't know how the Court

20  can put the Defendant back in the position of

21  having his appeal non pro tunc, because it's

22  already gone up, been decided without reference

23  to 96978, and he's still being held.

24         That's why I'm still of the view,

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

1~13

1    the sentence imposed.

2                    THE COURT:    Okay, so how much of

3    that imposed sentence has been served so far?

4                    MR. KOENIG:    He's been in

5    custody since 6/2/98.

6                    THE COURT:    Okay.  So anything

7    further you want to say?

8                    MR. KOENIG:    Not at this point,

9    Your Honor.

10                    THE COURT:    Okay, Mr. Cosgrove?

11                    MR. COSGROVE:    I guess I don't

12    come to this argument, Your Honor, with

13    particularly clean hands.  That's probably not

14    entirely the correct term, but attached to my

15    brother's memorandum is a letter that I sent to

16    the Appeals Court in which I expressed the

17    opinion that the Defendant was never surrendered

18    on 96978.

19                    THE COURT:    I didn't hear what

20    you just said, Mr. Cosgrove.

21                    MR. COSGROVE:    I said attached to

22    my brother's memorandum is a letter which I sent

23    to the Appeals Court expressing the opinion that

24    the Defendant was never surrendered on the

Volume:     1
Pages: _    1-18
Exhibits:   NONE

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss                    SUPERIOR COURT DEPARTMENT


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                    \*
COMMONWEALTH OF MASSACHUSETTS,      \*
                                    \*.
            VS                      \*    Criminal Business
                                    \*
      RICHARD GLAWSON               \*    No. 107073
                                    \*          107074
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


BEFORE:   The Honorable Elizabeth Butler, J.

PLACE:    Norfolk Superior Courthouse
          650 High Street
          First Criminal Session
          Dedham, Massachusetts

DATE:     Thursday, July 22, 1999

TIME:     11:30 a.m.

JACQUES COURT REPORTING SERVICES
Professional Court Reporters
Seven Pecksuot Road
North Weymouth, Massachusetts 02191
(781) 337-4447

NORFOLK COUNTY
MAR 14 2001
RECEIVED & FILED

matter of due process, a defendant is entitled, among other things, to written notice of the claimed violations of probation." Commonwealth v. Faulkner, 418 Mass. 352, 360 (1994). This includes notice of which indictment and which sentence imposed thereon are the subject of the revocation hearing. Indeed, this case reflects problems similar to the misnumbering problems that were addressed in Faulkner, and illustrates the mixup in process and procedure that follows when a notice of surrender lists the wrong indictment numbers, which are mismatched with the wrong sentences on which a probation surrender is noticed and probation revocation ordered. It is not enough to say, as the motion judge found, that the indictments were related. Each indictment stands as a separate crime, with markedly different penalties. While a probation surrender hearing is, of course, not the same as trial on an indictment -- nor does the same panoply of procedural due process apply -- it is still quite apt to compare this mixup to trial on a wrong, albeit related, indictment. There is no question that such a trial would be constitutionally deficient. So too here, it is

---

to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation] . . . ." 407 Mass. at 113, quoting from Gagnon v. Scarpelli, 411 U.S. at 786, quoting from Morrissey v. Brewer, 408 U.S. at 489.

loss of liberty entailed is a serious deprivation requiring that the [probationer] be accorded due process." Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). See generally Morrissey v. Brewer, 408 U.S. 471 (1972).

The motion judge (who did not preside over the revocation hearing) denied the motion on the ground that "[a]fter a hearing and review of all materials, the defendant was provided sufficient notice that the probation violation was on matters #96977 and #96978, both from [the] prior violation notices and from the proceedings on June 2, 1998. An oversight by the clerk in introducing the case resulted in confusion only after the fact. Accordingly the motion is denied." We cannot agree, as the effect of the miscitation of the indictment -- albeit on the surface a clerical error -- was more than that because, in the ensuing proceedings, due process rights were substantively and negatively affected.[6] At the hearing, the clerk announced the matter to be determined as follows: "I have a probation matter, Docket No. 96977, the Commonwealth versus Richard Glawson." The probationary term imposed on the 78 felony indictment was not mentioned at all. The docket number cited on the transcript of the revocation hearing is in accord, only citing "Norfolk, ss. No

---

[6] Generally, if the matter is simply a clerical error, that may be corrected. "If there was error, the judge could have corrected it on his own, or either party could have made an appropriate motion." Commonwealth v. Faulkner, 418 Mass. 352, 358 n.7 (1994). Here, that option is not available because the entire record reflects that the 78 felony indictment was not before the court at all.

indictment to eight to ten years at M.C.I. Cedar Junction, with five years and nine months to serve, the balance suspended, and probation of three years. This sentence ran concurrent with the sentence on the 77 misdemeanor indictment.[4]

On April 26, 1997, the defendant was released on probation from the State prison sentence. After his release, the defendant failed to report to the probation department as required, and in addition, there were criminal charges filed against him in Massachusetts and in another State. Accordingly, on April 28, 1998, a notice of hearing on a probation surrender issued. The surrender notice recited that the revocation hearing concerned the probation terms and conditions imposed on "96977 B&E DT," which is the 77 misdemeanor indictment. The revocation hearing was held on June 2, 1998. The judge found the defendant in violation of his probation, and ordered that he be committed to serve the remainder of the eight to ten year prison sentence.[5]

---

[4] The Superior Court docket on the 77 misdemeanor indictment states that the sentence imposed was eight to ten years M.C.I. Cedar Junction with five years and nine months to serve, the balance suspended, and probation of three years -- the sentence to run "concurrent with sentence now serving." The sentence appears to be either a clerical error or a sentencing error since such a sentence would be beyond the statutory maximum for the 77 misdemeanor under G. L. c. 266, § 16A. However, because the two sentences imposed on October 4, 1994, for the 77 misdemeanor and 78 felony indictments ran concurrently, and given the disposition in this appeal vacating the probation revocation, we need not address this issue, which may be the subject of a motion to correct the docket in the Superior Court.

[5] We note that "the decision to revoke the defendant's probation could have an impact on any future criminal proceedings against him." Commonwealth v. Streeter, 50 Mass. App. Ct. 128,



COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

00-P-503

COMMONWEALTH

<u>vs</u>.

RICHARD GLAWSON.

## <u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

This case arises out of a probation revocation. The defendant appeals from the denial of his motion for release from unlawful restraint under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979).[1]  We reverse.

This is the second appeal arising out of defects in the probation surrender notice and the ensuing revocation hearing held pursuant to that flawed notice. The first appeal is reported as <u>Commonwealth</u> v. <u>Glawson</u>, 47 Mass. App. Ct. 1102 (1999).[2]  The case originated with two indictments to which the

---

[1] <u>Commonwealth</u> v. <u>Christian</u>, 429 Mass. 1022 (1999), held that a rule 30(a) motion is not the "preferred route" for appellate review to challenge the validity of a probation revocation order. However, the court noted an exception: "Rule 30(a) is the appropriate avenue for relief only where the defendant is not challenging the probation revocation order itself, but rather the sentence imposed in consequence of the order."  <u>Id</u>. at 1023.  This case falls within that rubric.

[2] For ease of reference, the first appeal shall be cited as <u>Glawson I</u> and this appeal as <u>Glawson II</u>.  There is a third appeal, <u>Commonwealth</u> v. <u>Glawson</u>, 51 Mass. App. Ct. 1113 (2001), affirming, pursuant to Rule 1:28, the Superior Court's denial of the defendant's motion to withdraw his guilty pleas.

Drf 3 Glawson 00-503 (from edit 10-11-01)

[-Exibit- C ]

(C1)

1-of-2

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

98-P-2197

COMMONWEALTH

vs.

RICHARD GLAWSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

The Commonwealth through the office of the District Attorney
for the Norfolk District has confessed error in the sense of
acknowledging that the sentence imposed on the defendant on
indictment #96977 alleging breaking and entering in the daytime
with intent to commit a misdemeanor "was beyond the power of the
Superior Court." See letter of Assistant District Attorney,
Robert C. Cosgrove, dated March 3, 1999. Accordingly, we vacate
the finding that the defendant violated his probation with
respect to his sentence on indictment #96977 together with the
revocation of probation and imposition of sentence on that
indictment made on June 2, 1998 (Appendix B). The sentence
imposed on that indictment is deemed served. The rescript in the
matter is to issue forthwith.

So ordered.

By the Court (Jacobs, Gillerman &
Greenberg, JJ.),

Clerk

Entered: June 2, 1999

96978 - Page 3

## DOCKET ENTRIES CONTINUED

| | | |
|---|---|---|
| 3. | 1999 July 1 | Defendant's motion for release from unlawful restraint |
| | 1999 July 23 | Defendant's motion for release from unlawful restraint - substituted original pleading per order of Court - After a hearing and review of all materials, the defendant was provided sufficient notice that the probation violation was on matters #96977 and 96978, both from prior violation notices and from the proceedings on June 2, 1998. An oversight by the clerk in introducing the case resulted in confusion only after the fact. Accordingly, the motion is denied (Butler, J) notice sent |
| 4. | 1999 Aug. 17 | Notice of appeal re: denial of motion for release from unlawful restraint |
| 5. | 1999 Aug. 23 | Notice of service of notice of appeal |
| 6. | 1999 Aug. 23 | Order for preparation of transcript Robert Jacques, court reporter |
| | 1999 Sept. 2 | Motion for court order to compell the prosecution to provide a copy of the grand jury minutes (96977 |
| | 1999 Sept. 22 | Motion for court order to compel the prosecution to provide a copy of the grand jury minutes - denied. This case ended in a plea. At this stage, therefore, the grand jury minutes are relevant to nothing. Moreover, they are not in the Court's possession and I decline to require the Commonwealth to file them (McHugh, J)(96977 |
| | 2000 Feb.14 | Ruling - Motion to withdraw guilty plea denied (Chernoff, J) (96977 |
| | 2000 Feb.22 | Notice of appeal re: denieal of motion to withaw guilty plea (96977 |
| | 2000 Feb. 25 | Notice of service of notice of appeal (96977 |
| | 2000 Feb. 28 | Ruling re: withdrawal of guilty plea denied (Chernoff, J) (96977 |
| | 2000 Mar. 1 | Notice of the record being assembled. was this day sent to the Appeals Court re: denial to withdraw guilty plea (96977 |
| | 2000 Mar. 15 | Transcript filed by Robert Jacques |

I ATTEST THAT THIS DOCUMENT IS
A CERTIFIED PHOTOCOPY OF AN
ORIGINAL ON FILE.

Assistant Clerk

# GRAND JURY CASE (B2 of 2-)

**NORFOLK COUNTY
SUPERIOR COURT
CRIMINAL DOCKET**

**DOCKET NO.** 96978

Indictment returned  October 27, 1993

---

## Commonwealth vs.

### RICHARD GLAWSON

---

**Attorney FOR COMMONWEALTH:**
Robert Cosgrove, Assistant District Attorney
360 Washington Street
Dedham,MA 02026

**ATTORNEY FOR DEFENDANT:**

Paul L. Carlucci, Esq.
33-A Dean Avenue
Franklin, MA 02038

Larry Colby, Esq.
P. O. Box 7420
Lowell, MA 01852

1.  | OFFENCE: BREAKING AND ENTERING IN THE DAY TIME

COMMITTED AT: BROOKLINE ON JULY 14, 1993

1993 Oct. 28 - Plea not guilty bail personal -
                 continued toll/16/93 for conference
                 (Chernoff, J)
1994 Feb. 14 - Motion for speedy trial (96977
1994 Oct. 4  - Retracts and pleads guilty accepted
                 M.C.I. Cedar Junction 8-10 years
                 5 years 9 months to be served,
                 concurrent with 96977. Balance
                 suspended - Probation 3 years
                 (Chernoff, J) mittimus
1995 Jan. 13 - Motion for free transcripts (96977
1995 May 8   - Motion to correct the mittimus,
                 sentence or other appropriate relief
                 affidavit and memorandum (96977
1996 Dec. 30 - Ruling re: 52 more days credit total
                 117 days and an additional 112 days
                 Total 229 days credit (Chernoff,J)
                 (96977

97A

*I*

96977   Page 4

## DOCKET ENTRIES CONTINUED

|  |  |  |
|---|---|---|
|  | 1998 June 2 | Court finds defendant in violation of terms and conditions of probation and hereby revokes probation and imposes remainder of sentence imposed on 10/4/94 to wit 8-10 years M.C.I. Cedar Junction – credit time served to wit – 5 years 9 months (Dortch-Okara,J) mittimus |
| 28. | 1998 June 29 | Notice of appeal re: revocation of his probation adn imposition of sentence |
| 29. | 1998 June 29 | Motion to withdraw and appoint sub-stitute counsel re: Atty. Carlucci |
| 30. | 1998 July 6 | Notice of service of notice of appeal |
| 31. | 1998 July 6 | Order for preparation of transcript Margaret Morris, court reporter |
|  | 1998 July 7 | Motion to withdraw and appoint sub-stitute counsel re: Atty. Carlucci allowed in that case is referred to the Committee for Public Counsel Services re: appointment of counsel for appeal (Dortch-Okara, J) notice sent |
| 32. | 1998 July 7 | Notice of assignment of counsel Committee for Public Counsel appointed (Dortch-Okara, J) notice sent |
| 33. | 1998 July 21 | Notice of appearance of Atty. Larry J. Colby, Esq. |
| 34. | 1998 July 31 | Motion for copy of grand jury minutes copy sent to Judge Chernoff |
|  | 1998 July 31 | Transcript filed by Margaret Morris |
|  | 1998 Nov. 12 | Order for preparation of plea transcript |
| 35. | 1998 Nov. 10 | Defendant's motions to vacate and reimpose sentence, for timely filing of Revise and Revoke - copy sent to Judge Chernoff |
| 36. | 1998 Nov. 10 | Petition for writ of habeas corpus and affidavit – copy sent to Judge Chernoff |
|  | 1998 Nov. 16 | Transcript filed by Margaret Morris |
| 37. | 1998 Nov. 20 | Notice of the record being assembled was this day sent to the Appeals Court |

I ATTEST THAT THIS DOCUMENT IS A CERTIFIED PHOTOCOPY OF AN ORIGINAL ON FILE.

Assistant Clerk

( 1 )

95977          Page 2

## DOCKET ENTRIES CONTINUED

|  | Date | Entry |
|---|---|---|
|  | 1994 Jan. 10 | Bail ordered forfeited to Commonwealth (Neel, J) |
|  | 1994 Jan. 18 | Bail sent to Commonwealth of Massachusetts $3000.00 |
| 4. | 1994 Feb. 14 | Motion for speedy trial pursuant to Massachusetts Rule 36(b) |
| 5. | 1994 Feb. 17 | Habe issued to Essex County Correctional Center for 2/24/94 |
|  | 1994 Feb. 24 | Default removed - new bail set $10,000. cash without prejudice continued to 3/10/94 (O'Brien, J) |
| 6. | 1994 Mar. 7 | Habe issued to Essex House of Correction for 3/10/94 |
|  | 1994 Mar. 10 | Continued to 3/15/94 District Attorney not present (Graham, J) |
| 7. | 1994 Mar. 11 | Habe issued to Essex House of Correction for 3/15/94 |
|  | 1994 Mar. 15 | Continued to 4/5/94 (Chernoff, J) |
| 8. | 1994 Apr. 5 | Continued to 4/27/94 - bail of 1/10/94 forfeiture is revoked - bail remains at $10,000. (Neel, J) |
|  | 1994 Apr. 27 | Taken off list by District Attorney's office |
|  | 1994 May 9 | Bail returned to surety Julie M. Galwson $3000.00 |
|  | 1994 May 11 | Continued to 5/24/94 status agreed habe Essex (Chernoff, J) |
| 9. | 1994 May 12 | Habe issued to Essex for 5/24/94 |
|  | 1994 May 24 | Continued to 7/14/94 for status (Chernoff, J) |
| 10. | 1994 May 25 | Habe issued to Middleton jail for 7/14/94 |
| 11. | 1994 July 14 | Habe issued to Middleton Jail for 7/29/94 |
| 12. | 1994 Aug. 1 | Habe issued to Middleton Jail for 9/21/94 |
| 13. | 1994 Aug. 22 | Habe issued to Essex House of Correction for 9/29/94 |
|  | 1994 Aug. 29 | Continued to 9/21/94 for status (Rouse, J) |
| 14. | 1994 Aug. 29 | Habe issued to Middleton Jail for 9/21/94 |
| 15. | 1994 Sept. 21 | Habe issued to MCI Concord for 10/4/94 |
|  | 1994 Oct. 4 | Retracts and pleads guilty accepted M.C.I. Cedar Junction 8-10 years. |

probation, and that the proceedings in the Norfolk Superior Court were, and are, a nullity.

I make this confession of error with some reluctance, because the sentence in #96977 ran concurrent with the identical sentence in another complaint, #96978, a copy of which I attach. As #96978 alleged intent to commit a felony, not a misdemeanor, the sentence there was properly imposed. See G.L.c. 266, s.16. I am advised that, as a practical matter, the probation department considers the defendant surrendered on all charges. However, tempted as I am by considerations of judicial economy to either urge that view upon this court or to file a motion in the Superior Court to "correct" the dockets to reflect the views expressed herein, I note that the notice of surrender served on the defendant makes no mention of #96978. (R. "C"). Moreover, the transcript of the surrender hearing shows that only #96977 was placed before the court. Accordingly, I am constrained to conclude that the defendant has never been surrendered on #96978. I presume that this is what appellate defense counsel suggests when he states that but for ineffective assistance of counsel at the surrender hearing, the defendant "could not have been violated on case number 96977." (Def Br. 27, emphasis supplied).

I have advised the probation department that I believe this court will vacate the finding of violation on #96977, order the sentence corrected to six months in the house of correction, and order that sentence deemed served, but that this court will make an independent judgment as to that. I have further advised them that they may proceed to surrender the defendant on #96978, should they wish to do so.

In the view that the Commonwealth has taken of the case, there is no need to brief the remaining issues, and I respectfully request that the Commonwealth be excused from doing so.

Very truly yours,

Robert C. Cosgrove
Assistant District Attorney

360 Washington Street
P.O. Box 309
Dedham, MA 02027
(781) 329-5440, x. 231

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

[SEAL]

*To the Sheriff of our County of Norfolk, or his Deputy, and the Superintendent, Massachusetts Correctional Institution,* **CEDAR JUNCTION IN THE COUNTY OF NORFOLK**

GREETING:

WHEREAS, by the consideration of our Superior Court, holden at Dedham, within and for the County of Norfolk, **RICHARD GLAWSON** of **REVERE** in the County of **SUFFOLK**, now in custody of the Sheriff of our said County of Norfolk, convict of the crime of

**B & E Day Time on or about July 14, 1993 at Brookline in the County of Norfolk       226/16**

**On 6/2/98 Court finds Defendant in violation of terms and conditions of Probation and imposed sentence of 8-10 yrs. MCI Cedar Junction concurrent w/96977**

on the **2nd** day of **June** in the year of our Lord one thousand nine hundred and **ninety-eight** was sentenced to be committed to the Massachusetts Correctional Institution, **Cedar Junction** there to be kept imprisoned under the rules and regulations of the Commissioner of Correction from and after said day (for a term of not more than **10 yrs.**, and not less than **8 Yrs.** ), until he be discharged in due course of law, and to stand committed according to said sentence. **concurrent w/96977**

Notified of right of appeal.

And he be deemed to have served **229** days.

WE THEREFORE COMMAND YOU, the said Sheriff or his Deputy, to remove the said **Richard Glawson** from our Jail in Dedham, in the said County of Norfolk, to the Massachusetts Correctional Institution; **Cedar Junction** and you the said Principal Officer of said Massachusetts Correctional Institution immediately thereon to receive the said **Richard Glawson** into said Institution and him there safely keep according to said sentence, and the rules and regulations of the Commissioner of Correction until he be discharged in due course of law.

And for so doing, this shall be your warrant. And you are to make return of this warrant, with your doings therein, to the office of the Clerk of our said Superior Court, in Dedham, as soon as may be.

Witness, **2nd** day of **June** 19**98**, ESQUIRE, at Dedham this

**Asst.** *Clerk.*

A true copy attest:

.................................................
*Deputy Sheriff*

CR 11A - 2000

**96978**

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.          At the SUPERIOR COURT, begun and holden
at DEDHAM, within and for the County of Norfolk,

on the  fourth Wednesday of October, 1993

THE JURORS for the Commonwealth of Massachusetts, on their oath present that


RICHARD GLAWSON


f Revere in the County of Suffolk

n or about July 14, 1993

t Brookline in the County of Norfolk

id break and enter in the day time the building the property of

r.John Haule, with intent to commit a felony therein, in violation

f G.L. C. 266, s. 16,


against the peace of said Commonwealth, and contrary to the form of the Statute in such case
made and provided.

A TRUE BILL

.................................... Foreman of the
                                    Grand Jury.

.................................... | Assistant District Attorney
                                      Norfolk District

38

(A-4)

MGL Chapter 263. Section 5

Section 5. A person accused of crime shall at his trial be allowed to be heard by counsel, to defend himself, to produce witnesses and proofs in his favor and to meet the witnesses produced against him face to face.

MGL Chapter 266. Section 14

Section 14. Whoever breaks and enters a dwelling house in the night time with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years. The sentence imposed upon a person who, after being convicted of any offence mentioned in this section, commits the like offence, or any other of the offences therein mentioned, shall not be suspended, nor shall he be placed on probation.

MGL Chapter 266. Section 15.

Section 15. Whoever breaks and enters a dwelling house in the night time with the intent mentioned in the preceding section, or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein, shall be punished by imprisonment in the state prison for not more than twenty years and, if he shall have been previously convicted of any crime named in this or the preceding section, for not less than five years.

MGL Chapter 266. Section 16.

Section 16. Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building, vehicle or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years.

MGL Chapter 266. Section 16A

Section 16A. Whoever, in the nighttime or daytime breaks and enters a building, ship, vessel or vehicle with intent to commit a misdemeanor shall be punished by a fine of not more than two hundred dollars or by imprisonment for not more than six months, or both.

MGL Chapter 266. Section 17

Section 17. Whoever, in the night time, enters without breaking, or breaks and enters in the day time, a building, ship, vessel, or vehicle, with intent to commit a felony, the owner or any other person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years.

MGL Chapter 266. Section 18