United States District court
For Massachusetts District

Suffolk, ss.

Plaintiff R. D. Glawson.

Vs.

Defendants, Massachusetts Attorney Generals Officers.
Lorey Flashner for Suffolk County
Daniel Connoly for Suffolk county
Robert W. Nelson for Norfolk County
Robert W. Keaton.

Varified civil complaint

1. The Plaintiff seeks civil Injunction against the suffolk County prosecution SUCR-2001-10249-1-18 pursuant to The Younger V. Harris, principles developed by The U.S. Supreme Court, 401 U.S. 37\ 91 S.ct. 746 for bringing Two "Related prosecutions" - in "Bad faith" in 2, seperate proceedings in violation The Freedom From successive prosecution of The 5th amendment U.S.C.A. Constitutional "Life or Limb phrase Clawns Vs. Rives 70 U.S. App, D.C. 107 \ 104 F.2d 240 at 242. where the prosecution in Bad faith seeks multiple penelties in multiple proceedings of "Related Offences; Applicable upon the states Albright V. Oliver 114 S.ct. 807 (1994) And A civil Injunction is sought to stop the prosecution, Fe R. Civ. P. 65 Snyder Sullivan Colo. 705 P. 2d. 510,

2.

Facts

3. On 2-16-04 According to the Attached state

government prosecutions state of the case.

4. the Boston Police received a warrant for the defendants arrest and were actively Looking for him in dedham when store security officers observed the defendant attempting fraudulent purchases at sears in dedham Mall and the Dedham police were notified.

5. A dedham pollice offerc approached the defendant in an attempt to detain him, but ended up in a violent struggle that Lasted several minutes. G Lawson Then ran out of sears to the parking Lot and fired one shot from a .38 Charter Arms revolver Through the window of a white mustang being operated by a 20 year old man. He then carjacked this mans vehicle and took off with police in pursuit.

6. The chase went into west Roxbury and onto center street where Glawson hit a car being driven by A woman with her eight year old daughter inside.

7. He jumped out of the stolen mustang and ran into a nearby yard with dedham Police officer Michael Buckley Chasing him on foot. Officer Buckley Kicked open the gate to the yard and saw Glawson crouched down and pointing a gun at him.

8. The defendant fired two shots; One struck officer Buckley in the right hand. The defendant fled the yard on foot and officer Buckley was Transported to the hospital.

9. After an extensive three hour search of the surrounding area by, Boston, Dedham and state police units, the defendant was Located hiding inside a garage at 135 Eastwood circuit in west Roxbury.

Following a Brief struggle with police. the defendant was handcuffed and placed under arrest.

10. Found on the defendants person was a .38 caliber Charter Arms revolver, several Live rounds of Amunition four Bags of Heroine. and wallet that was stolen From an employee of filene's at the chestnut Hill MALL on february 15th 2001.

11. Subsequent ballistic testing of the gun found on Blawson revealed that it was the same gun used during the incident of Feb. 15th inside 35 Murray Hill Road as well as the carjacking of the mustang on February 16th outside of sears in Dedham mall.

12. On 2-20-03. The defendant Plead Guilty to 16 Norfolk Superior court Indictments Attached which were Based on the above Facts, Midway Through His Trial and sentenced to 15 To 20 years on 8-9-03 which sentenced was stayed until 9-10-03 (See Judges Reasons) for staying case in His 8 page Memorandum.

13. While from the "same facts" (Grew out) An 18 Count of Indictments in Suffolk County SUCR-2001-10249-1-18 and (6 Count Indictment) in Cambridge superior court Based on The same facts once Litigated and punished for,

14. The defendant Avers The Bad Faith comes in where Before Indictments on Any of The 3 "Jurisdiction" Prosecutions The District Attorney's Deliberately & purpose-fully for The purpose of gaining a Tactical Advantage of multiple shots to gaining convictions and maliciously oppressed The defendant in to Four Plea Proffers Before and durring his Trial with multiple Erronious promisses

To be given A "Clean slate", and serve his prison Time in The Bureau of Prisons Versus the state prisons where defendant has 28 single Enemy Issues Known to the D.A.s and court. And Lastly offering A "Future Concurrent" sentence of 15 To 20 years to run "Futoristicaly" with any sentence "serving or to be served. when the defendant was awaiting Trial on The 3 seperate Jurisdictional Indictments Pending. (See mittimus)

15. All 3 Cases should have been enjoined As reached In Willhauch Vs. Flannigan 101 S.Ct. 10; an Identicle match to the Cases prosecution at Bar. Where The defendant sought an Injunction from Prosecutors Failure to enjoin multi-county Jurisdiction Prosecutions ussing Mass. R. Crim. P. 37(B)(2) As A Veto Power from mandatory joinder M.R.C.P. 9. as The cases were Linking by The Extraterritorial statute 41 § 98A - Mass. R. Crim. (P. (2)(14) but the A.D.A. chose to use the Tactical Advantage at seperating The Indictment From 1 Arrest Too 3 Jurisdictional Indictments for gaining multiple shots at convictions & penelties.

16. The seperation was in bad faith and an executive abuse of powers for the direct purpose of gaining a Tactical advantage.

17. The Commands of the 5th amendment U.S.C.A. double Jeopardy argument is as follows.

18.

## Argument

19. The Norfolk County Prosecutor & Suffolk County prosecutors abused there Authority in the selection of charges and well Knowing The offences in Both counties in relation To All Norfolk county with suffolk county Counts Indictments SUCR-2001-10249-"Counts 9-To-18" Only; Are Related by the Alleged chase and Extraterritorial Arrest Linking these crimes Together As M.R.crim.P.2-(4) Define as Related Offences, and Prosecutors were Required pursuant to the 5th amendment Double Jeopardy Clause Immunity Defense from successive prosecution; to Try All offences or charges That grew out of The same Transaction; episode, conduct, occurance, in "one single proceeding". Harris Vs. Washington, 92 S.Ct. 183 (1971) & The recognized exception to the rule announced in, Younger Vs. Harris, 91 S.Ct. 746 (1971) and Harris Vs. Oklahoma 97 S.Ct. 2912 (1977). citing; Ashe V. Swenson 90 S.Ct 1189 & Thompson Vs. Oklahoma, 97 S.Ct 768 (1977) and cases cited There In.

20. The commonwealths Return to Petitioners opposition is fruitless and does not warrant Dismissal or a reply. It failes to oppose Petitioners main Line Issue That ① Is; The Norfolk County "Trial; Invoked Jeopardy and a Conviction weather by plea or Jury Does Not waive The Immunity of Double Jeopardy" Defense (sec)... U.S. Vs. Broce 488 U.S. 563\109 S.ct. 757 (1989.) Holding: plea of guilty and ensuing conviction comprehend ALL The factual and Legal elements necessary To sustain

A Binding, Final Judgement of guilt and A Lawful sentence; (Also Defining)... A guilty plea is more then A confession which admits that the accused did various Acts". Boykin Vs. Alabama 89 S.ct. 1709 (1969) It is an admission that [He] committed the crimes charged against him, (Also North Carolina V. Alford 400 U.S. 25. 32. 91 S.Ct. 160 (1970) by Entering a guilty Plea. The accused is not simply stating that he did the descrete acts described in the Indictments; He is admitting guilt of a substantive crime. Notwithstanding The Plea-Ommission record Here, clearly shows the Court and unwanted forced upon defendant "stand by" Counsel; Both Told Petitioner then defendant, that (P-StR=Plea--- Transcript at Page 24-L-19 To 22) Where then defendent indicates to court as follows: "pstr-Line-19)

7. Petitioner Glawson: All right, so nothing that I Plead Guilty to today in this case can be Used against me IN Suffolk County. Line -22 The Court: Answer. "Thats Right".

22. Under theses circumstances it cannot fairly be said or held that defendant Petitioner waived his right to the Double Jeopardy clause defense to be Free From Successive Prosecution in seperate criminal Proceedings of "Related Offenses The Commonwealth Failed to Consolidate Suffolk County Indictment 9 Through 18 That grow out of The claimed Chase from Dedham into Boston." and

9. Due to the Court & standby counsel answer, The SJ- should give some Constitutional Consideration to

The Recorded Facts of The Plea-of-Guilty conviction After Trial commenced; thus Attaching Legal Jeopardy, should not be said petitioner "Intentionaly" relinquished" or "Abandoned" a "Known Right" or "privilege"... citing Authority Johnson Vs. Zerbst, 304 U.S. 458-464, 58 S.Ct. 1019-1023 (1938)
Claiming three Constitutional Rights: (1) The Right to the Double Jeopardy Defense Immunity to be free from successive prosecution of All Related offences, which Are Required by The 5th Amendment U.S.C.A. Double Jeopardy Clause together with the Due-process Clause in both 5th & 14th amendments U.S.C.A. made Applicable and eforcible upon the states Through the 14th amendment U.S.C.A. Albright Vs. Oliver 114 S.ct. 807, [1994] and Harris Vs. Oklahoma 97 S.Ct. 2912, citing Ashe Vs. Swenson, 90 S.Ct. 1189; Thompson Vs. Oklahoma 97 S.Ct. 768 (1977) and cases cited Therein.

22. (2) The defendant claims The constitional Double Jeopardy Clause Authorizes the Right Not to be Haled into court at All on The Related offenses, failed to be enjoined by the Prosecution Who Both County's Well new or should have Known was a Requirement of Double Jeopardy Clause as Guarinteed Through The 5th and 14th amendment Due-process Clause U.S.C.A. citing Blackledge Vs. Perry 417 U.S. 21\94 S.ct. 2098 (1975) at 417 U.S. at 30 \ & 94 S.Ct at 2104. The Plea of Guilty did not forclose a subsequent challenge. The very Initiation of proceedings against him, operated to deny petitioner Due-process of Law. 417 U.S. at 30 \ 94 S.Ct. at 2104.

23. (3) The Court & Standby Counsel Both Misinformed the defendant On Petitioners question about Double Jeopardy (supra).

(Attachment 6 Plea Collogquy.-page 24-L-19-22)

CONCLUSION

Willhauck V. Flannigan is an Identicle case in Question, 101 S.Ct 10 (1980) That supports Plaintiffs Proof of "Exception rule" to the Younger V. Harris principles developed by the U.S. S.Ct court. 401 U.S. 37 \ 91 S.Ct. 746 should apply here for An Injunction to Issue against SUCR-2001-10249 Counts 9 To 18 Only for a violation of Due-process against prosecutors maliscious Tactical failure not to joinder The Related offences on The same facts Once Litigated, Indicted and Tried, Through a Trial Ending midway in a coerced Plea in the shadows of the Plaintiff free exercise to try The case before a selected Jury of his peers.

The Prosecutors Had several optional times to Consolidate The Related offences During The Norfolk county Indictment state or at Trial but did not purposefully To gain A Tactical advantage of a person interest Nature noting A Police officerer was shot and The Press was all over The case amounts to maliscious prosecution and Violates due-process and plaintiffs 5th amendment Freedom From being Haled into court on the related offences and Freedom From successive proceedings of the Related offences Thompson Vs Oklahoma 97 S.Ct. 768 (1977) & Harris Vs. Oklahoma 97 S.Ct 2912 (1977). R.I.C.R.R. Rule 2-14 Attachments [9],[10],[11],[12],[13].

Remedy

Plaintiff request an injunction Agaisnt the SUCR-2001 Counts 9 Through 18 As An Exception to Younger V. Harris (Supra). citing Willhauch Vs. Flannigan 101 S.Ct. 10 (1980.)

The above facts are varified by the Suffolk County District Attorney's statement of the case which supports The grounds for The "Exception Rule" To younger vs. Harris. citing Also "Specified Constitutional violations. Graham Vs. Connors 109 S.ct. 1378. Where Jeopardy has attached, IN ONE Related Proceeding That has subjected his Life, Liberty, & Limb phrase of the Fifth amendment U.S.C.A. And An Injunction should Issue with respect to any charges That are related to the same facts in successive proceeding before A Trial. To satisfy the Double Jeopardy defense, & Immunity To be Free from being subjected A second time for Related offences That could & should have been Consolidated with the Plea Bargain midway Through Trial at the Commands of the Fifth Amendment double Jeopardy principles and Fifth amendment Due-substantive Due process of Law from Arbitrary and capricious prosecution successively in sepedate proceedings of related crimes by facts & conduct surrounding the selected & severated charges instead of one proceeding As the Norms of Fundamental Fairness dictates in substantive due-process of Law of the Fifth & Fourteenth amendment U.S.C.A. made applicable upon the states Through the fourteenth amemendment U.S.C.A. 114 S.ct. 807(1994). see Commonwealths statemen of Case. (Attachment #1)

Wherefore the plaintiff prays the court Issue an Injunction against further prosecution for The specified counts Related. As soon as possible on SUCR-2001-09-Through 018.

date 12/13/04

by Richard Johnson Pro-Se

# Index of Attachments

(1) Commonwealth of Massachusetts Attorney's statement of the Case. (3 pages)
(2) Dedham Application of Complaints
(3) Dedham citation
(4) Dedham mittimusses & Dedham Indictments NOCR-2001 00117.-1-2.
(5) Dedham Superior court "Memorandum and Ruling of Judge Chernoff. (8 pages)
(6) Dedham Plea-Colloquy (45-Pages)
(7) Dedham Grand Jury Minutes (71 pages)
(8) M.G.L.A. c. 41 § 98 A Extraterritorial Fresh & Continued pursuits, Statute.
(9) RCRP 2. Definition of Terms (2-14) Related offense)
(10) Thompson Vs. Oklahoma 97 s.ct. 768 (1977).
(11) Harris Vs. Oklahoma 97 s.ct. 2912 (1977).
(12) R.C.R.R. Rule 37 (B)(2)
(13) Willhauch Vs. Flannigan 101 s.ct 10 (1980).

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss. NO. 01-10249

COMMONWEALTH

v.

RICHARD GLAWSON

## COMMONWEALTH'S STATEMENT OF THE CASE

On Monday, February 12, 2001, the defendant broke into the first floor apartment of 60 Calumet Street in Roxbury and removed a safe that contained a .38 caliber Charter Armes revolver and several pieces of ammunition.

On February 15, 2001, the defendant was observed on surveillance video at the Chestnut Hill Mall attempting to steal clothing from Filene's. When store security and Newton police tried to detain him, Glawson used the .38 caliber Charter Arms revolver taken from the apartment at 60 Calumet Street on February 12th to carjack a vehicle from a woman in the mall parking lot and escape arrest. Being chased by a Newton police officer, Glawson drove to Basile Street in Roslindale where he abandoned the stolen vehicle and fled on foot. He then broke through the front door of 35 Murray Hill Road in Roslindale where a 38-year-old disabled man lived. Once inside the apartment, the defendant knocked the man to the floor and fired one shot at the man's dog that bit Glawson on the hand. Glawson then ran out the rear door of the apartment and back over to Basile Street where he pointed the gun at a 77-year-old neighbor. He continued to run down Basile Street to Washington Street where he carjacked another vehicle from a 42 year old man who was about to enter his car outside a restaurant. Glawson drove away from the area and abandoned this stolen vehicle in

Dorchester, leaving bloodstains on the steering wheel. By means of the mall security video and photographic arrays, Glawson was identified by the Newton carjacking victim, the store security guard, and the Newton police officer that confronted him outside the Chestnut Hill Mall.

On February 16, 2001, the Boston Police received a warrant for the defendant's arrest and were actively looking for him in Dedham when store security officers observed the defendant attempting fraudulent purchases at Sears in the Dedham Mall and the Dedham police were notified.

A Dedham police officer approached the defendant, in an attempt to detain him, but ended up in a violent struggle that lasted several minutes. Glawson ran out of Sears to the parking lot and fired one shot from the .38 Charter Arms revolver through the window of a white Mustang being operated by a 20 year old man. He then carjacked this man's vehicle and took off with police in pursuit. The chase went into West Roxbury and onto Centre Street where Glawson hit a car being driven by a woman with her eight year old daughter inside. He jumped out of the stolen Mustang and ran into a nearby yard with Dedham Police Officer Michael Buckley chasing him on foot. Officer Buckley kicked open the gate to the yard and saw Glawson crouched down and pointing a gun at him. The defendant fired two shots; one struck Officer Buckley in the right hand. The defendant fled the yard on foot and Officer Buckley was transported to the hospital.

After an extensive three hour ground search of the surrounding area by Boston, Dedham, and State Police units, the defendant was located hiding inside a garage at 135 Eastwood Circuit in West Roxbury. Following a brief struggle with police, the defendant was handcuffed and placed under arrest.

Found on the defendant's person was a .38 caliber Charter Arms revolver, several live rounds of ammunition, four bags of heroine, and a wallet that was

stolen from an employee of Filene's at the Chestnut Hill Mall on February 15, 2001.

Subsequent ballistic testing of the gun found on Glawson revealed that it was the same gun used during the incident on February 15th inside 35 Murray Hill Road as well as the carjacking of the Mustang on February 16th outside Sears in the Dedham Mall.

Respectfully submitted
for the Commonwealth

RALPH C. MARTIN, II
DISTRICT ATTORNEY

by: [signature]
Daniel J. Hourihan
Assistant District Attorney
Senior Trial Division

March 29, 2001
statement of the case.dad

On Friday night near closing I began watching a white male in the men's department picking up many sweatshirts, sweatpants and jeans. I received a call from APA Bill Punch asking me to watch a male in men's sportswear, I told Bill I was already watching him. Bill also told me to watch a female that came in with the male over in the junior's department. The female was also picking up many tops and shirts from that area. The male and female continued to pick up items without even looking at the price on some of them. The male and female proceeded to our women's department were they placed the items on the counter. The male went over to the cologne department and the female waited at the register. The clerk scanned all the items-shirts, jeans, tops, sweatshirts and sweatpants and the female then proceeded to pay with a Sears charge. Both Bill and myself expected some type of fraud with this account. Once the transaction was complete (the female signed for the purchase)I pulled a sales extract off the computer. I also dialed Sears credit and asked credit to check on a suspicious sale. I informed credit of the account number and asked him to contact the customer. The credit associate was concerned with contacting the customer at such a late hour, I asked him what year the account was opened and he stated 1978. I told him the female looked about 25 and he needed to call. The male and female then made another purchase in cosmetics. The male then left the store with two large bags filled with the purchases the female made. The credit associate confirmed the cardholder (Natalie Bosse 03500888845192) was at home and that the sales were fraudulent. The female was still in our men's department making another purchase and the male was in the parking lot. Bill Punch called me to say he was out looking for the mall detail and I told him the female was heading out of the store and I was going to stop her. I stopped the female in the computer department, I told her I was with Sears's security and I needed to talk to her about her purchase. I asked her if she was Natalie, she did not reply. The male had returned to the store, he told me to leave her alone, he stated they paid for their merchandise and there was no problem and they were leaving. I told him I still needed to speak to her, and then APA Bill Punch and DPD Officer Charlie Morris approached from the mall entrance. Officer Morris asked the male to comeover to him and then the male started to run. I began a foot chase of the male with Officer Morris and Bill Punch remained with the female. The male ran through hardware and Men's department knocking over racks. I was able the catch up to male in between Men's and juniors. I grapped the male from behind and fell into a rack. We both got up and I had the male from the back of his coat. I then pulled the male down and Officer Morris was now on top of the male. He continued to try to get away. He kicked Officer Morris in the face and we again knocked the male to the floor. Officer Morris asked the male to place his hands behind his back several times but the male refused. I called Bill Punch requesting some back up. Officer Morris used his nightstick and pepper spray to try to subdue the male but these attempts failed. I moved back as Officer Morris used the pepper spray. The male then was up and started running towards men's jeans and hardware. The male continued reaching in his pants and I kept safe distance back from him. The male went through harcware and towards lawn and garden. The male approached the rug department where I saw a holster go flying out of his hand. I yelled to Manager Klem Touradis to stay back. The male exited the door and I heard a loud sound that sounded like a gunshot. I stayed back looking around the corner to see a white car at the pick up area. The white car then pulled away from the curb with the tires squealing.



I radioed to Bill Punch that he had a gun and that I thought he left in a white car. I went outside to find a young white male tell me a man just shot out his window and carjacked his car.

Prepared By: Michael McSweeney Signature [signature]

SEARS

# Asset Protection Department Incident Report

INCIDENT # 01-41

UNIT # 1125 | UNIT CITY / STATE DEDHAM, MA | ☑ CUSTOMER ☐ ASSOCIATE | ☑ ADULT ☐ JUVENILE

REFERENCE / CORRESPONDING INCIDENT # 01-42

DOLLAR AMOUNT AT SELLING:
A. Known Loss ...... $
B. Admitted ...... $
C. Recovered ...... $ 452.89
D. Net Loss ...... $

☑ PROSECUTED
☐ RELEASED
☐ PRODUCTIVE RECOVERY
☐ REPORT ONLY

TYPE OF INCIDENT: E

CODE: 515

DATE: 2-16-01 | TIME OF DETAINMENT: 21:00 | LOCATION OF DETAINMENT: BRAND CENTRAL

ASSET PROTECTION ASSOCIATE: BILL PUNCH

MERCHANDISE REMOVED FROM: DISPLAY RACKS | WHERE CONCEALED: N/A | WITNESSES (ASSOCIATES, OTHER A.P. ASSOCIATES): MIKE McSWEENEY

NAME (LAST, FIRST, M.I.) | ALIAS

ADDRESS | CITY: NATICK | STATE: MA | ZIP CODE

TELEPHONE # ( ) | SOCIAL SECURITY # | DL / ID # (INCLUDE STATE) | CIRCLE ONE: (A) B H P W

PLACE OF BIRTH | D.O.B. | AGE | SEX: F | HEIGHT: 5-5 | WEIGHT: 115 | HAIR: BLK | EYES | GLASSES: —

CLOTHING: LEATHER BLACK COAT | OCCUPATION | PLACE OF EMPLOYMENT

POLICE NOTIFIED? (YES) NO | TIME CALLED: 21:15 | TIME ARRIVED: 21:17 | OFFICER RESPONDING: OFF MOURIS

ID # | POLICE REPORT # | TIME DEPARTED

COMPLETE FOR JUVENILE (PARENT / GUARDIAN / PERSON NOTIFIED) | TIME NOTIFIED | TIME ARRIVED

JUVENILE RELEASED TO: (SIGNATURE REQUIRED) | DATE / TIME | TIME DEPARTED

STATEMENT:

I, ____________________ (NAME) admit to the theft of the merchandise listed below from Sears ____________ (UNIT NAME) in ____________ (CITY / STATE)

I understand that this information may be submitted to United States Employers Mutual Association.

SIGNATURE ____________________ DATE ____________

| DIV | QTY | ITEM / SKU | DESCRIPTION | PRICE EACH | TOTAL |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | GRAND TOTAL | 452.89 |

PREPARED BY WILLIAM PUNCH DATE 2-17-01

WITNESS ____________ (SIGNATURE) DATE ____________

WITNESS ____________ (SIGNATURE) DATE ____________

16711 (REV 8/00)

SEARS

Unit # 1123 Incident # 01-0414C

p. 1 of 2

# Narrative Report of Investigation

AT APPROXIMATELY 9:15 PM ON 2-16-01, I OBSERVED A WHITE MALE SUBJECT AND AN ASIAN FEMALE ENTER THE STORE VIA THE BRAND CENTRAL ENTRANCE AND PROCEED DIRECTLY TO THE MEN'S DEPARTMENT. I OBSERVED THIS FROM THE SALESFLOOR. I RADIOED MY PARTNER APA McSWEENEY TO COMMENCE SURVEILLANCE OF THE SUBJECTS VIA THE CCTV SYSTEM. THE MALE SUBJECT WAS DESCRIBED AS A WHITE MALE WEARING A WHITE BASEBALL CAP AND HILFIGER SWEATS. WHEN SURVEILLANCE VIA CCTV WAS CONFIRMED BY APA McSWEENEY I LOOKED FOR THE FEMALE SUBJECT. FROM THE SALESFLOOR, I OBSERVED HER IN THE WOMEN'S DEPARTMENT. TAKING POSESSION OF MULTIPLE ARTICLES OF CLOTHING. APA McSWEENEY INFORMED ME THE MALE SUBJECT WAS ALSO TAKING POSESSION OF MULTIPLE ARTICLES OF MEN'S CLOTHING. I THEN RETURNED TO THE AP OFFICE AND OBSERVED VIA CCTV BOTH SUBJECTS AT A WOMEN'S DEPARTMENT CASH REGISTER.

I OBSERVED THE FEMALE PRODUCING A SEARS CREDIT CARD AND PRESENT IT TO THE ASSOCIATE FOR PAYMENT OF MDSE. [redacted] SSOCIATE RANG UP ALL OF THE WOMEN'S CLOTHING AND MEN'S CLOTHING THAT EACH SUBJECT HAD TAKEN POSESSION OF. THE TRANSACTION WAS COMPLETED AND THE FEMALE SUBJECT SIGNED THE RECEIPT. THE FEMALE TOOK BACK POSESSION OF THE SEARS CARD AND PLACED IT IN HER SLACKS POCKET. I THEN OBSERVED THE MALE SUBJECT TAKE POSESSION OF THE BAG OF MERCHANDISE. I FOLLOWED THE [redacted] SUBJECT OUT OF THE STORE VIA THE MAIN MALL ENTRANCE. I OBSERVED HIM PLACING THE BAG OF MERCHANDISE IN A VEHICLE. THE VEHICLE WAS A LATE MODEL BLACK MERCURY MYSTIQUE WITH MASS PLATE VI. APA McSWEENEY INFORMED ME THAT HE CONFIRMED WITH SEARS CREDIT THAT THE CARD WAS FRAUDALANTLY USED. THE MALE SUBJECT

Completed by ______ Signed ______ Date ______

Reviewed by ______ Signed ______ Date ______

10026 (Rev 8/99)





Unit # 1123 Incident # 01-9142

p. 2 of 2

# Narrative Report of Investigation

RE-ENTERED THE STORE WHILE SUMMONED THE MALL DEDHAM POLICE OFFICER MOURIS. APA MCSWEENEY INFORMED ME HE HAD CONTINUED MONITORING THE FEMALE SUBJECT COMPLETING TWO MORE TRANSACTIONS.

AT THIS TIME MYSELF, OFFICER MOURIS AND APA MCSWEENEY DETAINED BOTH SUBJECTS IN THE BRAND CENTRAL DEPARTMENT. THE MALE SUBJECT FLED ON FOOT TOWARD THE MEN'S DEPARTMENT. OFFICER MOURIS GAVE CHASE WITH APA MCSWEENEY FOLLOWING. I RETURNED TO THE AP OFFICE WITH THE FEMALE SUBJECT AND SUMMONED A FEMALE MANAGER AS A FEMALE WITNESS. I CALLED DPD DISPATCH VIA PHONE TO INFORM THEM OF THE INCIDENT APA MCSWEENEY INFORMED THE FOOT PURSUIT TURNED INTO A PHYSICAL CONFRONTATION ENSUED IN THE MEN'S DEPARTMENT AND THAT ANOTHER FOOT PURSUIT WAS CONTINUEING TO THE ROUTE 1 DOOR. HE THEN TOLD ME THE SUBJECT DREW A HANDGUN FROM HIS WAISTBAND, CONTINUED OUT THE ROUTE 1 DOOR AND FIRED A SINGLE ROUND INTO A CAR THAT WAS AT THE CURB. HE FURTHER STATED HE LEFT THE SCENE IN THE VEHICLE AFTER PULLING THE OCCUPANT OF THE CAR OUT OF THE VEHICLE. THE VEHICLE WAS DESCRIBED AS AN OLDER MODEL WHITE FORD MUSTANG LAST SCENE HEADED NORTH IN THE PARKING LOT. I RELAYED THIS INFORMATION TO DPD

THE FEMALE SUBJECT WAS LATER ARRESTED BY DPD.

THE AUTHENTIC CARD HOLDER IS
NATALIE BOSSE TEL# 508 376 8605
4 VILLAGE AVE
MILLIS, MA 02054

Completed by WILLIAM PUNCH Signed [signature] Date 2-17-01

Reviewed by ______ Signed ______ Date ______

10026 (Rev 8/99)

**CRIMINAL DOCKET**

DOCKET NO. 0154CR000364

ATTORNEY NAME Pachard

RT DIVISION edham

☐ INTERPRETER REQUIRED

, ADDRESS AND ZIP CODE OF DEFENDANT
LAWSON, RICHARD D
O'BRIEN WAY
EDHAM, MA 02026

100168

DOB AND SEX '14/1966 M

OF OFFENSE(S) '16/2001

PLACE OF OFFENSE(S) DEDHAM

AINANT AN, DOREEN A

POLICE DEPARTMENT (if applicable) DEDHAM PD

OF COMPLAINT 20/2001

RETURN DATE AND WARRANT ISSUED

| DATE and JUDGE | DOCKET ENTRY |
|---|---|
| | ☐ Attorney appointed (SJC R. 3:10) ☐ Atty denied and Deft Advised per 211D §2A ☐ Waiver of counsel found after colloquy |
| 2/27/01 Alch | Terms of release set: ☐ PR ☒ Bail: 5000,000 Surety / $500,000 Cash ☐ Held (276 §58A) ☐ See back for special conditions |
| | Arraigned and advised: ☒ Potential of bail revocation (276 §58) ☐ Right to bail review (276 §58) ☐ Right to drug exam (111E §10) |
| | Advised of right to jury trial: ☐ Does not waive ☐ Waiver of jury trial found after colloquy |
| | Advised of trial rights as pro se (Supp. R. 4) |
| | Advised of right of appeal to Appeals Ct (R. 28) |

OFFENSE 265/15/A ASSAULT TO MURDER c265 §15

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|
| | | | | |

ITION DATE and JUDGE 2/27/01 Alch

ITION METHOD: ilty Plea or Admission Sufficient Facts cepted after colloquy 1 278 §29D warning; nch Trial; y Trial; ne of the Above

FINDING: ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause

SENTENCE OR OTHER DISPOSITION: ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☒ Nolle Prosequi ☐ Decriminalized (277 §70C)

FINAL DISPOSITION: ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged — JUDGE — DATE

OFFENSE 65/18B/A FIREARM IN FELONY, POSSESS c265 §18B

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|
| | | | | |

ION DATE and JUDGE 2/27/01 Alch

ION METHOD: ty Plea or Admission ufficient Facts pted after colloquy 278 §29D warning; ch Trial; Trial; of the Above

FINDING: ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause

SENTENCE OR OTHER DISPOSITION: ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☒ Nolle Prosequi ☐ Decriminalized (277 §70C)

FINAL DISPOSITION: ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged — JUDGE — DATE

OFFENSE 65/18B/A FIREARM IN FELONY, POSSESS c265 §18B

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|
| | | | | |

ON DATE and JUDGE 2/27/01 Alch

METHOD: Plea or Admission fficient Facts ted after colloquy 78 §29D warning; Trial; rial; of the Above

FINDING: ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause

SENTENCE OR OTHER DISPOSITION: ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☒ Nolle Prosequi ☐ Decriminalized (277 §70C)

FINAL DISPOSITION: ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged — JUDGE — DATE

OFFENSE 5/21A/B CARJACKING, ARMED c265 §21A

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|
| | | | | |

DATE and JUDGE 2/27/01 Alch

METHOD: Plea or Admission cient Facts d after colloquy 3 §29D warning; Trial; al; the Above

FINDING: ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause

SENTENCE OR OTHER DISPOSITION: ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☒ Nolle Prosequi ☐ Decriminalized (277 §70C)

FINAL DISPOSITION: ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged — JUDGE — DATE

☒ ADDITIONAL COUNTS ATTACHED

CLERK-MAGISTRATE/ASST. CLERK — ON (DATE)

COURT ADDRESS
Dedham District Court
631 High Street

Trial Court of Massachusetts
Dedham District Court

TO ANY JUSTICE OR CLERK-MAGISTRATE OF THE DEDHAM DISTRICT COURT

The undersigned complainant, on behalf of the Commonwealth, on oath complains that on the date and at the location stated herein the defendant did commit the offense(s) listed below.

FENDANT
AWSON, RICHARD D
O'BRIEN WAY
DHAM, MA 02026

| OF BIRTH | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| 4/1966 | M | W | 5'06" | 160 | GRN | BRO |

IENT REPORT # | SOCIAL SECURITY # 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

OF OFFENSE 6/2001 | PLACE OF OFFENSE DEDHAM

PLAINANT N, DOREEN A | POLICE DEPARTMENT DEDHAM PD

OF COMPLAINT 0/2001 | RETURN DATE AND TIME WARRANT ISSUED

IT-OFFENSE
65/15/A ASSAULT TO MURDER c265 §15

/16/2001 did assault MICHAEL J CALLAHAN with intent to murder such person, in violation of G.L. c.265, §15. (NO DISTRICT COURT FINAL SDICTION IN ADULT SESSION; must submit a DNA sample within 90 days of conviction pursuant to G.L. c.22E, §3.)

DEFENDANT COPY

T-OFFENSE
55/18B/A FIREARM IN FELONY, POSSESS c265 §18B

/16/2001, while in the commission of or the attempted commission of WITH INTENT TO MURDER, an offense which may be punished by imprisonment state prison, did have in his or her possession or under his or her control a firearm, rifle or shotgun, in violation of G.L. c.265, §18B. (NO DISTRICT T FINAL JURISDICTION IN ADULT SESSION; must submit a DNA sample within 90 days of conviction pursuant to G.L. c.22E, §3.)

-OFFENSE
5/18B/A FIREARM IN FELONY, POSSESS c265 §18B

16/2001, while in the commission of or the attempted commission of INTENT TO COMMIT MURDER, an offense which may be punished by nment in the state prison, did have in his or her possession or under his or her control a firearm, rifle or shotgun, in violation of G.L. c.265, §18B. (NO ICT COURT FINAL JURISDICTION IN ADULT SESSION; must submit a DNA sample within 90 days of conviction pursuant to G.L. c.22E, §3.)

-OFFENSE
5/21A/B CARJACKING, ARMED c265 §21A

6/2001, with intent to steal a motor vehicle, did assault, confine, maim or put in fear MICHAEL MCSWEENEY for the purpose of stealing a motor while armed with a dangerous weapon, in violation of G.L. c.265, §21A. (PENALTY: state prison not more than 20 years; or jail or house of correction than 1 year, not more than 2½ years; and not less than $5000, not more than $15,000. District Court has final jurisdiction under G.L. c.218, §26.)

AINANT | SWORN TO BEFORE CLERK-MAGISTRATE X | ON (DATE) | TOTAL COUNTS 10

NDANT COPY) | FIRST JUSTICE Hon. GERALD ALCH | COURT ADDRESS Dedham District Court, 631 High Street, Dedham, MA 02026-1848

CLERK-MAGISTRATE/ASST. CLERK X | ON (DATE)

Exhibit 4
3 pages

☐ ARREST ☐ HEARING ☐ SUMMONS ☒ WARRANT

The within named complainant requests that a complaint issue against the within named defendant, charging said defendant with the offense(s) listed below.

COURT DIVISION
Dedham District Court
631 High Street
P.O. Box 109
Dedham, Ma. 02026

| DATE OF APPLICATION | DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|---|
| 02/20/01 | 02/16/01 | Dedham Mall 300 Providence Highway |

NAME OF COMPLAINANT
Charles Mouris

ADDRESS AND ZIP CODE OF COMPLAINANT
600 High street
Dedham, Massachusetts 02026

NAME, ADDRESS AND ZIP CODE OF DEFENDANT
Richard D. Glawson
27 O'Brien Way
Dedham, Massachusetts 02026

| NO. | OFFENSE | G.L. Ch. and Sec. |
|---|---|---|
| 1. | Assault and battery by means /dangerous weapon to wit shod foot | 265-15A |
| 2. | Assault and battery on police Officer in perform of his duty | 265-13D |
| 3. | illegal possession of a firearm without a permit | 269-10 |
| 4. | Conspiracy on credit card fraud with Aleja Campbell | common law |

COURT USE ONLY → A hearing upon this complaint application will be held at the above court address on | DATE OF HEARING | AT | TIME OF HEARING | COURT USE ← ONLY

## CASE PARTICULARS — BE SPECIFIC

| NO. | NAME OF VICTIM Owner of property, person assaulted, etc. | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc. | VALUE OR PROPERTY Over or under $250. | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc. |
|---|---|---|---|---|
| 1 | Charles Mouris | | | shod foot |
| 2 | Charles Mouris | | | |
| 3 | Michael McSweeney Michael Callahan | | | Hand gun |
| 4 | Natalie Bosse | stolen Sears card | over | |

OTHER REMARKS:
Investigation of Officer Charles Mouris, Detective Fitzhenry and Massachusetts State Trooper Steven McDonald.

X ______________________
SIGNATURE OF COMPLAINANT

## DEFENDANT IDENTIFICATION INFORMATION — Complete data below if known.

| DATE OF BIRTH | PLACE OF BIRTH | SOCIAL SECURITY NUMBER | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| 10/14/66 | Boston | 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 | M | W | 5/06 | 160 | grn | brn |

| OCCUPATION | EMPLOYER/SCHOOL | MOTHER'S NAME (MAIDEN) | FATHER'S NAME |
|---|---|---|---|
| | | | |

## ▼ COURT USE ONLY ▼

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| | NO PROCESS TO ISSUE<br>☐ At request of complainant<br>☐ Complainant failed to prosecute<br>☐ Insufficient evidence having been presented | |
| | PROCESS TO ISSUE<br>☐ Sufficient evidence presented<br>☐ Defendant failed to appear<br>TYPE OF PROCESS<br>☐ Warrant<br>☐ Summons returnable ______ | |
| | ☐ Continued to ______ | |

COMMENTS

DEDHAM DISTRICT COURT 2001 FEB 20 A 8:31

C-CR2 (3/88)

Exibit-3
3 Page

CERTIFICATE

I, SUZANNE M. MASCIA, do hereby certify that the foregoing record, pages 1 through 70, is a complete, accurate and true transcription of my voice written notes taken in the aforementioned matter to the best of my skills and ability.

Suzanne M. Mascia

SUZANNE M. MASCIA

The foregoing certification of this transcript does not apply to any reproduction of same by means unless under the direct control and/or direction of the Certifying Reporter.

***16656** M.G.L.A. 41 § 98A

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. ADMINISTRATION OF THE GOVERNMENT
TITLE VII. CITIES, TOWNS AND DISTRICTS
CHAPTER 41. OFFICERS AND EMPLOYEES OF CITIES, TOWNS AND DISTRICTS
POLICE OFFICERS

Current through Ch. 73 of the 2004 2nd Annual Session.

## § 98A. Arrest on fresh and continued pursuit

A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant. Said officer may return any person so arrested to the jurisdiction wherein said offence was committed. Nothing contained in this section shall be construed as limiting the powers of a police officer to make arrests and in so far as possible this section shall be deemed to be declaratory of the common law of the commonwealth.

CREDIT(S)

*Added by St.1967, c. 263.*

<General Materials (GM) - References, Annotations, or Tables>

REFERENCES

LIBRARY REFERENCES

2003 Main Volume

Arrest ⚷66.
Westlaw Topic No. 35.
C.J.S. Arrest §§ 52 to 53.

RESEARCH REFERENCES

2003 Main Volume

Treatises and Practice Aids

12 Mass. Prac. Series § 24.17, Operating Under The Influence-Field Sobriety Tests, Arrest And Booking.

12 Mass. Prac. Series § 24.23, Search & Seizure Of Motor Vehicle And Occupants.

12 Mass. Prac. Series § 24.26, Search And Seizure Of Motor Vehicle And Occupants-Failure To Stop And Hot Pursuit.

14A Mass. Prac. Series § 9.6, Arrest Without A Warrant-Extraterritorial Arrest.

17B Mass. Prac. Series § 52.66, Self Defense-Arrest By A Private Person.

17B Mass. Prac. Series § 52.80, Constitutional Defenses-Arrest.

18A Mass. Prac. Series § 845, Powers And Duties.

***16657** 30 Mass. Prac. Series § 100, Limitations On Power Of Arrest Without A Warrant As To Places.

30 Mass. Prac. Series § 101, Power To Arrest Without A Warrant While Engaged In Fresh Pursuit-Between Cities And Towns Of The Commonwealth.

32 Mass. Prac. Series § 25, Power Of Arrest.

44 Mass. Prac. Series § 9, Applicability Of Constitutional Guarantees-Privilege Against Self-Incrimination; Admissibility Of Statements; "Interested Adult" Protections; Voluntariness; Order On Motion To Suppress (Form).

ANNOTATIONS

NOTES OF DECISIONS

In general 1
Collective knowledge 4
Commission of offense 6
Failure to stop 5
Fresh pursuit 3
Instructions 2

1. In general

Generally, police officer may not make arrest without warrant beyond boundaries of governmental unit he serves unless engaged in fresh pursuit of suspect concerning arrestable offense, whether it be felony or misdemeanor, initially committed in arresting officer's presence and within his jurisdiction. Com. v. Trudel (1997) 674 N.E.2d 262, 42 Mass.App.Ct. 903. Arrest ⚷66(2); Arrest ⚷66(3)

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Although police officer's powers to execute arrest warrant are state wide, power to arrest without warrant is limited to officer's governmental unit unless he is in fresh and continued pursuit. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Arrest ⚿66(3)

Discovery upon search of defendant of illegally possessed firearm and ammunition which did not match weapon gave police detective cause to search vehicle of defendant for other concealed objects. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Searches And Seizures ⚿68

Police officers may make extraterritorial "fresh pursuit" arrests for any arrestable offense, be it felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction. Com. v. Dise (1991) 583 N.E.2d 271, 31 Mass.App.Ct. 701, review denied 588 N.E.2d 691, 412 Mass. 1102. Arrest ⚿66(2)

***16658** When police officer makes warrantless arrest outside his territory and he is not "on fresh and continued pursuit" of suspected felon and has not been specially sworn in as police officer in neighboring territory, officer acts only with the authority he would have as a private citizen. Com. v. Kerr (1991) 565 N.E.2d 1201, 409 Mass. 284. Arrest ⚿66(2); Arrest ⚿66(3)

Police officer did not have authority to arrest defendant outside city boundaries where he had no reason to believe that defendant committed arrestable offense of driving under influence at time he followed defendant outside jurisdiction; officer had only observed defendant commit nonarrestable traffic violation. Com. v. LeBlanc (1990) 551 N.E.2d 906, 407 Mass. 70. Automobiles ⚿349(12)

2. Instructions

Instruction requested by defendant in trial on charges of assault of police officer that Massachusetts law limited arresting authority of police officers to their territorial jurisdiction and that, in absence of proof of fresh pursuit, officers were acting solely as private citizens on defendant's premises was properly refused; instruction would have improperly removed question from jury, transferring factual issue into erroneous conclusive legal determination on record. Com. v. McCrohan (1993) 610 N.E.2d 326, 34 Mass.App.Ct. 277. Criminal Law ⚿761(11)

3. Fresh pursuit

Police officer who had observed motorist driving through a red light without stopping, after which motorist failed to stop when officer activated lights and siren and directed him to pull over, was authorized to commence fresh pursuit of motorist, and to stop motorist after he drove outside of officer's jurisdictional territory. Com. v. Head (2000) 730 N.E.2d 891, 49 Mass.App.Ct. 492. Automobiles ⚿349(12)

Officer was in "pursuit" of driver at time driver left officer's jurisdiction, within scope of officer's statutory authority to make arrest outside his jurisdiction, despite fact that officer did not activate his siren or lights or attempt to overtake and stop driver while driver was within his jurisdiction, where officer's reasons for following driver out of his jurisdiction were based upon his observations of an arrestable offense, commission of which continued into officer's jurisdiction. Com. v. Magazu (2000) 722 N.E.2d 488, 48 Mass.App.Ct. 466. Automobiles ⚿349(12)

Police officer's power to arrest without warrant outside boundary of his governmental unit is limited unless he is in fresh and continuous pursuit. Com. v. Gray (1996) 667 N.E.2d 1125, 423 Mass. 293. Arrest ⚿66(2)

***16659** Police officer's official authority to make warrantless arrest is limited to territorial jurisdiction of his appointment, unless officer is on fresh and continued pursuit of felon for any offense committed in his presence within his jurisdiction. Com. v. Claiborne (1996) 667 N.E.2d 873, 423 Mass. 275. Arrest ⚿66(3)

Extraterritorial "fresh pursuit" arrests are permissible for any arrestable offense, whether felony or misdemeanor, initially committed in arresting officer's presence and within his jurisdiction. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚿66(3)

Arrest of defendant across town line was permissible where police officer of neighboring town had been in "fresh and continued pursuit" of defendant. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚿66(3)

Fresh pursuit doctrine authorized police detective's stop and arrest of defendant without a warrant outside of officer's jurisdiction, where detective was within his jurisdiction when he received information regarding outstanding warrant and had reason to believe that suspect had committed arrestable offense when he began his pursuit which ultimately ended in defendant's arrest outside of police officer's jurisdiction. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Arrest ⚿66(3)

Town officer who observed motor vehicle travel in town at speeds varying from ten to thirty-seven miles per hour and cross over center line of roadway on two occasions had "some reason to believe" that motorist was operating a motor vehicle either while under the influence or negligently so as to endanger, both arrestable offenses, thus justifying officer's "fresh pursuit" of vehicle across town line to make arrest. Com. v. O'Hara (1991) 571 N.E.2d 51, 30 Mass.App.Ct. 608, review denied 576 N.E.2d 685, 410 Mass. 1103. Automobiles ⚿349(12)

4. Collective knowledge

Fact that arrestable offenses were not committed in arresting officer's immediate presence, but rather were communicated to him by radio from officer who did observe offenses, did not remove authority of officer to perform extraterritorial arrest after pursuing defendant across town line; both officers acted in joint effort. Com. v. Zirpolo (1994) 639

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚷66(3)

"Collective knowledge doctrine," under which knowledge of one police officer is knowledge of all, applied to determine whether officer had authority to perform extraterritorial arrest where a fellow officer, and not arresting officer himself, observed defendant's offenses. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚷66(2)

***16660** 5. Failure to stop

Defendant's failure to stop for police officer who pursued defendant in unmarked police cruiser with its strobe lights flashing, while displaying his badge, gave officer authority to arrest defendant outside of officer's jurisdiction, and therefore evidence discovered as result of limited pat-down search of defendant was properly admitted at trial, though charge of failing to stop for police officer was dismissed. Com. v. Gray (1996) 667 N.E.2d 1125, 423 Mass. 293. Arrest ⚷66(3); Criminal Law ⚷394.4(9)

6. Commission of offense

Officer had reason to believe driver was committing offense of driving under the influence of intoxicating liquor in officer's presence and within his jurisdiction, within scope of officer's statutory authority to make arrest outside his jurisdiction, where officer and driver were outside officer's jurisdiction at time officer first observed driver driving in manner indicating he was intoxicated, and driver continued to drive and entered officer's jurisdiction moments later. Com. v. Magazu (2000) 722 N.E.2d 488, 48 Mass.App.Ct. 466. Automobiles ⚷349(12)

Police officer, who first observed pickup truck in bar parking lot that was partially in neighboring town, could pursue vehicle into neighboring town and make warrantless arrest of driver, based on his observations of truck lurching back and forth in manner consistent with drunk driving while it was still in officer's town. Com. v. Trudel (1997) 674 N.E.2d 262, 42 Mass.App.Ct. 903. Automobiles⚷ 349(12)

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***3856** Massachusetts Rules of Criminal Procedure (Mass.R.Crim.P.), Rule 2

MASSACHUSETTS GENERAL LAWS ANNOTATED
MASSACHUSETTS RULES OF CRIMINAL PROCEDURE
FOR DISTRICT AND SUPERIOR COURTS
RULES OF CRIMINAL PROCEDURE

*Current with amendments received through Jan. 1, 2004*

## Rule 2. Purpose; Construction; Definition of Terms

< (Applicable to District Court and Superior Court) >

(a) Purpose; Construction. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay.

(1) Words or phrases importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular, and words importing the masculine gender may include the feminine and neuter.

(2) When in these rules reference is made to a subdivision of a rule, that reference is to that subdivision and to any subdivisions thereof.

(b) Definition of Terms. In construing these rules the following words and phrases shall have the following meanings unless a contrary intent clearly appears from the context in which they are used:

(1) "Indigent" means any defendant who is unable to procure counsel with his funds as defined in Supreme Judicial Court Rule 3:10.

(2) "Indigent but able to contribute" means any defendant who is unable to procure counsel with his funds but is able to contribute funds for the cost of counsel as defined in Supreme Judicial Court Rule 3:10.

(3) "Capital Crime" means a charge of murder in the first degree.

(4) "Commonwealth" includes the prosecuting office or agency and all officers or agents responsible thereto.

(5) "Court" includes a judge, special magistrate, or clerk.

(6) "District Attorney" or "Attorney General" include assistant district attorneys or assistant attorneys general and other attorneys specially appointed to aid in the prosecution of a case.

***3857** (7) "District Court" includes all divisions of the District Court Department of the Trial Court, the Boston Municipal Court Department of the Trial Court, and the Juvenile Court Department of the Trial Court, or sessions thereof for holding court.

(8) "Interested Person" includes the adverse party, a co-defendant, and a witness who is to be deposed.

(9) "Judge" includes a judge of a court or one properly assigned to a court or a special magistrate when in the performance of those duties imposed and authorized by these **rules**.

**(10)** "Juvenile Court" means a division of the Juvenile Court Department of the Trial Court, or a session thereof for holding court.

(11) "Mailing" means the use of regular mail and shall not require registered or certified mail.

(12) "Prosecuting Attorney" means the attorney general or assistant attorneys general, district attorney, assistant district attorneys, special assistant district attorneys, or legal assistants to the district attorney, or other attorneys specially appointed to aid in the prosecution of a case.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

(13) "Prosecutor" means any prosecuting attorney or prosecuting officer, and shall include a city solicitor, a police prosecutor, or a law student approved for practice pursuant to and acting as authorized by the rules of the Supreme Judicial Court.

(14) "Related Offense" means one of two or more offenses which are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.

(15) "Return Day" means the day upon which a defendant is ordered by summons to first appear or, if under arrest, does first appear before a court to answer to the charges against him, whichever is earlier.

(16) "Special Magistrate" means any person who is appointed pursuant to, and empowered to administer those functions authorized by, rule forty-seven of these rules.

(17) "Summons" means

(A) criminal process issued to a person requiring him to appear at a stated time and place to answer to criminal charges; or

(B) process issued to a person requiring him to appear at a stated time and place to give testimony in a criminal proceeding; or

***3858** (C) process issued to a person requiring him to appear and produce at a stated time and place books, designated papers, documents, or other objects for use in a criminal proceeding.

(18) "Superior Court" means the Superior Court Department of the Trial Court, or a session thereof for holding court.

CREDIT(S)

*Amended May 29, 1986, effective July 1, 1986.*

HISTORICAL NOTES

REPORTER'S NOTES

2002 Main Volume

Rule 2 is perhaps the most significant of the rules in advancing the trend toward a high degree of procedural fairness in the administration of criminal justice. This is so because the rule not only permits but requires the rules to be construed and applied in a manner which provides for fairness in their administration to the end that a just determination in every criminal proceeding shall be achieved. The rules must be approached with sympathy for this purpose; they must be interpreted with common sense.

The rules were not intended to be administered inflexibly without regard for the circumstances of the particular case. Where a literal interpretation of a rule and its application in a specific situation would lead to unnecessary expense or delay, would unduly complicate the proceedings, or would operate unfairly or produce an unjust result, that interpretation is to yield to the principle enunciated in Rule 2(a).

This is not to imply that the rules were conceived as merely guidelines or suggested procedures to which the courts and counsel need adhere only as will further their particular interests. They have the force and effect of law.

The appellate courts have made it increasingly clear that abuse of power by the prosecution or by trial judges is not to be tolerated. See e.g., S.J.C. Rule 3:22A, Disciplinary Rules Applicable to Practice as a Prosecutor or as a Defense Lawyer, PF 1-14 (Feb. 14, 1979); Commonwealth v. St. Pierre, Mass.Adv.Sh. (1979) 834, 387 N.E.2d 1135; Commonwealth v. Soares, Mass.Adv.Sh. (1979) 593, 387 N.E.2d 499; Commonwealth v. Ellison, Mass.Adv.Sh. (1978) 2072, 379 N.E.2d 560; Commonwealth v. Earltop, Mass.Adv.Sh. (1977) 532, 539, 361 N.E.2d 220 (Hennessey, C.J., concurring); Commonwealth v. Redmond, 370 Mass. 591, 351 N.E.2d 501 (1976); Commonwealth v. Sneed, Mass.Adv.Sh. (1978) 3156, 383 N.E.2d 843. It is equally apparent that a high standard of conduct is demanded of defense counsel. See S.J.C. Rule 3:22A, supra, DF 1-15. A disregard for these rules of court or a failure to adhere to their provisions are abuses of the system which can be expected to produce problems in the administration of justice and unfairness to the Commonwealth, defendants, and the public, and which, therefore, should not be tolerated by either the trial or appellate courts.

***3859** Subdivision (a). The language of the first paragraph is drawn virtually without change from Fed.R.Crim.P. 2. These rules are intended to minimize complicated proceedings and needless expense and delay and are to be construed so as to achieve that goal.

The principle of construction stated in subdivision (a)(1) is taken from G.L. c. 4, § 6, cl. fourth, which relates to the construction of the General Laws.

Subdivision (a)(2) is designed to avoid any confusion in reading references to subdivisions. Included in a reference to a subdivision are all

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

paragraphs, subparagraphs, and clauses of that subdivision.

Subdivision (b). These definitions are to be used in construing these rules unless a contrary interpretation is clearly demanded by the context within which the term is used. See G.L. c. 4, § 7; c. 3, § 63.

(1) Appointed Counsel. This definition is suggested by Superior Court Rule 53(3) (1974); it is to be distinguished from "Assigned Counsel," infra.

(2) Assigned Counsel. The terms "appointed counsel" and "assigned counsel" have been used interchangeably in the case law. See e.g., Costarelli v. Municipal Court of the City of Boston, 367 Mass. 35, 323 N.E.2d 859 (1975). However, for the purposes of these rules, each term has been given a separate and distinct definition. In these rules, "assigned counsel" means a member of a publicly funded or charitable organization, such as the Massachusetts Defenders Committee (G.L. c. 221, § 34D. See Rule 8[b] ), or a county defender. "Appointed counsel" denotes a private attorney who is designated by a judge or magistrate to represent a defendant who cannot afford counsel. Both assigned and appointed counsel may include senior law students appearing without compensation on behalf of indigent defendants as permitted by S.J.C. Rule 3:11 (1974: 366 Mass. 867, as amended, 1975; 367 Mass. 914).

(3) Capital Crime. This definition is drawn from existing case law, e.g., Commonwealth v. Capalbo, 308 Mass. 376, 32 N.E.2d 225 (1941); Commonwealth v. Ibrahim, 184 Mass. 255, 68 N.E. 231 (1903); Green v. Commonwealth, 94 Mass. (12 Allen) 155 (1866). Compare G.L. c. 278, § 33E (capital crime defined "for the purposes of ... [appellate] review" only). General Laws c. 274, § 2 provides that, "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon." Therefore, an indictment of a defendant as an accessory before the fact of first degree murder sets out a capital crime. Grady v. Treasurer of the County of Worcester, 352 Mass. 702, 704, 227 N.E.2d 490 (1967).

***3860** (4) Commonwealth. The definition of this term reflects the meaning of the word as commonly used in the case law and statutes.

(5) Court. This term is used in the rules to include those officials most intimately involved in the process of adjudicating cases. When so generically used, the word is not to be construed so as to expand or limit those duties traditionally or by law within the prerogative of certain officials.

(6) District Attorney or Attorney General. As with "Commonwealth," supra, these terms are used both in the sense of the office and the personnel thereof in their official capacity.

(7) District Court. General Laws c. 211B, § 1 (inserted by St.1978, c. 478,§ 110) established the Trial Court of the Commonwealth which consists in part of the Superior Court Department, the District Court Department, the Boston Municipal Court Department, and the Juvenile Court Departments. For ease of reference throughout these rules, the latter three Departments are included within the term "District Court."

It is in keeping with the policy of these rules to secure simplicity and uniformity in procedure to make the Juvenile Court Department subject to these rules, insofar as they are consistent with juvenile practice. See District Court Special Rule 2 (1974), which applies the rules of the District Court to juvenile proceedings insofar as they are "pertinent."

(8) Interested Person. This term specifies those persons who are entitled to notice of, for example, the filing of motions, Mass.R.Crim.P. 13, 32, or the taking of a deposition, Mass.R.Crim.P. 36.

(9) Judge. In addition to its accepted meaning, for purposes of these rules this term is to include a magistrate when used in reference to a function which that official is authorized to perform by Mass.R.Crim.P. 48.

(10) Juvenile Court. See G.L. c. 211B, § 1 (inserted by St.1978, c. 478, § 110), c. 218, §§ 57-60 (St.1978, c. 478, §§ 212-16).

The divisions of the Juvenile Court Department, within their respective jurisdictions, have and exercise the same powers, duties and procedures as the District Court or Municipal Court Departments and are subject to the laws relating thereto, so far as applicable. G.L. c. 218, § 59 (as amended, St.1978, c. 478, § 215).

***3861** (11) Mailing. It is intended that unless specifically provided for elsewhere in these rules, neither registered nor certified mailing is required.

(12) Prosecuting Attorney. This term includes those attorneys who prosecute the majority of criminal cases in the Commonwealth.

(13) Prosecutor. This definition is broader than that of "prosecuting attorney," and reflects the fact that many cases in the District Courts are prosecuted by a police prosecutor. Under these rules, some prosecutorial functions can be carried on only by a district attorney or attorney general. See e.g., Mass.R.Crim.P. 15(d)(1)(B). A prosecutor may include senior law students appearing on behalf of the Commonwealth pursuant to S.J.C. Rule 3:11 (1974: 366 Mass. 867, as amended, 1975: 367 Mass. 914).

(14) Related Offense. For further explanation of this definition, see Mass.R.Crim.P. 9 and Reporter's Notes.

(15) Return Day. The "return day" is the date upon which a defendant under arrest first appears in court or the date upon which a defendant not under arrest is scheduled to appear pursuant to summons. It is the date upon which speedy trial rights attach ( Mass.R.Crim.P. 36[b][1] ) and from which other time limits are measured.

(16) Special Magistrate. The office of "Special Magistrate" is defined in terms of its powers and duties. See Mass.R.Crim.P. 47. Special Magistrates are to be distinguished from "Magistrates in the Trial

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Court" under G.L. c. 221, §§ 62B-62C (inserted by St.1978, c. 478, § 250).

(17) Summons. This definition includes process issued pursuant to Mass.R.Crim.P. 6 and 17. The definitions contained in subdivisions (b)(17)(B) and (C) of this rule replace the older term "subpoena."

(18) Superior Court. See G.L. c. 211B, § 1 (inserted by St.1978, c. 478, § 110), c. 212 (as amended, St.1978, c. 478, §§ 115-25).

***3862** REFERENCES

CROSS REFERENCES

Construction of statutes, see M.G.L.A. c. 4, §§ 6, 7.

LIBRARY REFERENCES

2002 Main Volume

Courts ⚷85.
Westlaw Topic No. 106.
C.J.S. Courts § 130.

RESEARCH REFERENCES

Treatises and Practice Aids

41 Mass. Prac. Series § 5:19, Table Of Court Rules.

41 Mass. Prac. Series RAP R 8, The Record On Appeal.

30 Mass. Prac. Series § 74, Definition Of Arrest Warrant.

30 Mass. Prac. Series § 83, Summons Must Issue Unless Cause Shown For Issuance Of Warrant.

30 Mass. Prac. Series § 485, The Right To Bail In Capital Cases.

30 Mass. Prac. Series § 594, Importance Of The Rule.

30 Mass. Prac. Series § 617, By Complaint-Superior Court.

30 Mass. Prac. Series § 636, Capital Crime-Defendant Cannot Waive Indictment.

30 Mass. Prac. Series § 639, Written Waiver Of Indictment Must Be Filed.

30 Mass. Prac. Series § 792, The Persons Who May Present Evidence To The Grand Jury.

30 Mass. Prac. Series § 798, Grand Jury May Require Witness To Furnish Things Not Testimonial In Character.

30 Mass. Prac. Series § 845, Introduction.

30 Mass. Prac. Series § 850, Contents Of Summons.

30 Mass. Prac. Series § 855, Service Of Summons-Manner.

30 Mass. Prac. Series § 881, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 885, Introduction.

30 Mass. Prac. Series § 890, Procedure At Initial Appearance-Interview By Probation Department.

***3863** 30 Mass. Prac. Series § 951, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 967, Difference Between Appointed And Assigned Counsel.

30 Mass. Prac. Series § 973, District Court.

30 Mass. Prac. Series § 1158, Presence Of Judge Or Special Magistrate Is Not Required.

30 Mass. Prac. Series § 1167, Time Of Filing.

30 Mass. Prac. Series § 1191, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 1271, Text Of Rule And Reporter's Notes.

30A Mass. Prac. Series § 1388, Evidence Must Be In Possession, Custody, Or Control Of Prosecutor.

30A Mass. Prac. Series § 1480, Approval Of District Attorney Or Attorney General Necessary Before Commonwealth May Appeal.

30A Mass. Prac. Series § 1516, Persons Authorized To File Nolle Prosequi.

30A Mass. Prac. Series § 1545, Type Of Summons Discussed In The Rule.

30A Mass. Prac. Series § 1561, Introduction.

30A Mass. Prac. Series § 1573, Manner Of Service.

30A Mass. Prac. Series § 1623, Procedure If Defendant Absents Himself During Trial-If Case Is Capital Crime.

30A Mass. Prac. Series § 1649, Jury Trial Cannot Be Waived In Capital Case.

30A Mass. Prac. Series § 2064, Motion For A New Trial In Capital Cases.

30A Mass. Prac. Series § 2239, Notice Of Hearing On Motion.

30A Mass. Prac. Series § 2261, Text Of Rule And Reporter's Notes.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

30A Mass. Prac. Series § 2274, Time When Defendant Must Be Brought To Trial.

30A Mass. Prac. Series § 2323, Dismissal Of Related Charges.

30A Mass. Prac. Series § 2632, Delinquency Proceedings And The Criminal Rules.

44 Mass. Prac. Series § 41, Contempt.

***3864** 17B Mass. Prac. Series § 51.1, In General.

17C Mass. Prac. Series § 59.78, Discovery.

14 Mass. Prac. Series § 4.13, Objections.

14 Mass. Prac. Series § 4.55, Right To Appeal Criminal Interlocutory Orders.

14 Mass. Prac. Series § 4.72, Authority Of Trial Court To Issue Report.

14 Mass. Prac. Series § 4.74, Report Of Interlocutory Matter.

14 Mass. Prac. Series § 4.96, Stays In Criminal Cases.

14B Mass. Prac. Series § 14.62, Structure Of Juvenile Court System-In General.

UNITED STATES CODE ANNOTATED

Purpose and construction of rules, see Fed.Rules Cr.Proc. Rule 2, 18 U.S.C.A.

ANNOTATIONS

NOTES OF DECISIONS

In general 1/2
Contempt 4
Parties 1
Probable cause determination 6
Reporters' notes 3
Return day 2
Written statement 5

1/2. In general

Application for issuance of process, which may be presented by lay persons or police officers, requests authority of a court to make an arrest or issue a summons, and thus it requires magistrate to exercise good deal of discretion, whereas an application for complaint does not call on the magistrate to exercise substantial discretion, in that it does not call on court to issue process, the arrest is already accomplished, it does not require approval of the validity of the arrest or assess the potential strength of the prosecution, and it is merely an aid to facilitating preparation of the complaint. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑211(1); Criminal Law🔑 217

1. Parties

Term "district attorney" within Rule 15 governing who may authorize interlocutory appeal by the Commonwealth from granting of suppression motion includes assistant district attorneys. Com. v. Dellicolli (1980) 410 N.E.2d 742, 10 Mass.App.Ct. 909, review denied 441 N.E.2d 1042, 383 Mass. 890. District And Prosecuting Attorneys 🔑3(4)

***3865** If the allegedly aggrieved person files a complaint for civil contempt seeking payment of court-ordered support and is represented by private counsel, the probation department would appear to have no rule in prosecuting the case, at least when no public assistance is being provided, but if the contempt hearing includes both civil and criminal features, the plaintiff who initiated the proceedings could act in place of a prosecutor because private parties to civil litigation have the right to press both the civil and criminal aspects of the case. Furtado v. Furtado (1980) 402 N.E.2d 1024, 380 Mass. 137. Child Support 🔑473; Child Support 🔑497

2. Return day

Where return day, the day defendant was first before court to answer to charges against him, fell within second 12-month period after effective date of Rules of Criminal Procedure, defendant was to be tried within 18 months. Com. v. Farris (1983) 455 N.E.2d 433, 390 Mass. 300. Criminal Law 🔑577.8(1)

3. Reporters' notes

Reporters' Notes are an influential guide when interpreting Rules of Criminal Procedure. Com. v. Sheridan (1996) 667 N.E.2d 279, 40 Mass.App.Ct. 700. Courts 🔑85(3)

4. Contempt

Although the Massachusetts Rules of Criminal Procedure pertaining to contempt apply only to proceedings in the Superior, District, Juvenile, and Boston Municipal Courts, judges of other courts possess similar contempt powers under the common law and by statute. Com. v. Rogers (1999) 703 N.E.2d 1199, 46 Mass.App.Ct. 109, review denied 709 N.E.2d 1119, 429 Mass. 1102. Contempt 🔑33

5. Written statement

Rule requiring written statement constituting basis for arrest to be attached to application for complaint was satisfied, even though formal application for complaint was not filed, given that judge considered state police report and booking sheet, report set forth in detail that defendant had been target of month-long narcotics investigation, and that defendant was arrested after search of home and vehicle pursuant to

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

warrant revealed that drugs were found in both places. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑211(1)

6. Probable cause determination

Failure to make prompt judicial determination of probable cause or to admit defendant to bail within requisite time would not have been enough to require dismissal of possession of controlled substance with intent to distribute and school zone violation charges, even if claim had been timely made, and police did not measure distance from school to home at which drugs were found prior to arrest, given that defendant did not demonstrate prejudice in trial or interference with procedural rights therein, police would have taken necessary measurements of distance prior to hearing, and purported prejudice had little to do with evidence. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Bail 🔑42; Criminal Law 🔑223

***3866** State did not have to present clerk-magistrate with facts showing probable cause for school zone violation when complaint was issued, even though police report made no mention of fact that defendant's home where drugs were found was within 1,000 feet of school, where case was commenced by warrantless arrest, which required showing of probable cause for each charge at probable cause determination, not when complaint was issued, and when complaint was issued, police only had to show basis for arrest. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑212

Complaint procedure in arrest cases does not include a probable cause determination. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Arrest 🔑70(2)

Current with amendments received through Jan. 1, 2004

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***768** 97 S.Ct. 768

429 U.S. 1053, 50 L.Ed.2d 770

Supreme Court of the United States

Ellis Lorraine THOMPSON
v.
State of OKLAHOMA

No. 76-5283
January 10, 1977

On petition for writ of certiorari to the Court of Criminal Appeals of Oklahoma.

Jan. 10, 1977. Mr. Justice BRENNAN, with whom Mr. Justice MARSHALL joins, dissenting.

Petitioner was charged by information in Oklahoma state court with murder. After a jury trial, he was convicted of Manslaughter in the First Degree. Thereafter, petitioner was charged in separate informations with two additional offenses arising out of the same episode: Burglary in the First Degree and Carrying a Firearm. He pleaded guilty to these offenses and was sentenced to additional concurrent terms of 10 years imprisonment for each offense. Petitioner then made an application for postconviction relief in the state district court attacking the latter two convictions on grounds of collateral estoppel and double jeopardy. The district court denied the application, and the Oklahoma Court of Criminal Appeals affirmed.

I would grant the petition for certiorari and reverse the judgment of the Court of Criminal Appeals affirming the [429 U.S. 1054] burglary and firearm convictions. I adhere to the view that the Double Jeopardy Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, requires the prosecution in one proceeding, except in extremely limited circumstances not present here, of "all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." Ashe v. Swenson, 397 U.S. 436, 453-454, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). See Cousins v. Maryland, 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); Dempsey v. United States, 423 U.S. 1079, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976) (Brennan, J., dissenting); Susi v. Flowers, 423 U.S. 1006, 96 S.Ct. 436, 46 L.Ed.2d 378 (1975) (Brennan, J., dissenting); Vardas v. Texas, 423 U.S. 904, 96 S.Ct. 206, 46 L.Ed.2d 135 (1975) (Brennan, J., dissenting); Stewart v. Iowa, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975) (Brennan, J., dissenting); Waugh v. Gray, 422 U.S. 1027, 96 S.Ct. 2622, 45 L.Ed.2d 684 (1975) (Brennan, J., ***769.** dissenting); Wells v. Missouri, 419 U.S. 1075, 95 S.Ct. 665, 42 L.Ed.2d 671 (1974) (Brennan, J., dissenting); Moton v. Swenson, 417 U.S. 957, 94 S.Ct. 3086, 41 L.Ed.2d 675 (1974) (Brennan, J., dissenting); Tijerina v. New Mexico, 417 U.S. 956, 94 S.Ct. 3085, 41 L.Ed.2d 674 (1974) (Brennan, J., dissenting); Ciuzio v. United States, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974) (Brennan, J., dissenting); Harris v. Washington, 404 U.S. 55, 57, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971) (concurring statement); Waller v. Florida, 397 U.S. 387, 395, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1975) (Brennan, J., concurring). See also People v. White, 390 Mich. 245, 212 N.W.2d 222 (1973); State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972); Commonwealth v. Campana, 452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), adhered to on remand, 455 Pa. 622, 314 A.2d 854 (1974); State v. Gregory, 66 N.J. 510, 333 A.2d 257 (1975).

The petition for a writ of certiorari is denied.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***2912** 97 S.Ct. 2912

433 U.S. 682, 53 L.Ed.2d 1054

Supreme Court of the United States

Thomas Leon HARRIS
v.
State of OKLAHOMA.

No. 76-5663.
June 29, 1977.

Defendant was convicted in the District Court, Tulsa County, of robbery with firearms, and he appealed. The Court of Criminal Appeals, 555 P.2d 76, affirmed. Petition for writ of certiorari was granted. The Supreme Court held that where proof of underlying felony, i. e., robbery with firearms, was necessary to establish intent necessary for felony-murder conviction of petitioner for fatal shooting of grocery store clerk during armed robbery the double jeopardy clause barred subsequent prosecution and conviction for robbery with firearms.

Reversed.

Mr. Justice Brennan, with whom Mr. Justice Marshall joined, filed concurring statements.

West Headnotes

[1] Double Jeopardy 🔑164

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(B) Included Offenses
135Hk164 Ruling on Greater as Bar to Prosecution for Lesser Offense.

(Formerly 110k199)

When conviction for a greater crime cannot be had without conviction for the lesser crime, the double jeopardy clause bars prosecution for the lesser crime after conviction for the greater one. U.S.C.A.Const. Amend. 5.

[2] Double Jeopardy 🔑164

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(B) Included Offenses
135Hk164 Ruling on Greater as Bar to Prosecution for Lesser Offense.

(Formerly 110k200(1))

Since under Oklahoma law proof of underlying felony, i. e., robbery with firearms, was required to prove intent necessary for felony-murder conviction for fatal shooting of grocery store clerk during armed robbery, double jeopardy clause precluded subsequent prosecution and conviction of petitioner for robbery with firearms. U.S.C.A.Const. Amend. 5.

PER CURIAM.

A cleark in a Tulsa, Okla., grocery store was shot and killed by a companion of petitioner in the course of a robbery of the store by the two men. Petitioner was convicted of felony-murder in Oklahoma State court. The opinion of the Oklahoma Court of Criminal Appeals in this case states that '[i]n a felony murder case, the proof of underlying felony [here robbery with firearms] is needed to prove the intent necessary for a felony murder conviction.' 555 P.2d 76, 80-81 (1976). Petitioner nevertheless was thereafter brought to trial and convicted on a seperate information charging the robbery with firearms, after denial of his motion to dismiss on the ground that this prosecution violated the Double Jeopardy ***2913.** Clause of the Fifth Amendment because he had been already convicted of the offense in the felony-murder trial. The Oklahoma Court of Criminal Appeals affirmed.

1,2° When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one. (FN*) *In re [433 U.S. 683] Neilsen, 131 U.S. 176, 9 S.Ct. 672, 33 LEd. 118 (1889); cf. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).* '[ ] person [who] has been tried and convicted for a crime which has various incidents included in it, .... cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence. ' *In re Nielsen, supra,* 131 U.S., at 188, 9 S.Ct. at 676. See also *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Grafton v. United States,* 206 U.S. 333, 352, 27 S.Ct. 749, 754, 51 L.Ed. 1084 (1907).

The motion for leave to proceed *in forma pauperis* is granted, the petition for writ of certiorari is granted, and the judgment of the Court of Criminal Appeals is *Reversed.*

Mr. Justice BRENNAN, with whom Mr. Justice

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

MARSHALL joins, concurring.

I join the Court's opinion but in any event would reverse on a ground not addressed by the Court, namely, that the State did not prosecute the two informations in one proceeding. I adhere to the view that the Double Jeopardy Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, requires the prosecution in one proceeding, except in extremely limited circumstances not present here, of 'all the charges against a defendant that grow out of a single criminal act, occurence, episode, or transaction. ' *Ashe v. Swenson,* 397 U.S. 436, 453-454, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). See *Thompson v. Oklahoma,* 429 U.S. 1053, 97 S.Ct. 768, 50 L.Ed.2d 770 (1977) (Brennan, J., dissenting from denial of certiorari), and cases collected therin.

(FN*) The State conceded in its response to the petition for certiorari that 'in the Murder case, it was necessary for all the ingredients of the underlying felony of Robbery with Firearms to be proved . . . .' Brief in Opposition 4.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

To: Susan Jenness Pro-se Clerk.
United States District Court Suite 2300
John Joseph Moakley Bldg.
1 Courthouse way
Boston, Mass. 02210

RE: R.D. Glawson (Plaintiff Vs. Massachusetts (et-al) Agents of;

Dear Ms. Jenness,

Enclosed find 10 Page Varified civil Complaint for Immediate Hearing and Injunction. with Motion to Proceed without Prepayment and Application to Proceed without payment for The Marking on the Calender for A Date for A Hearing Before a magistrate Judge and docket entry Sheet. Number 8 Return for service.

date 12/13/04

Richard Glawson

Richard Glawson [signature]

S.B.C.C. Box 8000
Shirley, MA. 01464

I Richard Glawson hereby certify All Parties were served copies via 1st class mail on: ______________

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

I R. D. Glawson, Plaintiff, Souza-Barrowowski correctional center Box 8000 Shirley ma. 01464

**DEFENDANTS** Coffey Flashner & Daniel Connolly 45 Shawmut Ave. Canton Mass 02021 Robert Keaton — Robert W. Nelson (A.D.A.) Barrowowski Correctional center, Box 8000 Shirley, MA. 01464

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Boston, Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT U\K ? Norfolk &
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
PRO-SE
Richard D. GlAWSON - SBCC/Box 8000 Shirley mass. 01464

ATTORNEYS (IF KNOWN)
U\K

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☒ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. 2241 Petitioner is Held Against His Will in A state Penetentuary on A state conviction & sentence that are Constitutionaly Void by the 5th Amend. U.S.C.A & 14 Amend. U.S.C.A

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 INJUNCTION
DEMAND $ Declaratory Judgement
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S)** (See instructions): **IF ANY** Suffolk superior court JUDGE Not Assigned yet DOCKET NUMBER SUCR-2001-10299-1-18

DATE 12/13/04 SIGNATURE OF ATTORNEY OF RECORD Richard Glawson

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) R. D. Glawson Vs Massachusetts et al, Agents

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

✓ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

Com v. Richard Glawson SUCR-2001-10249-01-018

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

YES (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

YES (NO)

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES (NO)

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

(YES) NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

YES NO

A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION CENTRAL DIVISION WESTERN DIVISION

B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION (CENTRAL DIVISION) WESTERN DIVISION

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ____________________

ADDRESS ____________________

TELEPHONE NO. ____________________

AO 240 (Rev. 9/96)

# UNITED STATES DISTRICT COURT

Suffolk, Boston District of Massachusetts

R.D. Glawson,
Plaintiff

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT**

V.

Robert Keaton for Norfolk County
Lois Russo, Superintendant, (SBCC)
Defendant

CASE NUMBER: ____________________

I, Richard Glawson declare that I am the (check appropriate box)

☒ petitioner/plaintiff/movant ☐ other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated? ☒ Yes ☐ No (If "No," go to Part 2)

   If "Yes," state the place of your incarceration Souza Baranowsk-Correctional Center

   Are you employed at the institution? NO Do you receive any payment from the NO

   Attach a ledger sheet from the institution(s) of your incarceration showing at least the past six months' transactions.

2. Are you currently employed? ☐ Yes ☒ No

   a. If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

   b. If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.
   23 N. Manchester St Brockton Ma. 02156

3. In the past 12 twelve months have you received any money from any of the following sources?

   a. Business, profession or other self-employment ☐ Yes ☒ No
   b. Rent payments, interest or dividends ☐ Yes ☒ No
   c. Pensions, annuities or life insurance payments ☐ Yes ☒ No
   d. Disability or workers compensation payments ☐ Yes ☒ No
   e. Gifts or inheritances ☐ Yes ☒ No
   f. Any other sources ☐ Yes ☒ No

If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

**ALL INFORMATION CONTAINED HEREIN IS CONFIDENTIAL. IT SHALL NOT BE DISCLOSED TO ANY PARTY OTHER THAN AUTHORIZED COURT PERSONNEL OR OTHER PARTIES TO THIS LITIGATION.**

(This form prescribed by the Chief Justice of the Supreme Judicial Court pursuant to G.L.c. 261 § 27B, as amended by St.1980, c.539, § 6. Promulgate March 2, 1981.)

Court: United States District Court
Division: civil \ Federal
Department: ______

Name: Richard Glawson DOB: 10\14\66 POB: ______
Address: SBCC \ Box 8000 shirley ma. 01464.
Telephone #: Ø S.S.# 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
Father's Name: Douglas Mother's Name (Maiden): McPherson
Marital Status: Single Married Widowed Separated Divorced Deceased
Number of Dependents: Ø
Height: ______ Weight: ______ Hair: ______ Eyes: ______ Sex: ____ Race: ______
Employed by: Ø

**Part I:**

_____(a) Party is indigent because receives public assistance in the form of:

______ AFDC ______ GR ______ Poverty Related VA Benefits

______ Food Stamps ______ Medicaid ______ SSI

______ Refugee Settlement Benefits

VERIFIED ____________________

_____(b) Party is indigent because committed to public mental health facility.

VERIFIED ____________________

__✓__(c) Party is indigent based on the computation shown below.

# SUMMONS TO DEFENDANT

DOCKET NO.: 0154CR000364

Trial Court of Massachusetts
District Court Department

| DEFENDANT'S DOB | SEX | HOME PHONE | WORK PHONE | NO. COUNTS |
|---|---|---|---|---|
| 10/14/1966 | M | | | 10 |

COURT NAME and ADDRESS

Dedham District Court
631 High Street
Dedham, MA 02026-1848

DEFENDANT'S NAME and ADDRESS

GLAWSON, RICHARD D
27 O'BRIEN WAY
DEDHAM, MA 02026

DATE YOU MUST APPEAR

TIME YOU MUST APPEAR

←←←←←← YOU MUST APPEAR AT ABOVE COURT AT THIS DATE and TIME ←←←←←←

SCHEDULED EVENT

**ARRAIGNMENT**

**FIRST SIX COUNTS:**

1. 265/15/A ASSAULT TO MURDER c265 §15
2. 265/18B/A FIREARM IN FELONY, POSSESS c265 §18B
3. 265/18B/A FIREARM IN FELONY, POSSESS c265 §18B
4. 265/21A/B CARJACKING, ARMED c265 §21A
5. 265/15B/A ASSAULT W/DANGEROUS WEAPON c265 §15B
6. 265/15B/A ASSAULT W/DANGEROUS WEAPON c265 §15B

## TO THE ABOVE-NAMED DEFENDANT:

**You are hereby ordered to appear in this court on the date and time indicated above to answer to a criminal complaint that has been issued against you. Please report to the probation office upon your arrival at the court.**

| WITNESS: TESTE OF FIRST JUSTICE | DATE ISSUED | CLERK-MAGISTRATE |
|---|---|---|
| Hon. GERALD ALCH | 02/20/2001 | SALVATORE PATERNA |

## INSTRUCTIONS TO DEFENDANT

1. **YOU ARE REQUIRED TO APPEAR IN COURT** on the date and time shown above. Please bring this summons with you to the court.
2. **IF YOU FAIL TO APPEAR** in court on the date and time shown above or on any future scheduled dates, you will be found in default, a warrant for your immediate arrest will be issued, and you may be assessed substantial costs and warrant fees. The Registry of Motor Vehicles will also refuse to renew your driver's license and (if you are charged with a motor vehicle offense) will suspend your driver's license. The court may also issue a new complaint against you under G.L. c.276, §82A, which is separately punishable by up to $50,000 in fines and up to 5 years imprisonment (if you are charged with a felony) or up to $10,000 in fines and up to 1 year imprisonment (if you are charged with a misdemeanor).
3. **THE CHARGES AGAINST YOU.** The number of counts (charges) in this criminal complaint are shown in the "No. Counts" box above, and the first six counts are listed above. If there are more than six counts, you may obtain the details of them from the clerk-magistrate's office prior to arraignment. At your arraignment, you or your lawyer will be given a copy of the complaint.
4. **LAWYER.** You have a right to be represented by an attorney at every state of the proceedings against you. If you are charged with an offense punishable by imprisonment and you are unable to afford an attorney, you may be entitled to the services of a court-appointed attorney at no or reduced cost to you. You may apply for a court-appointed attorney when you report to the probation office on the date and time shown above.
5. **TRIAL BY JURY OR TRIAL BY A JUDGE.** If your case is not disposed of at arraignment or as a result of a pretrial hearing by a guilty plea or other disposition, it will be scheduled for a jury trial by a jury of six persons. If you waive the right to a jury trial, your case will be scheduled for a trial by a judge without a jury.

Atencion: Notificación oficial del tribunal; si no entiende inglés, obtenga una traducción.
Attention: Avis officiel du tribunal, Anglais limite, veuillez faire traduire.
Attenzione: avviso ufficiale del tribunale. Chi non capisce l'inglese lo faccia tradurre.
Atenção: Este é um anúncio jurídico oficial. Mande traduzi-lo se você não compreende o Inglês.
Atenção: Es é um anúncio oficial di tribunal. Mandá traduzil si bu ca ta entendê Inglês.
Atansyon: Se avi ofisyel Tribunal la. Fe tradwi'l souple, si'w pa kon Angle.
Внимание! Это повестка из суда. Если Вы не читаете по-английски, обратитесь к переводчику.
សូមប្រយ័ត្ន: [illegible]
XIN CHÚ Ý: ĐÂY LÀ MỘT THÔNG CÁO CHÍNH THỨC CỦA TÒA ÁN. NẾU QUÍ VỊ KHÔNG BIẾT TIẾNG ANH, VUI LÒNG NHỜ NGƯỜI DỊCH.
注意: 這是正式的法院通告。如果您不懂英語, 請找人代為翻譯.

Exibit -5

**Commonwealth of Massac usetts**
**County of Norfolk**
**The Superior Court**

@

**MITTIMUS TO Cedar Junction MCI (Walpole)**

**ocket #NOCR2001-00117-001**

To the Sheriff of said County of **Norfolk**, his dep ties, the Officers hereinafter named and the Superintendent of the **Cedar Jur tion MCI (Walpole)**

**GREETING:**

**Whereas**, by the consideration of the Superior C urt Department of the Trial Court for Criminal Business, holden at **Dedham** within a d for the County of **Norfolk**, on the **9th day of June** in the year of our Lord **2003**.

**Richard D Glawson**

now in the custody of the Sheriff of said County of **Norf k**, convicted of the crime(S) of
265:018:b.2 Assault, armed, intent to murder 02/16/2001

for which crime the said **Richard D Glawson** was sente ced to be confined in the **Cedar Junction MCI (Walpole)**,

We therefore, **command you**, the said Sheriff, De outies and Officers of the Court to remove the said **Richard D Glawson** from the Jail in **Dedham** in the said County of **Norfolk**, to the **Cedar Junction MCI (Walpole)**, anc **we command you**, the said Superintendent to receive the said **Richard D Glawson** a d immediately thereon to cause the said **defendant** to be confined therein for **a term of n ot exceeding 20 years or less than 15 years concurrent with sentence now being served or to be served - DNA sample - credit time 290 days - SENTENCE STAYED TO 9/10/03**

**as aforesaid.**

**WITNESS, Suzanne V. DelVecchio**, Chief Justi ce of said Court and the seal thereof at **Dedham** aforesaid, this **9th day of June** in th year of our Lord **2003**.

[signature] ....................................
Assistant Clerk

**RETURN**

**Norfolk**, SS.

**Dedham**
__________ **2003**

In obedience to the within warrant, I have conveyed the within name defendant to the **Cedar Junction MCI (Walpole)**, and delivered him to the Superintendent thereof w th a copy of this warrant.

Deputy Sheriff, of said County
Officer of the Court named within.

**Commonwealth of Massacl usetts**
**County of Norfolk**
**The Superior Court**

@

**MITTIMUS TO Cedar Junction MCI (' alpole)**

**[ ocket #NOCR2001-00117-002**

To the Sheriff of said County of **Norfolk**, his dept ies, the Officers hereinafter named and the Superintendent of the **Cedar Jun tion MCI (Walpole)**

**GREETING:**

**Whereas**, by the consideration of the Superior C urt Department of the Trial Court for Criminal Business, holden at **Dedham** within a id for the County of **Norfolk**, on the **9th day of June** in the year of our Lord **2003**.

**Richard D Glawson**

now in the custody of the Sheriff of said County of **Norf lk**, convicted of the crime(S) of

265/21A/C CARJACKING, FIREARM-ARMED c265 s21 02/16/2001

for which crime the said **Richard D Glawson** was sente iced to be confined in the **Cedar Junction MCI (Walpole)**,

We therefore, **command you**, the said Sheriff, D puties and Officers of the Court to remove the said **Richard D Glawson** from the Jail i **Dedham** in the said County of **Norfolk**, to the **Cedar Junction MCI (Walpole)**, ar l **we command you**, the said Superintendent to receive the said **Richard D Glawson** nd immediately thereon to cause the said **defendant** to be confined therein for **a term o not exceeding 20 years or less than 15 years concurrent with #117- 001 and any s ntence now being served or to be served - SENTENCE STAYED TO 9/10/03 - cred time 290 days**

**as aforesaid.**

**WITNESS, Suzanne V. DelVecchio,** Chief Ju tice of said Court and the seal thereof at **Dedham** aforesaid, this **9th day of June** in e year of our Lord **2003**.

Assistant Clerk

**RETURN**

**Norfolk**, SS. **Dedham**

__________**2003**

In obedience to the within warrant, I have conveyed the within na ed defendant to the **Cedar Junction MCI (Walpole)**, and delivered him to the Superintendent there f with a copy of this warrant.

Deputy Sheriff, of said County
Officer of the Court named within.

NOCR01-0117-001

# COMMONWEALTH OF MA: SACHUSETTS

NORFOLK, ss. At the SUPI RIOR COURT, begun and holden at DEDHAM, within and for the County i f Norfolk,

**on the third Thursday of March, 2001**

THE JURORS for the Commonwealth of Massachusetts, c: their oath present that

**RICHARD D. GL/ WSON**

**of Dedham in the County of Norfolk**
**on or about February 16, 2001**
**at Dedham in the County of Norfolk**

**being armed with a dangerous weapon, to wit: a gun, c d assault Michael J. Callahan, with intent to murder the said Michael J. Callahan, in violation of AGL c.265, s.18 (b)**

against the peace of said Commonwealth, and contrary t: the form of the Statute in such case made and provided.

A TRUE BI L

Scott ... Caney ................ Foreman of the Grand Jury.

Robert W. Whelan Jr. ........ ssistant District Attorney
Norfolk District

0086v

NOCR01-0117-002

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss. At the SUPERIOR COURT, begun and holden at DEDHAM, within and for the County of Norfolk,

**on the third Thursday of March, 2001**

THE JURORS for the Commonwealth of Massachusetts, on their oath present that

**RICHARD D. GLAWSON**

**of Dedham in the County of Norfolk**
**on or about February 16, 2001**
**at Dedham in the County of Norfolk**

**that said Richard D. Glawson while being armed with a dangerous weapon, to wit: a gun, with intent to steal a motor vehicle did assault, confine, maim or put in fear Michael J. Callahan for the purpose of stealing the motor vehicle in violation of MGL c. 265, s. 21A,**

against the peace of said Commonwealth, and contrary to the form of the Statute in such case made and provided.

A TRUE BILL

Scott W. Livery ........................ Foreman of the Grand Jury.

Robert W. Nelson, Jr. ........ Assistant District Attorney
Norfolk District

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

SUPERIOR COURT
CRIM NO. 01-0117-001-016

COMMONWEALTH        :

VS.                 :

RICHARD GLAWSON     :

# MEMORANDUM AND RULING

The defendant entered pleas of guilty to eleven Norfolk County indictments on February 20, 2003 and sentence was imposed on June 9, 2003.[1]  The defendant is proceeding *pro se* with the assistance of court-appointed standby counsel.  Moments before sentencing, the defendant filed motions to dismiss the indictments and to withdraw his guilty pleas.  These motions are DENIED without further hearing.  Moreover, on June 16, 2003, the defendant filed a Motion for a New Sentencing Hearing which is also DENIED[2].  A recitation of some of the case history is essential to an understanding of this Court's decisions.

The Norfolk indictments resulted from a series of events which allegedly originated in Suffolk County on February 12, 2001, were followed by transactions in Middlesex County and Suffolk County on February 15, 2001 and transactions in Norfolk County on February 16, 2001, and terminated with events leading to his arrest in Suffolk County also on February 16, 2001.  In the

---

[1] Sentencing was continued with the defendant's assent on two occasions, May 5 and 29 of 2003, so that his standby counsel could further explore a resolution of the matters pending in Suffolk County.

[2] On the same date, the defendant also filed motions for findings and rulings, appointment of appellate counsel, free transcripts, reserving date for revise and revoke, objection to the government's *nolle prosequi*, and for copies of docket sheets. These motions are addressed in the Court's ORDER on Page 7.

I ATTEST THAT THIS DOCUMENT IS A CERTIFIED PHOTOCOPY OF AN ORIGINAL ON FILE.

Deputy Assistant Clerk

Fall of 2002, the defendant happened to appear for a status conference on the Middlesex County indictments in the Cambridge Superior Court session to which this judge was then assigned. This judge learned that the defendant, if convicted, faced a mandatory life sentence in Suffolk County, a mandatory minimum 20 year sentence in Middlesex County, a mandatory minimum 20 year sentence in Norfolk County, a substantial number of years on a probation surrender in Essex County, and a contempt sentence for spitting at a Superior Court judge in Lowell. This judge asked the defendant if he had an interest in consolidating all of his outstanding matters with a plea disposition in mind. This judge offered to meet with the defendant's standby counsel and the assigned assistant district attorneys from the three counties with untried indictments and to contact the probation department in Essex County. The defendant agreed, the meeting took place, and this judge, after consultation with Middlesex and Essex probation officers and reviewing the sentencing guidelines, indicated in writing the likely disposition. This judge indicated that he would impose an aggregate sentence of 18-20 years with a from and after probationary period upon the Commonwealth's agreement to dismiss, file or *nolle prosse* the habitual criminal indictments in each county. All sentences would be concurrent, the defendant would be given full jail credits, and the Essex probation violation and the Lowell contempt would be imposed concurrently so that the aggregate of 18-20 years would not be exceeded. The defendant rejected the offer.

In November 2002, Judge Cratsley, the motions and trial judge in the Norfolk Superior Court, began hearing the defendant's pre-trial motions. The defendant's Petition for a writ of Habeas Corpus was denied on December 13, 2002. His Motion to Dismiss for Lack of a Speedy Trial was also denied on December 12, 2002 as was his Motion to Dismiss challenging his pre-trial

confinement. On January 27, 2003, hearings commenced on the defendant's motions to suppress evidence. These motions were denied on February 4, 2003 and interlocutory appeals were denied by the Supreme Judicial Court on February 10, 2003. A decision was issued on the defendant's Motion to Clear the Playing Field at Trial on February 11, 2003 and his jury trial commenced on February 12, 2003 before Judge Cratsley. At all these pre-trial motions and at his trial, the defendant was assisted by a court-appointed standby counsel, Mr. Luciano, who also serves as his court-appointed standby counsel on the Suffolk County indictments.

This judge was assigned to the Middlesex County Lowell Superior Court during the first four months of this year and was asked by the defendant's standby counsel and the prosecutors to follow up his previous involvement with this defendant by conferencing the cases with the defendant, his standby counsel, and the prosecutors from all three counties. The first conference, in Dedham, occurred during the week of February 11, 2003 and resulted in some plea concessions from the government, but the defendant decided to reject the consolidated offer. At one point, the defendant wanted to plead guilty to the habitual criminal indictment in Norfolk because it would provide for a more relaxed parole eligibility and this was unacceptable to the Commonwealth.

On February 20, 2003, during the sixth day of the defendant's jury trial in Norfolk County, this judge was sitting at the Lowell Superior Court when he was asked to travel to Dedham at the defendant's request to accept a guilty plea. This judge drove to the Norfolk Superior Court and conferred once again with the defendant, his standby counsel, and the prosecutors. The Norfolk prosecutor had indicated that he would *nolle prosse* the habitual offender indictment, recommend a 15-20 year sentence, and not insist on a from and after probationary term. The district attorney

also indicated that he would assist in arranging for a sentence to be served, at the defendant's request, in the federal penal system. This judge indicated that he: (1) would not exceed a sentence of 15-20 years on the Norfolk indictments, (2) would not impose a from and after probationary term, (3) would continue sentencing and give the defendant the opportunity for a pre-sentence report, (4) would thereafter stay the execution of sentence for a reasonable period so that the defendant could attempt to work out an agreement with Middlesex and Suffolk Counties, (5) would insure that the Norfolk sentences would be run concurrent with Middlesex and Suffolk sentences as well as the Essex matters, and (6) would make a strong recommendation to the commissioner of correction that the sentence be served in the federal system (if the defendant so-requested). The defendant accepted those terms and entered pleas of guilty to most of the Norfolk indictments upon the representation that the remaining Norfolk charges would be filed, *nolle prossed*, or dismissed at sentencing. This judge offered the defendant the benefit of a pre-sentence report from the probation department and he accepted the offer. The plea was not contingent upon a future plea resolution of the Middlesex and Suffolk indictments although this judge agreed to assist if the parties desired . The defendant was advised of the rights that he would be giving up with the acceptance of a guilty plea and this judge specifically found that the guilty plea was made knowingly, voluntarily, and intelligently and that there was a factual basis for acceptance of the guilty plea.

Subsequently, the defendant, his standby counsel, and the prosecutors from Middlesex and Suffolk Counties met with this judge at the Lowell Superior Court on or about March 7, 2003 where it was anticipated that the Middlesex and Suffolk cases might be resolved by guilty pleas. This did not occur because the defendant was reluctant to plead guilty to the most serious Suffolk

indictment which carried a mandatory minimum term even with a dismissal of the habitual criminal charge. The defendant's position was that a guilty plea to that indictment would subject him to a maximum security prison setting during the entire period of sentence and that he would not be eligible for programs which could earn him good time deductions. The plea negotiations broke down at that point.

When the defendant appeared for sentencing on the Norfolk cases on May 5 and May 27, 2003, it was represented to this judge that there was a possibility that Suffolk would not insist on a guilty plea to the indictment which carried the mandatory minimum sentence. This judge, after consultations with the defendant's standby counsel, the prosecutor, and the defendant in open court, continued the Norfolk sentencing to allow the defendant, through standby counsel, to pursue resolution of the Suffolk indictments with the prosecutor and the sessions judge. It was later reported that no offer from Suffolk would be made until sentencing had occurred in Norfolk.

On June 9, 2003, the defendant appeared for sentencing before this judge. The defendant first sought to argue a previously filed (and denied) motion to vacate the guilty plea of one of the predicate offenses underlying the habitual criminal indictments. When this judge informed the defendant that he was not hearing that matter and that sentencing recommendations were in order, the defendant then filed two motions, one to dismiss and one to withdraw his guilty pleas[3]. He argued that his motions and trial judge in Norfolk had threatened him with 50 years in prison

[3] The docket sheet shows the filing on 4/08/03 of a "Petition for the Great Writ of Liberty" and on 5/5/03 of a "Motion to Withdraw Guilty Plea before Sentencing and Plead Anew" (in addition to 5 other motions on that date). Neither the judge nor the assistant district attorney had seen these motions before the June 9, 2003 sentencing. The docket sheet shows the filing of about 150 defense motions in the six and one-half months preceding sentencing.

if he did not enter the guilty pleas before this judge. He also argued that his lawyer was engaged in a conspiracy against him, that this judge was in a conspiracy with the complaining police witness, and that his plea was not knowing and voluntary. This judge heard a sentencing recommendation from the Commonwealth and noted that the defendant had refused to speak to the probation officer who was consequently unable to submit a pre-sentence report. The defendant argued that the guidelines were considerably lower than the sentence recommended by the Commonwealth. This judge then imposed sentence of an aggregate term of 15-20 years. The execution of the sentence was stayed three months so that the defendant could make appearances in Suffolk County and Middlesex County.

The accusation that the motions and trial judge threatened the defendant with a fifty-year sentence is preposterous and unworthy of comment as is the accusation that his standby counsel and this judge conspired against him. This defendant was more knowledgeable than counsel or the court as to the pros and cons of entering a guilty plea. He understood all of the ramifications of a the proposed sentence. This judge stands ready to follow up on his commitments to the defendant whether he resolves the Suffolk and/or Middlesex matters by plea or trial. That is, the Norfolk sentence will be concurrent with any sentence from Suffolk or Middlesex on the outstanding indictments there, the recommendation that the sentence be served in the federal penal system will continue until or unless the defendant changes his mind, and the Essex matters will, upon the defendant's request, be resolved with a concurrent term.

Judge Cratsley allowed the defendant to stay at the Norfolk Jail pending resolution of his Norfolk case because of difficulties that he was reporting at MCI Concord. This judge agreed to stay the execution of the defendant's sentence for a reasonable period and remand him to the

Norfolk County Jail so that he would not be in state custody while attempting to resolve his outstanding cases in Suffolk and Middlesex Counties. At some point, the sessions judges in Suffolk and/or Middlesex will have to address the defendant's pre-trial custody status. The stay of execution on the Norfolk sentence expires on September 10, 2003.

## ORDER

Given the case history and for the reasons stated above, no further hearing is indicated and the defendant's Motion to Dismiss, Motion to Withdraw his Guilty Pleas, and Motion for a New Sentencing Hearing are DENIED.

As to the defendant's other motions filed on June 16, 2003: (1) the Motion for a free transcript of the sentencing hearing is ALLOWED; (2) The Motion for a Reservation Date to Revise and Revoke is DENIED as Rule 29 is specific as to its time parameters; (3) Motion objecting to the government's *nolle prosequi* is DENIED as the government needs neither the court's permission nor the defendant's permission to *nolle prosse* an indictment; (4) Motion for docket sheets is ALLOWED in that the Clerk's Office is to mail two sets of updated typed docket sheets to the defendant; (5) Motion for Finding of Facts & Ruling of Law is DENIED as the pertinent facts and ruling are set out herewith; and (6) Motion for appointment of appellate counsel is DENIED as the defendant to date has discharged two court-appointed attorneys in Norfolk County and states that his Norfolk stand-by counsel is conspiring against him. The defendant's motion will be forwarded to the Committee for Public Counsel Services which, as a discretionary matter, may appoint private counsel. Otherwise, the defendant's recourse is with the Appeals Court.

JUDGE

Dated: July 16, 2003

Pages 1 - 45

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

Superior Court
Chernoff, J.

* * * * * * * * * * * * * * * * * * *

The Commonwealth of Massachusetts

- vs. -

Richard D. Glawson

* * * * * * * * * * * * * * * * * * *

No. 01-0117-001

APPEARANCES:

Robert W. Nelson, Assistant District Attorney, Norfolk County, Dedham, Massachusetts, 02126; on behalf of the Commonwealth of Massachusetts.

Mr. Richard D. Glawson, Pro Se

Paul Luciano, Esquire, 101 Tremont Street, Suite 1100, Boston, Massachusetts, 02108; as stand-by counsel for Defendant Richard D. Glawson.

Norfolk County Court House
650 High Street
Dedham, Massachusetts 02026
Thursday, February 20, 2003

Gayle Grayson, CVR-CM
P.O. Box 365355
Boston, MA 02136
(617) 364-5555

P R O C E E D I N G S

THE CLERK: This is Norfolk Criminal Docket Numbers NOCR 01-117, Counts 1 through 3; Counts 5 through 9, and Counts 11 through 13, the case of the Commonwealth versus Richard Glawson, who is before the Court pro se, with his stand-by counsel, Mr. Luciano. And Mr. Nelson is present representing the Commonwealth.

THE COURT: Mr. Luciano, I know you are stand-by counsel in this case, but I will make the inquiry to you. Does your stand-by client wish to be inquired of as far as a change of plea is concerned?

MR. LUCIANO: Yes, he does, your Honor.

THE COURT: All right. As to what indictments?

MR. LUCIANO: All of them, with three exceptions, the conspiracy indictment, the habitual indictment, and the driving under the influence charges.

THE COURT: Very well. You may inquire.

THE CLERK: Thank you.

time about changing your plea? "Yes" or "no", sir?

DEFENDANT GLAWSON: I do.

THE CLERK: Raise your right hand as best you can.

Defendant Richard Glawson, Sworn

THE CLERK: Thank you. Would you come up and take the witness stand.

THE COURT: Would you prefer to stand or to sit?

DEFENDANT GLAWSON: Sit.

THE COURT: Counsel, would you come over here as well, please.

Mr. Glawson, as you know, my name is Judge Chernoff, and I am going to ask you some questions that are designed to help me determine if you know the full meaning and effect of entering a plea of guilty.

I know you are not shy about asking questions to judges or attorneys, and so I am just going to tell you don't be shy. If I say something that doesn't make sense, or something you don't understand, I want you to tell me. If you wish to talk to your stand-by attorney at any

DEFENDANT GLAWSON: I'm a little sick, but other than that -- the flu.

THE COURT: All right. Are you suffering from any illness which impedes or interferes with your thinking and decision-making process?

DEFENDANT GLAWSON: Not that I'm aware of.

THE COURT: All right. Have you consumed any alcoholic beverage, any drug, or medication before coming to court today?

DEFENDANT GLAWSON: No, I haven't.

THE COURT: Has anybody threatened you or coerced you or otherwise forced you into entering a plea of guilty?

DEFENDANT GLAWSON: No, they have not.

THE COURT: You have stand-by counsel in this case. Are you satisfied with the services of your stand-by counsel insofar as these Norfolk matters are concerned?

DEFENDANT GLAWSON: I am.

THE COURT: I really don't have standing to ask you about your Middlesex or Suffolk matters at this point, except insofar as

definitely, impossible to obtain citizenship through a naturalization process. Do you understand that?

DEFENDANT GLAWSON: I do.

THE COURT: Lastly, on administrative matters, there is a relatively new law in the Commonwealth of Massachusetts that gives the Commonwealth the right to request of an individual, and the individual must comply with a request, for what is known as a tissue sample, either a lock or a few locks of hair, or a saliva sample, or a blood sample. It is used for the limited purpose of classification. It is like a super fingerprint.

What comes out of that sample is a very lengthy number and letter which -- or letters and numbers which get put into a computer someplace. And it is used for classification purposes. It applies to anyone who is convicted of a felony, I believe.

Sometimes the Commonwealth doesn't come knocking and asking for it. I think it has to do with resources. But sometimes they do. And if they do, there would be a requirement that you

evidence. You would also have a right to represent yourself in closing statements in the case.

And you would have a right not to testify. And if you elected not to testify, that would not be held against you. In fact, the judge would specifically inform the jury that they could not hold it against you, the fact that you had elected not to testify.

If you elected not to present any evidence on your own in the trial, that also would be something that the jury could not hold against you because the burden is on the government to prove you are guilty beyond a reasonable doubt.

If I accept your guilty pleas, then the only thing left would be for me to make a determination as to what the appropriate sentence would be in this case.

This case has gone through a number of conferences in the case, and I think maybe for the record I ought to review at least my contact with the case.

And that is I happened to see you in session 12B, I believe in November or December,

weeks ago, or a week ago, and it fell through. And of course, that is your decision as to whether you plead guilty or not in the case.

The agreement that I made, because I cannot speak for the district attorneys' offices, nor would I want to. And I cannot speak for the Department of Correction, nor would I want to. But I said that if I was going to resolve your Norfolk County case here, I would not give you a sentence greater than recommended by the government, that what I would do is, if I accepted a guilty plea from you, I would not sentence you today. I would send you back to whatever institution is holding you to see whether or not the Middlesex and Suffolk matters could be resolved.

As I said, I would not give you a sentence greater than recommended by the government. If you or your stand-by counsel wanted, I would order a presentence report from the Probation Department, and I would keep an open mind on these matters, and that my resolve on these cases would be to give concurrent sentences and give you credit for every day that you have

Attorney's recommendation on a resolution of these charges?

MR. NELSON: What the Court had indicated to the defendant, that is a correct interpretation. The Commonwealth's recommendation, on the first two indictments, 001 and 002, would be fifteen to twenty years to run concurrent. And then the other indictments would be run concurrent with those.

THE COURT: Very well. I would not exceed that sentence. And as I said, if you want, I would ask for a presentence report.

I think what will probably drive what my ultimate sentence would be in this case would be what happens with the other counties. And I would be happy to be a presence in those counties to try to arrange for concurrent sentences to resolve this matter. Do you understand that?

DEFENDANT GLAWSON: I do.

THE COURT: All right. So what will happen is, if I accept a guilty plea in this case today, I am going to continue it for sentencing probably for thirty days. And then -- or I may sentence -- I may continue it to the first week of

question. And I think the answer is "no". If he can't work out -- if he goes to trial in Suffolk County, can they use his testimony here in the trial there?

THE COURT: Can they use his testimony at a guilty plea?

MR. LUCIANO: Yes.

THE COURT: I don't think so. I don't think so.

MR. LUCIANO: In other words, can they get a transcript as part of their case?

THE COURT: I do not believe so.

MR. LUCIANO: That is my opinion also.

THE COURT: Yes, Mr. Nelson.

MR. NELSON: Your Honor, this incident is alleged to have taken place on February 16 of the year 2001. On that date the Commonwealth alleges that the defendant, with the assistance of a female by the name of Aleja Campbell, entered the employee room at Jo-Ann Fabric Store, which is located at the Walpole Mall. And while inside that room, that the defendant stole the credit cards and other identification cards of a woman by the name of Natalie Bosse, who was an employee of

Sears store, he requested that the defendant approach him. And at that time the defendant fled through the store. The defendant was chased by Officer Mouris and Sears security officer Michael McSweeney, and was brought to the floor in another section of the store.

The defendant struggled with Officer Mouris, kicking Officer Mouris in the head with his shod foot, and punching Officer Mouris. The defendant was able to get up and continue running out of the store, but not before Officer Mouris was able to pull one of his shoes off of his foot.

Just prior to the defendant exiting the store, a holster was seen thrown from his person. And that was observed by security officer McSweeney.

As the defendant exited the store, an individual by the name of Michael Callahan -- and Mr. Callahan is seated in the back of the courtroom -- was seated in his white Mustang outside of the door to Sears. He was waiting for a friend of his to get off work.

His car was idling. It was parked just outside of one of the exits. And the

vehicle. Officer Buckley then got out of his cruiser and chased the suspect who jumped a fence next to a nearby home.

As Officer Buckley opened the gate at that location, the gate to the fence, which opened to Officer Buckley's right, as he was coming around, he noticed behind the gate in the yard a dark object crouched behind the gate.

At that time there were two shots fired. Officer Buckley observed the muzzle blast. And Officer Buckley was struck once in each hand.

Officers from Boston and Dedham and the State Police and State Police Canine Units then converged on this area and searched the area for the suspect. And they were able to follow footprints in the snow which showed one shod foot and one foot with apparently just a sock.

More than three hours after the incident at the Dedham Mall, a number of officers came upon a garage at a home in West Roxbury on Eastwood Circuit. And they noticed what appeared to be an object sitting -- they looked through the windows of a garage and noticed what appeared to be an object sitting -- an object sitting on a

Callahan's vehicle, he was doing that with a suspended license.

There were also some bullets that were taken out of the defendant's pockets. I think that there were two that fell out, fell off of his person as he was being transported. He was taken over to a station in Hyde Park.

The Commonwealth would allege that at the time that the defendant was placed under arrest, he was not asked any questions, but did state to the police officers: I didn't shoot no cop. Or words to that effect.

That basically would be the Commonwealth's case, your Honor.

THE COURT: Thank you. Madam Clerk, may I please see the indictments?

THE CLERK: Yes, your Honor.

(Pause.)

DEFENDANT GLAWSON: Your Honor, there's a problem.

THE COURT: I cannot hear you.

DEFENDANT GLAWSON: There's a problem with the plea because under this rule it says that they can use this against me in another case. The

THE COURT: That's right.

DEFENDANT GLAWSON: Okay.

THE COURT: And for the record, we are referring to the Massachusetts Rules of Criminal Procedure. And we are focusing on Rule 12.

MR. LUCIANO: Section F.

THE COURT: Thank you. Section F. 12F. All right.

Mr. Glawson, there are a number of indictments here. The district attorney's office has just given me an outline, and you an outline, as to what the operative facts are in this case from the standpoint of the Commonwealth.

The first thing that the judge has to be concerned with is the issue of identification. And the question is in pleading guilty are you admitting that you were the individual who was involved at all stages of the events as far as the Norfolk County indictments are concerned?

Obviously, you were the person at the end, because you were arrested at the end. So the question is do you acknowledge, as far as identification is concerned, that you are the individual who is the -- who was the actor from

or not you were the one who did it -- is certainly a matter for evidence at trial.

Whether or not there was an intent to steal a motor vehicle by the assailant is an issue for a jury to draw reasonable inferences on. If you plead guilty to the crime of armed carjacking, you would be admitting to the government's case that says that you were armed with a dangerous weapon and you had the intention of taking another individual's car without right, and that you assaulted, confined, or put somebody in fear for the purpose of taking that motor vehicle. And that is in violation of a statute.

As far as that is concerned, do you have any issue with the facts as far as this case is concerned?

DEFENDANT GLAWSON: I'd just ask that the Commonwealth read into the record the evidence which it would rely upon on the facts --

THE COURT: Okay. But --

DEFENDANT GLAWSON: -- the physical evidence, actually.

THE COURT: But do you have -- do you contest the -- that you committed this particular

DEFENDANT GLAWSON: I just don't know what evidence they're based on. They didn't say the evidence that they were based on. Those are just the facts.

THE COURT: Would you want me to ask Mr. Nelson to set out who would be the source of the information as far as meeting the elements of those offenses?

DEFENDANT GLAWSON: Yes.

THE COURT: Mr. Nelson, could I impose on you to, in your description of the offenses, just tell me basically what would be the source of your evidence? Let's start with the armed carjacking. Who would be the source of your evidence that Mr. Glawson, while armed with a dangerous weapon, intended to steal a vehicle, and did so by placing a person in fear?

MR. NELSON: That would be Michael Callahan, who was sitting in the car when it was shot into, and was ordered out of the vehicle by the defendant.

And then Officer Buckley, who follows after the vehicle until such time as it spins out of control. It actually hit another vehicle in

THE COURT: So in pleading guilty, if I were to accept your guilty plea, I would have to be satisfied that you are the individual who committed those acts. And the Commonwealth has just explained to you what the sequence of evidence is in order to prove that.

And my question is, is there anything that you have heard that you disagree with, or anything else you would like to tell me about the Commonwealth's case as far as the armed carjacking is concerned?

DEFENDANT GLAWSON: Not at this time.

THE COURT: All right. On the charge of being armed with a dangerous weapon, to wit, a gun; assaulting Michael Callahan with the intent to murder the said Michael Callahan in violation of the statutes of the Commonwealth.

May I ask the prosecutor to tell me your sequence of evidence in this case and your witnesses who would go to prove that.

MR. NELSON: This would be actually similar to the first indictment. It would, again, be Michael Callahan. There would be some other photographs. There is a photograph that shows a

There was a codefendant with the defendant, female. She would have testified, actually -- or was going to testify today -- who has seen that firearm, could identify that firearm. I think she may have actually been the individual who originally takes the firearm out of a safe.

That happened, maybe, a week or so earlier in Suffolk County. That has nothing to do with Norfolk County. But she could identify the firearm and identify the fact that the defendant had the firearm.

THE COURT: All right. On the assault with a dangerous weapon, which is the allegation that the defendant with a gun, did assault Michael Callahan.

MR. NELSON: That would be Mr. Callahan.

THE COURT: All right. And on the indictment which alleges carrying a firearm without a license, who would be the -- the Commonwealth's case would be made with whom?

MR. NELSON: Basically the same witnesses with the ballistician. The fact that the defendant was found in possession of a firearm

MR. NELSON: Actually, I believe it was Officer Punch, who has already testified during the course of the trial. And there is in evidence at this time the sales receipts as to what was purchased and the items that were taken out to the vehicle by the defendant which I believe were somewhere in the three to four hundred dollar range in clothing.

THE COURT: And the larceny less than two hundred and fifty dollars?

MR. NELSON: Those are the credit cards that belong to Natalie Bosse that were stolen at the Walpole Mall.

THE COURT: And that part of your case would be made by what witnesses?

MR. NELSON: Natalie Bosse would testify that -- first of all, that she did not authorize either the defendant or the codefendant, Aleja Campbell, to use those credit cards. And Aleja Campbell would indicate that what took place at the mall, the defendant went into this employee room. And when he came out he handed her these identification cards and credit cards of Natalie Bosse.

THE COURT: Mr. Luciano, let me ask you this. I know you are not counsel, you are stand-by counsel. And your involvement in this case, at least as far as time and effort is concerned has got to be less than parallel, if not exceed that which actual counsel would have served. So let me ask you this.

Are you satisfied that there is a basis in the evidence for this Court to accept a plea of guilty in this case?

MR. LUCIANO: Yes, sir.

THE COURT: And do you have any reservations as to why this Court should not accept a guilty plea?

MR. LUCIANO: None.

THE COURT: Thank you very much, counsel.

Mr. Glawson, let me just say a couple of other things, and that is this. There were other things that I agreed that I would do, and I would like to put them on the record, and this is really for your protection.

I agreed that if I accepted a guilty plea, that I would hold you on the same bail and

that Mr. Nelson has discussed this with his first assistant district attorney, and we've also made at least a preliminary inquiry with the Department of Correction, is that there would be an effort to see -- once your matters are resolved here -- assuming they're at the end of the line here -- we would do what we can to see you get a fresh start in another system, such as the federal system.

And I know that is your first priority. And we have no objection to that. And we would work toward that end. Do you understand that?

DEFENDANT GLAWSON: I do.

THE COURT: Do you have any questions of me at this juncture?

DEFENDANT GLAWSON: The recommendation for the Department of Corrections --

THE COURT: Recommendation for a clean slate.

DEFENDANT GLAWSON: Yes, for a clean slate.

THE COURT: That would be part of that letter. We would hope that you would not spend much time in the Department of Corrections here.

date.

THE COURT: The government will nolle pros it.

DEFENDANT GLAWSON: All right.

THE COURT: Mr. Clerk, the Court finds that the pleas are knowingly and voluntarily offered, and that there is a basis in the facts for the plea. So the Court accepts the plea of guilty and will not ask the Commonwealth to move for sentencing, although we do know that the Commonwealth will not exceed a certain sentencing request.

THE CLERK: Just for the record, Mr. Glawson, on Indictment No. NOCR 117, Counts 1 through 3, Counts 5 through 9, and Counts 11 through 13, what say you, sir? Are you guilty or not guilty?

DEFENDANT GLAWSON: Guilty.

THE CLERK: Thank you, sir.

THE COURT: All right. At this juncture, what I am going to do is continue the matter. Do we have a date in May that is convenient?

MR. NELSON: May fifth.

you place (sic), your Honor, that I be forwarded a copy of this transcript?

THE COURT: I'll order a copy of this transcript.

DEFENDANT GLAWSON: Thank you.

THE COURT: All right. Anything else? Did I forget anything?

MR. NELSON: No. Thank you.

THE COURT: Mr. Glawson, did I forget anything.

DEFENDANT GLAWSON: That's it, sir.

THE COURT: All right. Good luck.

DEFENDANT GLAWSON: Thank you. Have a nice day.

THE COURT: Did you want a presentence report?

DEFENDANT GLAWSON: Sure.

THE COURT: All right. I'll order a presentence report, sir.

THE CLERK: Presentence evaluation to be done on Mr. Glawson. Mr. Glawson, your case is continued to May 5 of 2003 for disposition at nine-thirty, sir. You are held on the same bail at the Dedham House of Correction.

CERTIFICATE

I, Gayle Grayson, CVR-CM, do hereby certify that the foregoing record, Pages 1 through 44 is a complete, accurate and true transcription of my Stenomask notes taken in the aforesaid matter to the best of my skill and ability.

Gayle Grayson

Gayle Grayson, CVR-CM

Bates # 170 5-21
171 22-29
172 29-38
173 39-44
174 44-48
175 49-69

Before the Grand Jury of Norfolk County

March 15, 2001 - Thursday

Dedham, Massachusetts

In the matter of: RICHARD D. GLAWSAN

ALEJA CAMPBELL

ROBERT NELSON, ESQUIRE

Assistant District Attorney

Norfolk County

SUZANNE MASCIA - COURT REPORTING SERVICES UNLIMITED
(781) 834-3205

MR. NELSON: Good morning. My name is Robert Nelson. I'm an Assistant District Attorney here in Norfolk County.

And I have the following presentment regarding, first, Richard D. Glawsan, that's G-L-A-W-S-A-N, and the first indictment – the first presentment is for the charge of assault with intent to murder a Michael J. Callahan. Next is a presentment for armed car jacking. The next is a charge of conspiracy to commit larceny with – and the conspiracy being with an individual by the name of Aleja Campbell, that's A-L-E-J-A, Campbell, C-A-M-P-B-E-L-L. The next presentment is, again, on Richard Glawsan, while committing the crime of armed car jacking, having in his possession a firearm. The next presentment is assault by means of a dangerous weapon against Michael Callahan. The next is assault and battery by means of a dangerous weapon, that being a shod foot, against



Bosse, that's N-A-T-A-L-I-E, last name B-O-S-S-E. The next is for larceny for under $250.00, that being the credit cards. And the next is for conspiracy with Richard D. Glawsan to commit larceny over $250.00.

We then have presentments against Richard Glawsan for a separate dated, that being September the 9th of 2000, in which he's charged with operating under the influence of intoxicating liquor. He's also charged with negligent operation of a motor vehicle. And he's also charged, again, with operating a motor vehicle with a suspended license.

BY MR. NELSON:

MICHAEL MCSWEENEY, SWORN

Q And would you identify yourself for the members of the Grand Jury, please.

A My name is Michael McSweeney.

Q And, Mr. McSweeney, could you tell the members of the Grand Jury how you're employed?

A I work at Sears Roebuck in Dedham.

many articles of clothing, jeans, pilling
them up on top of racks. And at that
time my partner called me, Bill Punch
called and asked me to pick up the same
individual. And he also stated there was
a female with him on the other side of
the store doing the same thing, picking
up several shirts without looking at
prices, pilling them up on a rack.

Q        And Mr. Punch, when you had
communication with him where was he
located?

A        He was out on the sales floor. So, at
that point, I asked him to come back to
the office, 'cause we have two monitors,
and I had him on one and I on the other.
And I wanted to make sure we could
watch them both.

Q        And that the area where you were
viewing them, where is that located
within Sears?

A        It's in the Lost Prevention, Asset
Protection.

Q        Now, prior to making observations of

brought them to a register.

Q Now, the part of the video I just forwarded to, that still shows the same individual –

A Yes. It does.

Q -- getting the clothes in the men's department?

A Yes. It does.

Q And would it be fair to say that now this individual is placing a large number of those items in his arms?

A Yes. He does. Usually right near closing someone comes in and they usually picking up maybe one item; it's not anything where they're picking up several items.

Q Is that a close up view of that same individual?

A Yes. It is.

Q And the area of the tape that I fast forwarded to now, would it be fair to say that this individual now has left the men's department?

A Yes. He has.

A Yes. It does.

Q And would it be fair to say that the female has now handed a bag to the male?

A Yes. She has.

Q And were those items that had just been purchased?

A That's correct. She had – at the register it was rung up – all the items were rung up.

Q And that was at least some of the clothing that we saw him –

A Yes. It was.

Q -- gathering and –

A Yup. The items that he passed to her she – was rung up at the register. And she used a Sears' charge to pay for those items.

Q And does this show the female again purchasing –

A Yes.

Q -- some items?

A Yes. At that point she made another purchase for, I believe, some cologne. But, again, she used the Sears' charge

Q      And is there an exit to the store located in the appliance area?

A      Yup.  If you go straight out through out appliance area it exits into the mall. And then there's a set of mall doors that exit into the parking lot to the right.

Q      And that's him leaving the store now?

A      That's him leaving the store.  He went out to the right and headed out into the parking lot.

Q      And now is that a photo from outside of the store?

A      That's our outside camera of the store.  It appears to be getting most of the side of the building and the back area of our dock.  But we have him going out into the parking lot to a vehicle.

Q      Now, at this point in time what are you doing?

A      To back up a little more, he was in colognes, and she finished the transaction.  As soon as the transactions totaled, I'm able to use our computer to pull an extract down.  So, what I did is I

heading out through our hardware department, down towards our computers in – and our appliance area. And that's when I –

Q And the male that was shown in the video –

A At that time he was still out in the parking lot.

Q Did he, at some point in time, come back into the store?

A He did. My partner, Bill, was watching him outside. And then Bill went to get the mall detail, Officer Mouris, that was working that night.

At this point I had headed out of the office to – to stop her, 'cause I did not want her to exit the store. And I met up with her in our – right in front of our computer department. I asked her if she was Natalie, she wouldn't answer me. But I told her there was a problem with her purchase and she'd have to come with me, that I was with Sears Asset Protection.

hardware department.

Let's back up a little bit, when we were at – in front of the computers. When Officer Mouris came in I believe he said to this individual to come on over to him. And the individual was just shacking his head. His eyes were all glassy. And he started to run. But when he ran he ran back the way he came into – he actually ran into the store as opposed to going out of the store. And that was –

Q Now, on that part again. Now, the officer that's running there, is that Officer Mouris?

A Yes. It is. And he chased him down through our men's department. We slipped a little. And then we actually caught up to him in-between men's and junior's, which is our women's department.

(tape concluded)

Q All right. Now, were you alone with Officer Mouris when the individual is

again on the ground. Officer Mouris is on top of him again. I used my radio – we have a walkie-talkie to our office – stating we needed some more help in the store, that we were having trouble with him. He got up again. We knocked him down another time. And he still was struggling. And then Officer Mouris used his night-stick and mace to try to prevent him from struggling anymore. And that still did not subdue him. He got up with the mace. You know, his hat come off. I think his – you know, there was a lot going on at that time. And he stumbled. He had mace dripping down his face. And he stumbled and he started heading back through our hardware department, which you saw.

But as soon as he got up he kept reaching for his pants, and reaching for his pants. So, at that point, I – I mean, I knew we had done everything we could. I mean, we had him down. Officer Mouris had his night-stick on him, told

I moved to the side, 'cause it's a corner. I called – I radioed to Bill, to tell him that he had a gun. I could see a white car parked out at the curb. I heard a loud pop, which was a gun shot. And then I heard the tires squealing in the car as it pulled away from the curb.

MR. NELSON: Any questions of Mr. McSweeney?

Q (Juror) What was the girl doing all this time?

A At that time when we approached him, I was here, she was in the middle, and the other store detective, Bill Punch, was on this side, and he was over here, and Officer Mouris was there. So when he ran I ran this – he was on my side, so I ran along after him. And he (sic) stayed with Bill. And Bill took her to our Asset Protection office.

MR. NELSON: Any other questions?

(no response)

MR. NELSON: Thank you.

A I observed two individuals, a male and a female, to get multiple pieces of clothing and merchandise. They had no regard for the sizes or the prices or anything. So, I determined that they were suspicious. I called my partner by a two-way radio, and told him to observe the subjects via the closed circuit TV system. And then I returned to out Asset Protection office once I understood that he did maintain surveillance on the CC TV system.

Q And when you say -- when you first made these observations, where were you located?

A I was on the sales floor in the men's department.

Q And then at some point in time you went back to your office?

A That's correct.

Q And could you tell the members of the Grand Jury what you did once you returned to your office?

A Once I returned to the office my

A Eventually I did return to the sales floor, after the credit was verified that it was fraudulently used.

Q Okay. And do you remember – do you recall the name of the individual whose credit card it was?

A Can I refer to my report?

Q Sure.

A The credit card holder was a Natalie Bosse from Millis, Massachusetts.

Q When you returned to the sales floor, what did you do then?

A I observed Mr. Glawsan, a male subject, walking away from the register with multi bags of articles of clothing. I followed him to his car on the Route 1 side of Sears in the parking lot. I observed him place the articles in the car and then return into the store.

Q And when he returned into the store can you tell us what happened then?

A At that time my partner radioed me, and indicated that the – the transaction was a credit fraud, it was confirmed a

observed Officer Charles Mouris at Center Court, I informed him of the incident. And I returned to the store with him.

Q And what happened when you returned to the store with him?

A Well, we entered – reentered the store, I observed my partner talking to the two subjects that had completed the transaction. Officer Mouris and I approached those three individuals, my partner and the two subjects. And at that time we approached them I had the female to my left. Officer Mouris had the male in front of him. My partner had the male in front of him.

Q And can you tell us what the male was doing at that time?

A When we approached him the male started backing up, taking a few steps backwards.

Q Okay. What happened after that?

A I observed a foot pursuit between my partner and Officer Mouris, chasing the

store, just to be in our office.

Q And at some point in time did Officer Mouris return to your office?

A Only at the very end of the entire incident.

Q Can you tell us what, if anything, happened regarding the female that evening?

A She was eventually arrested.

Q And was Officer Mouris involved in that?

A Yes.

MR. NELSON: Thank you. I have no other questions of Mr. Punch. Any questions of Mr. Punch?

(no response)

MR. NELSON: Thank you, sir.

(witness excused)

BY MR. NELSON:

CHARLES MOURIS, SWORN

Q And would you identify yourself for the members of the Grand Jury, and could you just spell your last name.

A My name is Charles Mouris, M-O-U-

credit card. They signed for it and they put the articles in the car." I said, "How do you know their credit card is stolen?" He said, "We confirmed it through Sears' telephone system." I said, "How do you know they stole the merchandise?" He said, "We watched them put it in the car. They made several trips back and forty. My partner, Michael McSweeney, is holding them in the store." As he was speaking he was walking faster with a sense of urgency.

Following him I entered the store, and I saw Ms. Campbell and Mr. McSweeney standing thirty feet inside the doorway from where I was. Another fifteen feet back from them, a total of forty-five feet, was Mr. Richard Glawsan. And the -- Mr. Glawsan, he looked at me, he started shacking his head, backing up. I saw his breathing increase, his shoulders hunched up, brought his hands up in front of his chest, at about this (indicating) position

and he ran fifty-one feet – I later measured it – towards the door. Then he turned right and ran two hundred and twenty-seven feet down a long corridor to the back of the store.

Q And at the time that he was doing that, what were you doing?

A Myself and Mr. McSweeney were in foot pursuit, we were chasing him close behind him.

Q At any point in time did you catch up with him?

A We did, a total of three hundred and twenty-five feet later, fly and tackle, brought him to the ground hard. And we rolled on the ground. I tried to pin him down and place him under arrest. I gave him orders to put his hands behind his back, which he refused to comply with. And the three of us struggled.

Q And can you describe what took place during the course of the struggle?

A I had him down on the ground. Again, I tried to handcuff him on the

again. I had him – he was on his back. He was kicking me. At this point I was getting kind of tired, and I said to myself, "Okay, no more kicks. I'm going to stop blocking the kicks. I'm going to take my mace out and spray him." Before I could do that he kicked me more violently, he started hitting me. So I took out my night-stick, my baton, department issued baton. I struck him on his bare foot, because his shoe was off. And there was no response at all. I struck him on his ankle, nothing. His shin, nothing. I couldn't strike him in the groin or the face at that point. You can never strike them on the groin or the face. I put the stick away. I took more kicks and punches while I maced him. That stopped him for a second. We all stood up. I said to Mr. McSweeney, "Give him a few seconds. He's not going anywhere." I fully believed the mace would take affect and holt him, but it didn't. To my surprise and shock he

Callahan?

A Michael Callahan. Let me look at my report. That's correct.

Q And you spoke with Mr. Callahan at that time?

A Yes. I did.

Q At some point in time did you return to the store?

A After I spoke to Callahan I obtained a description of the car. And I broadcast it over the – the incident over the police radio, to the station and all the cruisers.

I next entered the store where I went to the Sears' security office, where I was met by Mr. William Punch, a security employee who I know. And he had Ms. Campbell in his possession in their store office.

Q And at some point in time did you – were you able to obtain her identity?

A Yes. I was. She had a license on her.

Q And what was her name?

A Her name is – she was identified as

(witness excused)

BY MR. NELSON:

MICHAEL CALLAHAN, SWORN

Q Would you identify yourself for the members of the Grand Jury, please.

A Michael Callahan.

Q And would you spell your last name?

A C-A-L-L-A-H-A-N.

Q And, Mr. Callahan, can you tell us where you live?

A 20 Cotton Street.

Q And where is that?

A In Rosenlindale, Massachusetts.

Q And directing your attention to February the 16th of this year, sometime after 9:00 on that date, did you have occasion to be in the vicinity of the Dedham Mall?

A Yes.

Q And can you tell the members of the Grand Jury what you were doing there at –

A I was meeting with one of my friend – worked. That's it.

took off.

Q And he took off in your car?

A Uh-hum.

Q Did you see your car again?

A Yea.

Q And when was the next time you saw your car?

A At the police station.

Q What police station?

A Headquarters.

Q Where?

A In Downtown Boston.

Q And can you tell us the time you saw your – the next time you saw your car, what condition was your car in at that time?

A It was pretty bad. I don't know.

Q Keep your voice up.

A It was banged up.

Q It was banged up?

A Yea. It was totaled.

Q It was totaled?

A Yea.

Q Okay. When you got out of the car,

A I doubt it. I mean, I seen a picture of him on the news, that's about it.
Q So you've seen a picture of him on TV?
A Uh-hum. Yes.
Q Have you ever been asked to look at a photographic array?
A No.
MR. NELSON: I have no further questions of Mr. Callahan. Questions?
Q (Juror) Did the person who took your car have any kind of a weapon that you could see?
A I didn't see anything, no.
Q (Juror) So he shouted at you?
A Yea. He shouted, "Get out of the car." And I got out of the car.
Q (Juror) Did you feel threatened?
A Of course.
BY MR. NELSON:
Q After you heard a bang, --
A Uh-hum.
Q -- was there a window in your car that was broken?

A     Yes.  I was.

Q     And where did you pick up the motor vehicle?

A     I observed a white Mustang travelling down Washington Street, heading towards the intersection of Grove Street.  I was actually on Grove Street.

Q     And the Grove Street that we're talking about, is that located in West Roxbury?

A     Yes.  It is.

Q     And can you tell us what you did from that point in time after you picked up the car at Washington and Grove Street?

A     Yes.  Myself and Officer Munchback observed the car go through the intersection of Washington Street at Grove Street.  We observed it take a left hand turn onto Grove Street.  We followed the Mustang.  And I was able to get close enough to the Mustang to read off the license plate number, and it was 1898TC.  I was able to radio to my

distance on us at that time. And in the distance, as we rounded the corner, we saw that the Mustang had lost control. And we saw the headlights spin around and actually were facing at us.

And as we approached we saw the suspect come out the driver's side window, crawl out the driver's side window. There was a brief foot pursuit. I followed the suspect around the corner. He jumped over a wooden stockade fence. I ran into this wooden stockade fence, the gate, and forced it – forced it open about ninety degrees. I looked around the gate. At that time I saw the suspect in a crouched position with his gun aimed at me, and he fired two shots. He hit me in the – at the time I thought only in the right hand. He hit me in the right hand and also hit me in the left thumb. And my partner, Officer Munchback, was right behind me. I had yelled to him to get back.

And there was a group of people

MR. NELSON: Any questions of the officer?

(no response)

MR. NELSON: Thank you, sir.

WITNESS: Thank you.

(witness excused)

MR. NELSON: Before we preceded with the next witness I'd like to have the video that we showed earlier marked as Exhibit No. 1.

(Videotape marked as Exhibit 1 as of this date.)

BY MR. NELSON:

STEVEN MCDONALD, SWORN

Q    And would you identify yourself for the members of the Grand Jury.

A    My name is Steven McDonald, M-C-D-O-N-A-L-D. I'm a State Trooper assigned to the Norfolk County District Attorney's Office.

Q    And, Trooper McDonald, directing your attention to February the 16th of this year, did you become involved in the investigation of an incident that had

meet up with an individual by the name
of Aleja Campbell?

A      Yes.  I did.

Q      And when was it that you met with
her?

A      That was at the Dedham Police
Department the following day, I believe
that was on the 17th, a Saturday.

Q      Just going back to when you met
Officer Mouris and the individuals at the
Dedham Mall, did you receive anything
from them?

A      As far as?

Q      Did they hand anything over to you at
that location?

A      I don't believe so there.  I believe
we received something at the Dedham
Police Station.

Q      And when you went over to the
Dedham Police Station Ms. Campbell was
located there at that time?

A      Yes.  She was.

Q      Did you have occasion to speak with
her on that date?

Walpole Mall. And they went into a fabric store there. And while they were in the fabric store she was keeping watch and distracted this woman that was working there while Richard Glawsan went into the backroom and rummaged through a woman's purse, and came out, stole some credit cards, ID, things like that.

At dinnertime they left the Walpole Mall. They tried to register in a couple of different malls – I mean, a couple of different hotels in the area with this woman's credit card. Her name is Natalie Bosse, who was the woman that was the victim whose credit cards were stolen. They had no success registering in those hotels.

They finally ended up at the Holiday Inn in Dedham where they did register. And he rented a room with Natalie Bosse's credit cards. Ms. Campbell was the one who forged her name on the – the receipt. And as the – they checked into



information from Ms. Campbell, did you have occasion to execute a search warrant for the hotel or motel in Walpole?

A Yes. I did.

Q And as a result of that did you seize certain items from the room?

A Yes. I did. We executed a search warrant on Room 201 at the Boston View Motel. When we executed the search warrant I found a – it was like a cloth bag containing address books that belonged to Aleja Campbell. And also in the nightstand, in a drawer in the nightstand was one thirty eight caliber bullet, which was marked on the bottom of it, marked Norma, N-O-R-M-A. And I think it was .38, the designation of the caliber.

Q And were there any other – any other items that you took out of that room at that time?

A No. There was not.

Q Now, at some point in time did you

first of all if I could ask you, at the time that the white Mustang was recovered, was the white Mustang at some point in time examined?

A Yes. I believe it was examined by the Boston Police, the forensic people.

Q And during the examination of the white Mustang was a bullet found lodged in one of the doors of the Mustang?

A Yes. It was.

Q In fact, did that – that particular bullet pass through the headrest of the passenger side of the vehicle?

A That was the information I had, yes.

Q And now the firearm that was obtained from in the possession of Mr. Glawsan at the time he was arrested by officers in Boston, can you tell us the type of firearm that that was?

A Yes. Reading from the Boston Police Ballistics report it was a Charter Arms model, undercover five shot, thirty-eight caliber revolver, Serial No. 186951. At that time it was loaded with one round of

Q And just showing you this document. Can you identify – first of all, can you tell us what that document is?

A This is a Certificate of Examination and Test Firing done by Sergeant Doug Weddleton of the Mass. State Police Ballistics Unit.

Q And can you tell us what the result of the examination was of the bullet that you turned into the State Police Ballistics Unit?

A Yes. It was a Norma thirty-eight special bullet recovered from – recovered from 201 Boston View Motel, Route 1.

Q And would it be fair to say that that bullet the same type of bullet that had been recovered actually inside the one round that was remaining inside of the gun when it was recovered from Mr. Glawsan?

A Yes. It's the same – same brand.

MR. NELSON: And I'd like to submit these two documents as Exhibits 2

that?

A Yes. This photocopy was provided to me by the Dedham Police.

Q And this is the credit card of – two credit cards of Natalie Bosse?

A That's correct.

Q And a driver's license in the name of Natalie Bosse?

A Yes. It is.

Q And were you told where these items – how these items were recovered by the police?

A I believe they were recovered from Ms. Campbell. The Sears card was confiscated at the time of the purchases. And the other card, I believe, was taken from Ms. Campbell.

Q And there's also – it appears a receipt from the Holiday Inn, is that correct?

A Yes.

Q And that's also in the name of Natalie Bosse?

A Correct.

BY MR. NELSON:

Q At any point in time were you able to speak with Mr. Glawsan?

A No. I wasn't.

Q Now, directing your attention to another incident regarding Mr. Glawsan, September of the year 2000, did you become familiar, after investigating Mr. Glawsan regarding this incident, of an incident that had occurred in September of 2000 in the Town of Westwood?

A Yes. I did.

Q And did you become – did you become familiar with a police report that was made out by a Trooper Steven Lopes of the Massachusetts State Police?

A Yes. I'm familiar with that.

Q And can you tell the members of the Grand Jury that incident that took place – and actually do you have the date that it took place?

A Yes. It was September 9th, 2000, at 2145 hours, which is 9:45 PM. Trooper Lopes wrote in this report that he was on

responded that – he told Glawsan that he was speeding. And Glawsan responded, "No way. Fucking bullshit." Trooper Lopes stated that Glawsan looked like he had been drinking. And he also asked him to get out of the car. When he asked again if he'd been drinking he said, "What the fuck did I just tell you." Glawsan became belligerent and was later removed from the car and placed under arrest, where he continued his belligerent attitude.

Q And did Trooper Lopes determined at that time that – that Mr. Glawsan's license was suspended?

A Yes. His license was also suspended.

Q And, in fact, on the date of February the 16th of this year, when the incident happened at the Dedham Mall, was it determined that Mr. Glawsan's license was suspended at that time as well?

A Yes. It was still suspended.

MR. NELSON: Any questions of the Trooper?

presentment regarding Mr. Glawsan, which I – and this charges him with being a habitual criminal.

BY MR. NELSON:

STEVEN MCDONALD, RECALLED

Q Trooper McDonald, I just remind you that you're still under oath.

A Yes.

Q And would you tell the members of the Grand Jury what – would it be fair to say that I requested you to obtain a certified copy of a conviction regarding Richard Glawsan from the Suffolk Superior Court?

A Yes.

Q And as a result of that did you obtain a certified copy of the conviction on Indictment No. 061089, which charged Mr. Glawsan with armed robbery?

A Yes. I did.

Q And would it be fair to say that on that particular indictment, on the 26th day of March of 1987, that Mr. Glawsan was found guilty of that charge and

Glawsan with breaking and entering in the daytime?

A     That's correct.

Q     And would it be fair to say that on October the 4th of 1994, that Mr. Glawsan was found guilty on those two indictments and sentenced to not more than ten years, no less than eight year at MCI Cedar Junction, with five years and nine months of that sentences to be served?

A     That's correct.

Q     And those two sentences would be served concurrent with one another?

A     Correct.  Yes.

     MR. NELSON:  And I'd ask that those two documents be marked as exhibits.

          (Conviction records marked as Exhibit 6 as of this date.)
          (Conviction records marked as Exhibit 7 as of this date.)

CERTIFICATE

I, SUZANNE M. MASCIA, do hereby certify that the foregoing record, pages 1 through 70, is a complete, accurate and true transcription of my voice written notes taken in the aforementioned matter to the best of my skills and ability.

Suzanne M. Mascia

SUZANNE M. MASCIA

The foregoing certification of this transcript does not apply to any reproduction of same by means unless under the direct control and/or direction of the Certifying Reporter.

***16656** M.G.L.A. 41 § 98A

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. ADMINISTRATION OF THE GOVERNMENT
TITLE VII. CITIES, TOWNS AND DISTRICTS
CHAPTER 41. OFFICERS AND EMPLOYEES OF CITIES, TOWNS AND DISTRICTS
POLICE OFFICERS

Current through Ch. 73 of the 2004 2nd Annual Session.

## § 98A. Arrest on fresh and continued pursuit

A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant. Said officer may return any person so arrested to the jurisdiction wherein said offence was committed. Nothing contained in this section shall be construed as limiting the powers of a police officer to make arrests and in so far as possible this section shall be deemed to be declaratory of the common law of the commonwealth.

CREDIT(S)

*Added by St.1967, c. 263.*

<General Materials (GM) - References, Annotations, or Tables>

REFERENCES

LIBRARY REFERENCES

2003 Main Volume

Arrest ⚷66.
Westlaw Topic No. 35.
C.J.S. Arrest §§ 52 to 53.

RESEARCH REFERENCES

2003 Main Volume

Treatises and Practice Aids

12 Mass. Prac. Series § 24.17, Operating Under The Influence-Field Sobriety Tests, Arrest And Booking.

12 Mass. Prac. Series § 24.23, Search & Seizure Of Motor Vehicle And Occupants.

12 Mass. Prac. Series § 24.26, Search And Seizure Of Motor Vehicle And Occupants-Failure To Stop And Hot Pursuit.

14A Mass. Prac. Series § 9.6, Arrest Without A Warrant-Extraterritorial Arrest.

17B Mass. Prac. Series § 52.66, Self Defense-Arrest By A Private Person.

17B Mass. Prac. Series § 52.80, Constitutional Defenses-Arrest.

18A Mass. Prac. Series § 845, Powers And Duties.

***16657** 30 Mass. Prac. Series § 100, Limitations On Power Of Arrest Without A Warrant As To Places.

30 Mass. Prac. Series § 101, Power To Arrest Without A Warrant While Engaged In Fresh Pursuit-Between Cities And Towns Of The Commonwealth.

32 Mass. Prac. Series § 25, Power Of Arrest.

44 Mass. Prac. Series § 9, Applicability Of Constitutional Guarantees-Privilege Against Self-Incrimination; Admissibility Of Statements; "Interested Adult" Protections; Voluntariness; Order On Motion To Suppress (Form).

ANNOTATIONS

NOTES OF DECISIONS

In general 1
Collective knowledge 4
Commission of offense 6
Failure to stop 5
Fresh pursuit 3
Instructions 2

1. In general

Generally, police officer may not make arrest without warrant beyond boundaries of governmental unit he serves unless engaged in fresh pursuit of suspect concerning arrestable offense, whether it be felony or misdemeanor, initially committed in arresting officer's presence and within his jurisdiction. Com. v. Trudel (1997) 674 N.E.2d 262, 42 Mass.App.Ct. 903. Arrest ⚷66(2); Arrest ⚷66(3)

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Although police officer's powers to execute arrest warrant are state wide, power to arrest without warrant is limited to officer's governmental unit unless he is in fresh and continued pursuit. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Arrest ⚿66(3)

Discovery upon search of defendant of illegally possessed firearm and ammunition which did not match weapon gave police detective cause to search vehicle of defendant for other concealed objects. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Searches And Seizures ⚿68

Police officers may make extraterritorial "fresh pursuit" arrests for any arrestable offense, be it felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction. Com. v. Dise (1991) 583 N.E.2d 271, 31 Mass.App.Ct. 701, review denied 588 N.E.2d 691, 412 Mass. 1102. Arrest ⚿66(2)

***16658** When police officer makes warrantless arrest outside his territory and he is not "on fresh and continued pursuit" of suspected felon and has not been specially sworn in as police officer in neighboring territory, officer acts only with the authority he would have as a private citizen. Com. v. Kerr (1991) 565 N.E.2d 1201, 409 Mass. 284. Arrest ⚿66(2); Arrest ⚿66(3)

Police officer did not have authority to arrest defendant outside city boundaries where he had no reason to believe that defendant committed arrestable offense of driving under influence at time he followed defendant outside jurisdiction; officer had only observed defendant commit nonarrestable traffic violation. Com. v. LeBlanc (1990) 551 N.E.2d 906, 407 Mass. 70. Automobiles ⚿349(12)

2. Instructions

Instruction requested by defendant in trial on charges of assault of police officer that Massachusetts law limited arresting authority of police officers to their territorial jurisdiction and that, in absence of proof of fresh pursuit, officers were acting solely as private citizens on defendant's premises was properly refused; instruction would have improperly removed question from jury, transferring factual issue into erroneous conclusive legal determination on record. Com. v. McCrohan (1993) 610 N.E.2d 326, 34 Mass.App.Ct. 277. Criminal Law ⚿761(11)

3. Fresh pursuit

Police officer who had observed motorist driving through a red light without stopping, after which motorist failed to stop when officer activated lights and siren and directed him to pull over, was authorized to commence fresh pursuit of motorist, and to stop motorist after he drove outside of officer's jurisdictional territory. Com. v. Head (2000) 730 N.E.2d 891. 49 Mass.App.Ct. 492. Automobiles ⚿349(12)

Officer was in "pursuit" of driver at time driver left officer's jurisdiction, within scope of officer's statutory authority to make arrest outside his jurisdiction, despite fact that officer did not activate his siren or lights or attempt to overtake and stop driver while driver was within his jurisdiction, where officer's reasons for following driver out of his jurisdiction were based upon his observations of an arrestable offense, commission of which continued into officer's jurisdiction. Com. v. Magazu (2000) 722 N.E.2d 488, 48 Mass.App.Ct. 466. Automobiles ⚿349(12)

Police officer's power to arrest without warrant outside boundary of his governmental unit is limited unless he is in fresh and continuous pursuit. Com. v. Gray (1996) 667 N.E.2d 1125, 423 Mass. 293. Arrest ⚿66(2)

***16659** Police officer's official authority to make warrantless arrest is limited to territorial jurisdiction of his appointment, unless officer is on fresh and continued pursuit of felon for any offense committed in his presence within his jurisdiction. Com. v. Claiborne (1996) 667 N.E.2d 873, 423 Mass. 275. Arrest ⚿66(3)

Extraterritorial "fresh pursuit" arrests are permissible for any arrestable offense, whether felony or misdemeanor, initially committed in arresting officer's presence and within his jurisdiction. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚿66(3)

Arrest of defendant across town line was permissible where police officer of neighboring town had been in "fresh and continued pursuit" of defendant. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚿66(3)

Fresh pursuit doctrine authorized police detective's stop and arrest of defendant without a warrant outside of officer's jurisdiction, where detective was within his jurisdiction when he received information regarding outstanding warrant and had reason to believe that suspect had committed arrestable offense when he began his pursuit which ultimately ended in defendant's arrest outside of police officer's jurisdiction. Com. v. Owens (1993) 609 N.E.2d 1208, 414 Mass. 595. Arrest ⚿66(3)

Town officer who observed motor vehicle travel in town at speeds varying from ten to thirty-seven miles per hour and cross over center line of roadway on two occasions had "some reason to believe" that motorist was operating a motor vehicle either while under the influence or negligently so as to endanger, both arrestable offenses, thus justifying officer's "fresh pursuit" of vehicle across town line to make arrest. Com. v. O'Hara (1991) 571 N.E.2d 51, 30 Mass.App.Ct. 608, review denied 576 N.E.2d 685, 410 Mass. 1103. Automobiles ⚿349(12)

4. Collective knowledge

Fact that arrestable offenses were not committed in arresting officer's immediate presence, but rather were communicated to him by radio from officer who did observe offenses, did not remove authority of officer to perform extraterritorial arrest after pursuing defendant across town line; both officers acted in joint effort. Com. v. Zirpolo (1994) 639

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚷66(3)

"Collective knowledge doctrine," under which knowledge of one police officer is knowledge of all, applied to determine whether officer had authority to perform extraterritorial arrest where a fellow officer, and not arresting officer himself, observed defendant's offenses. Com. v. Zirpolo (1994) 639 N.E.2d 1083, 37 Mass.App.Ct. 307. Arrest ⚷66(2)

***16660** 5. Failure to stop

Defendant's failure to stop for police officer who pursued defendant in unmarked police cruiser with its strobe lights flashing, while displaying his badge, gave officer authority to arrest defendant outside of officer's jurisdiction, and therefore evidence discovered as result of limited pat-down search of defendant was properly admitted at trial, though charge of failing to stop for police officer was dismissed. Com. v. Gray (1996) 667 N.E.2d 1125, 423 Mass. 293. Arrest ⚷66(3); Criminal Law ⚷394.4(9)

6. Commission of offense

Officer had reason to believe driver was committing offense of driving under the influence of intoxicating liquor in officer's presence and within his jurisdiction, within scope of officer's statutory authority to make arrest outside his jurisdiction, where officer and driver were outside officer's jurisdiction at time officer first observed driver driving in manner indicating he was intoxicated, and driver continued to drive and entered officer's jurisdiction moments later. Com. v. Magazu (2000) 722 N.E.2d 488, 48 Mass.App.Ct. 466. Automobiles ⚷349(12)

Police officer, who first observed pickup truck in bar parking lot that was partially in neighboring town, could pursue vehicle into neighboring town and make warrantless arrest of driver, based on his observations of truck lurching back and forth in manner consistent with drunk driving while it was still in officer's town. Com. v. Trudel (1997) 674 N.E.2d 262, 42 Mass.App.Ct. 903. Automobiles⚷349(12)

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***3856** Massachusetts Rules of Criminal Procedure (Mass.R.Crim.P.), Rule 2

MASSACHUSETTS GENERAL LAWS ANNOTATED
MASSACHUSETTS RULES OF CRIMINAL PROCEDURE
FOR DISTRICT AND SUPERIOR COURTS
RULES OF CRIMINAL PROCEDURE

*Current with amendments received through Jan. 1, 2004*

## Rule 2. Purpose; Construction; Definition of Terms

< (Applicable to District Court and Superior Court) >

(a) Purpose; Construction. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay.

(1) Words or phrases importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular, and words importing the masculine gender may include the feminine and neuter.

(2) When in these rules reference is made to a subdivision of a rule, that reference is to that subdivision and to any subdivisions thereof.

(b) Definition of Terms. In construing these rules the following words and phrases shall have the following meanings unless a contrary intent clearly appears from the context in which they are used:

(1) "Indigent" means any defendant who is unable to procure counsel with his funds as defined in Supreme Judicial Court Rule 3:10.

(2) "Indigent but able to contribute" means any defendant who is unable to procure counsel with his funds but is able to contribute funds for the cost of counsel as defined in Supreme Judicial Court Rule 3:10.

(3) "Capital Crime" means a charge of murder in the first degree.

(4) "Commonwealth" includes the prosecuting office or agency and all officers or agents responsible thereto.

(5) "Court" includes a judge, special magistrate, or clerk.

(6) "District Attorney" or "Attorney General" include assistant district attorneys or assistant attorneys general and other attorneys specially appointed to aid in the prosecution of a case.

***3857** (7) "District Court" includes all divisions of the District Court Department of the Trial Court, the Boston Municipal Court Department of the Trial Court, and the Juvenile Court Department of the Trial Court, or sessions thereof for holding court.

(8) "Interested Person" includes the adverse party, a co-defendant, and a witness who is to be deposed.

(9) "Judge" includes a judge of a court or one properly assigned to a court or a special magistrate when in the performance of those duties imposed and authorized by these **rules**.

(**10**) "Juvenile Court" means a division of the Juvenile Court Department of the Trial Court, or a session thereof for holding court.

(11) "Mailing" means the use of regular mail and shall not require registered or certified mail.

(12) "Prosecuting Attorney" means the attorney general or assistant attorneys general, district attorney, assistant district attorneys, special assistant district attorneys, or legal assistants to the district attorney, or other attorneys specially appointed to aid in the prosecution of a case.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

(13) "Prosecutor" means any prosecuting attorney or prosecuting officer, and shall include a city solicitor, a police prosecutor, or a law student approved for practice pursuant to and acting as authorized by the rules of the Supreme Judicial Court.

(14) "Related Offense" means one of two or more offenses which are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.

(15) "Return Day" means the day upon which a defendant is ordered by summons to first appear or, if under arrest, does first appear before a court to answer to the charges against him, whichever is earlier.

(16) "Special Magistrate" means any person who is appointed pursuant to, and empowered to administer those functions authorized by, rule forty-seven of these rules.

(17) "Summons" means

(A) criminal process issued to a person requiring him to appear at a stated time and place to answer to criminal charges; or

(B) process issued to a person requiring him to appear at a stated time and place to give testimony in a criminal proceeding; or

***3858** (C) process issued to a person requiring him to appear and produce at a stated time and place books, designated papers, documents, or other objects for use in a criminal proceeding.

(18) "Superior Court" means the Superior Court Department of the Trial Court, or a session thereof for holding court.

CREDIT(S)

*Amended May 29, 1986, effective July 1, 1986.*

HISTORICAL NOTES

REPORTER'S NOTES

2002 Main Volume

Rule 2 is perhaps the most significant of the rules in advancing the trend toward a high degree of procedural fairness in the administration of criminal justice. This is so because the rule not only permits but requires the rules to be construed and applied in a manner which provides for fairness in their administration to the end that a just determination in every criminal proceeding shall be achieved. The rules must be approached with sympathy for this purpose; they must be interpreted with common sense.

The rules were not intended to be administered inflexibly without regard for the circumstances of the particular case. Where a literal interpretation of a rule and its application in a specific situation would lead to unnecessary expense or delay, would unduly complicate the proceedings, or would operate unfairly or produce an unjust result, that interpretation is to yield to the principle enunciated in Rule 2(a).

This is not to imply that the rules were conceived as merely guidelines or suggested procedures to which the courts and counsel need adhere only as will further their particular interests. They have the force and effect of law.

The appellate courts have made it increasingly clear that abuse of power by the prosecution or by trial judges is not to be tolerated. See e.g., S.J.C. Rule 3:22A, Disciplinary Rules Applicable to Practice as a Prosecutor or as a Defense Lawyer, PF 1-14 (Feb. 14, 1979); Commonwealth v. St. Pierre, Mass.Adv.Sh. (1979) 834, 387 N.E.2d 1135; Commonwealth v. Soares, Mass.Adv.Sh. (1979) 593, 387 N.E.2d 499; Commonwealth v. Ellison, Mass.Adv.Sh. (1978) 2072, 379 N.E.2d 560; Commonwealth v. Earltop, Mass.Adv.Sh. (1977) 532, 539, 361 N.E.2d 220 (Hennessey, C.J., concurring); Commonwealth v. Redmond, 370 Mass. 591, 351 N.E.2d 501 (1976); Commonwealth v. Sneed, Mass.Adv.Sh. (1978) 3156, 383 N.E.2d 843. It is equally apparent that a high standard of conduct is demanded of defense counsel. See S.J.C. Rule 3:22A, supra, DF 1-15. A disregard for these rules of court or a failure to adhere to their provisions are abuses of the system which can be expected to produce problems in the administration of justice and unfairness to the Commonwealth, defendants, and the public, and which, therefore, should not be tolerated by either the trial or appellate courts.

***3859** Subdivision (a). The language of the first paragraph is drawn virtually without change from Fed.R.Crim.P. 2. These rules are intended to minimize complicated proceedings and needless expense and delay and are to be construed so as to achieve that goal.

The principle of construction stated in subdivision (a)(1) is taken from G.L. c. 4, § 6, cl. fourth, which relates to the construction of the General Laws.

Subdivision (a)(2) is designed to avoid any confusion in reading references to subdivisions. Included in a reference to a subdivision are all

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

paragraphs, subparagraphs, and clauses of that subdivision.

Subdivision (b). These definitions are to be used in construing these rules unless a contrary interpretation is clearly demanded by the context within which the term is used. See G.L. c. 4, § 7; c. 3, § 63.

(1) Appointed Counsel. This definition is suggested by Superior Court Rule 53(3) (1974); it is to be distinguished from "Assigned Counsel," infra.

(2) Assigned Counsel. The terms "appointed counsel" and "assigned counsel" have been used interchangeably in the case law. See e.g., Costarelli v. Municipal Court of the City of Boston, 367 Mass. 35, 323 N.E.2d 859 (1975). However, for the purposes of these rules, each term has been given a separate and distinct definition. In these rules, "assigned counsel" means a member of a publicly funded or charitable organization, such as the Massachusetts Defenders Committee (G.L. c. 221, § 34D. See Rule 8[b] ), or a county defender. "Appointed counsel" denotes a private attorney who is designated by a judge or magistrate to represent a defendant who cannot afford counsel. Both assigned and appointed counsel may include senior law students appearing without compensation on behalf of indigent defendants as permitted by S.J.C. Rule 3:11 (1974: 366 Mass. 867, as amended, 1975; 367 Mass. 914).

(3) Capital Crime. This definition is drawn from existing case law, e.g., Commonwealth v. Capalbo, 308 Mass. 376, 32 N.E.2d 225 (1941); Commonwealth v. Ibrahim, 184 Mass. 255, 68 N.E. 231 (1903); Green v. Commonwealth, 94 Mass. (12 Allen) 155 (1866). Compare G.L. c. 278, § 33E (capital crime defined "for the purposes of ... [appellate] review" only). General Laws c. 274, § 2 provides that, "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon." Therefore, an indictment of a defendant as an accessory before the fact of first degree murder sets out a capital crime. Grady v. Treasurer of the County of Worcester, 352 Mass. 702, 704, 227 N.E.2d 490 (1967).

***3860** (4) Commonwealth. The definition of this term reflects the meaning of the word as commonly used in the case law and statutes.

(5) Court. This term is used in the rules to include those officials most intimately involved in the process of adjudicating cases. When so generically used, the word is not to be construed so as to expand or limit those duties traditionally or by law within the prerogative of certain officials.

(6) District Attorney or Attorney General. As with "Commonwealth," supra, these terms are used both in the sense of the office and the personnel thereof in their official capacity.

(7) District Court. General Laws c. 211B, § 1 (inserted by St.1978, c. 478,§ 110) established the Trial Court of the Commonwealth which consists in part of the Superior Court Department, the District Court Department, the Boston Municipal Court Department, and the Juvenile Court Departments. For ease of reference throughout these rules, the latter three Departments are included within the term "District Court."

It is in keeping with the policy of these rules to secure simplicity and uniformity in procedure to make the Juvenile Court Department subject to these rules, insofar as they are consistent with juvenile practice. See District Court Special Rule 2 (1974), which applies the rules of the District Court to juvenile proceedings insofar as they are "pertinent."

(8) Interested Person. This term specifies those persons who are entitled to notice of, for example, the filing of motions, Mass.R.Crim.P. 13, 32, or the taking of a deposition, Mass.R.Crim.P. 36.

(9) Judge. In addition to its accepted meaning, for purposes of these rules this term is to include a magistrate when used in reference to a function which that official is authorized to perform by Mass.R.Crim.P. 48.

(10) Juvenile Court. See G.L. c. 211B, § 1 (inserted by St.1978, c. 478, § 110), c. 218, §§ 57-60 (St.1978, c. 478, §§ 212-16).

The divisions of the Juvenile Court Department, within their respective jurisdictions, have and exercise the same powers, duties and procedures as the District Court or Municipal Court Departments and are subject to the laws relating thereto, so far as applicable. G.L. c. 218, § 59 (as amended, St.1978, c. 478, § 215).

***3861** (11) Mailing. It is intended that unless specifically provided for elsewhere in these rules, neither registered nor certified mailing is required.

(12) Prosecuting Attorney. This term includes those attorneys who prosecute the majority of criminal cases in the Commonwealth.

(13) Prosecutor. This definition is broader than that of "prosecuting attorney," and reflects the fact that many cases in the District Courts are prosecuted by a police prosecutor. Under these rules, some prosecutorial functions can be carried on only by a district attorney or attorney general. See e.g., Mass.R.Crim.P. 15(d)(1)(B). A prosecutor may include senior law students appearing on behalf of the Commonwealth pursuant to S.J.C. Rule 3:11 (1974: 366 Mass. 867, as amended, 1975; 367 Mass. 914).

(14) Related Offense. For further explanation of this definition, see Mass.R.Crim.P. 9 and Reporter's Notes.

(15) Return Day. The "return day" is the date upon which a defendant under arrest first appears in court or the date upon which a defendant not under arrest is scheduled to appear pursuant to summons. It is the date upon which speedy trial rights attach ( Mass.R.Crim.P. 36[b][1] ) and from which other time limits are measured.

(16) Special Magistrate. The office of "Special Magistrate" is defined in terms of its powers and duties. See Mass.R.Crim.P. 47. Special Magistrates are to be distinguished from "Magistrates in the Trial

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Court" under G.L. c. 221, §§ 62B-62C (inserted by St.1978, c. 478, § 250).

(17) Summons. This definition includes process issued pursuant to Mass.R.Crim.P. 6 and 17. The definitions contained in subdivisions (b)(17)(B) and (C) of this rule replace the older term "subpoena."

(18) Superior Court. See G.L. c. 211B, § 1 (inserted by St.1978, c. 478, § 110), c. 212 (as amended, St.1978, c. 478, §§ 115-25).

***3862** REFERENCES

CROSS REFERENCES

Construction of statutes, see M.G.L.A. c. 4, §§ 6, 7.

LIBRARY REFERENCES

2002 Main Volume

Courts ⚷85.
Westlaw Topic No. 106.
C.J.S. Courts § 130.

RESEARCH REFERENCES

Treatises and Practice Aids

41 Mass. Prac. Series § 5:19, Table Of Court Rules.

41 Mass. Prac. Series RAP R 8, The Record On Appeal.

30 Mass. Prac. Series § 74, Definition Of Arrest Warrant.

30 Mass. Prac. Series § 83, Summons Must Issue Unless Cause Shown For Issuance Of Warrant.

30 Mass. Prac. Series § 485, The Right To Bail In Capital Cases.

30 Mass. Prac. Series § 594, Importance Of The Rule.

30 Mass. Prac. Series § 617, By Complaint-Superior Court.

30 Mass. Prac. Series § 636, Capital Crime-Defendant Cannot Waive Indictment.

30 Mass. Prac. Series § 639, Written Waiver Of Indictment Must Be Filed.

30 Mass. Prac. Series § 792, The Persons Who May Present Evidence To The Grand Jury.

30 Mass. Prac. Series § 798, Grand Jury May Require Witness To Furnish Things Not Testimonial In Character.

30 Mass. Prac. Series § 845, Introduction.

30 Mass. Prac. Series § 850, Contents Of Summons.

30 Mass. Prac. Series § 855, Service Of Summons-Manner.

30 Mass. Prac. Series § 881, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 885, Introduction.

30 Mass. Prac. Series § 890, Procedure At Initial Appearance-Interview By Probation Department.

***3863** 30 Mass. Prac. Series § 951, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 967, Difference Between Appointed And Assigned Counsel.

30 Mass. Prac. Series § 973, District Court.

30 Mass. Prac. Series § 1158, Presence Of Judge Or Special Magistrate Is Not Required.

30 Mass. Prac. Series § 1167, Time Of Filing.

30 Mass. Prac. Series § 1191, Text Of Rule And Reporter's Notes.

30 Mass. Prac. Series § 1271, Text Of Rule And Reporter's Notes.

30A Mass. Prac. Series § 1388, Evidence Must Be In Possession, Custody, Or Control Of Prosecutor.

30A Mass. Prac. Series § 1480, Approval Of District Attorney Or Attorney General Necessary Before Commonwealth May Appeal.

30A Mass. Prac. Series § 1516, Persons Authorized To File Nolle Prosequi.

30A Mass. Prac. Series § 1545, Type Of Summons Discussed In The Rule.

30A Mass. Prac. Series § 1561, Introduction.

30A Mass. Prac. Series § 1573, Manner Of Service.

30A Mass. Prac. Series § 1623, Procedure If Defendant Absents Himself During Trial-If Case Is Capital Crime.

30A Mass. Prac. Series § 1649, Jury Trial Cannot Be Waived In Capital Case.

30A Mass. Prac. Series § 2064, Motion For A New Trial In Capital Cases.

30A Mass. Prac. Series § 2239, Notice Of Hearing On Motion.

30A Mass. Prac. Series § 2261, Text Of Rule And Reporter's Notes.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

30A Mass. Prac. Series § 2274, Time When Defendant Must Be Brought To Trial.

30A Mass. Prac. Series § 2323, Dismissal Of Related Charges.

30A Mass. Prac. Series § 2632, Delinquency Proceedings And The Criminal Rules.

44 Mass. Prac. Series § 41, Contempt.

***3864** 17B Mass. Prac. Series § 51.1, In General.

17C Mass. Prac. Series § 59.78, Discovery.

14 Mass. Prac. Series § 4.13, Objections.

14 Mass. Prac. Series § 4.55, Right To Appeal Criminal Interlocutory Orders.

14 Mass. Prac. Series § 4.72, Authority Of Trial Court To Issue Report.

14 Mass. Prac. Series § 4.74, Report Of Interlocutory Matter.

14 Mass. Prac. Series § 4.96, Stays In Criminal Cases.

14B Mass. Prac. Series § 14.62, Structure Of Juvenile Court System-In General.

## UNITED STATES CODE ANNOTATED

Purpose and construction of rules, see Fed.Rules Cr.Proc. Rule 2, 18 U.S.C.A.

## ANNOTATIONS

## NOTES OF DECISIONS

In general 1/2
Contempt 4
Parties 1
Probable cause determination 6
Reporters' notes 3
Return day 2
Written statement 5

1/2. In general

Application for issuance of process, which may be presented by lay persons or police officers, requests authority of a court to make an arrest or issue a summons, and thus it requires magistrate to exercise good deal of discretion, whereas an application for complaint does not call on the magistrate to exercise substantial discretion, in that it does not call on court to issue process, the arrest is already accomplished, it does not require approval of the validity of the arrest or assess the potential strength of the prosecution, and it is merely an aid to facilitating preparation of the complaint. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑211(1); Criminal Law🔑217

1. Parties

Term "district attorney" within Rule 15 governing who may authorize interlocutory appeal by the Commonwealth from granting of suppression motion includes assistant district attorneys. Com. v. Dellicolli (1980) 410 N.E.2d 742, 10 Mass.App.Ct. 909, review denied 441 N.E.2d 1042, 383 Mass. 890. District And Prosecuting Attorneys 🔑3(4)

***3865** If the allegedly aggrieved person files a complaint for civil contempt seeking payment of court-ordered support and is represented by private counsel, the probation department would appear to have no rule in prosecuting the case, at least when no public assistance is being provided, but if the contempt hearing includes both civil and criminal features, the plaintiff who initiated the proceedings could act in place of a prosecutor because private parties to civil litigation have the right to press both the civil and criminal aspects of the case. Furtado v. Furtado (1980) 402 N.E.2d 1024, 380 Mass. 137. Child Support 🔑473; Child Support 🔑497

2. Return day

Where return day, the day defendant was first before court to answer to charges against him, fell within second 12-month period after effective date of Rules of Criminal Procedure, defendant was to be tried within 18 months. Com. v. Farris (1983) 455 N.E.2d 433, 390 Mass. 300. Criminal Law 🔑577.8(1)

3. Reporters' notes

Reporters' Notes are an influential guide when interpreting Rules of Criminal Procedure. Com. v. Sheridan (1996) 667 N.E.2d 279, 40 Mass.App.Ct. 700. Courts 🔑85(3)

4. Contempt

Although the Massachusetts Rules of Criminal Procedure pertaining to contempt apply only to proceedings in the Superior, District, Juvenile, and Boston Municipal Courts, judges of other courts possess similar contempt powers under the common law and by statute. Com. v. Rogers (1999) 703 N.E.2d 1199, 46 Mass.App.Ct. 109, review denied 709 N.E.2d 1119, 429 Mass. 1102. Contempt 🔑33

5. Written statement

Rule requiring written statement constituting basis for arrest to be attached to application for complaint was satisfied, even though formal application for complaint was not filed, given that judge considered state police report and booking sheet, report set forth in detail that defendant had been target of month-long narcotics investigation, and that defendant was arrested after search of home and vehicle pursuant to

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

warrant revealed that drugs were found in both places. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑211(1)

6. Probable cause determination

Failure to make prompt judicial determination of probable cause or to admit defendant to bail within requisite time would not have been enough to require dismissal of possession of controlled substance with intent to distribute and school zone violation charges, even if claim had been timely made, and police did not measure distance from school to home at which drugs were found prior to arrest, given that defendant did not demonstrate prejudice in trial or interference with procedural rights therein, police would have taken necessary measurements of distance prior to hearing, and purported prejudice had little to do with evidence. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Bail 🔑42; Criminal Law 🔑223

***3866** State did not have to present clerk-magistrate with facts showing probable cause for school zone violation when complaint was issued, even though police report made no mention of fact that defendant's home where drugs were found was within 1,000 feet of school, where case was commenced by warrantless arrest, which required showing of probable cause for each charge at probable cause determination, not when complaint was issued, and when complaint was issued, police only had to show basis for arrest. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Criminal Law 🔑212

Complaint procedure in arrest cases does not include a probable cause determination. Com. v. Arias (2002) 778 N.E.2d 523, 55 Mass.App.Ct. 782, review denied 777 N.E.2d 1263, 438 Mass. 1101. Arrest 🔑70(2)

Current with amendments received through Jan. 1, 2004

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***768** 97 S.Ct. 768

429 U.S. 1053, 50 L.Ed.2d 770

Supreme Court of the United States

Ellis Lorraine THOMPSON
v.
State of OKLAHOMA

No. 76-5283
January 10, 1977

On petition for writ of certiorari to the Court of Criminal Appeals of Oklahoma.

Jan. 10, 1977. Mr. Justice BRENNAN, with whom Mr. Justice MARSHALL joins, dissenting.

Petitioner was charged by information in Oklahoma state court with murder. After a jury trial, he was convicted of Manslaughter in the First Degree. Thereafter, petitioner was charged in separate informations with two additional offenses arising out of the same episode: Burglary in the First Degree and Carrying a Firearm. He pleaded guilty to these offenses and was sentenced to additional concurrent terms of 10 years imprisonment for each offense. Petitioner then made an application for postconviction relief in the state district court attacking the latter two convictions on grounds of collateral estoppel and double jeopardy. The district court denied the application, and the Oklahoma Court of Criminal Appeals affirmed.

I would grant the petition for certiorari and reverse the judgment of the Court of Criminal Appeals affirming the [429 U.S. 1054] burglary and firearm convictions. I adhere to the view that the Double Jeopardy Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, requires the prosecution in one proceeding, except in extremely limited circumstances not present here, of "all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." Ashe v. Swenson, 397 U.S. 436, 453-454, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). See Cousins v. Maryland, 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); Dempsey v. United States, 423 U.S. 1079, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976) (Brennan, J., dissenting); Susi v. Flowers, 423 U.S. 1006, 96 S.Ct. 436, 46 L.Ed.2d 378 (1975) (Brennan, J., dissenting); Vardas v. Texas, 423 U.S. 904, 96 S.Ct. 206, 46 L.Ed.2d 135 (1975) (Brennan, J., dissenting); Stewart v. Iowa, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975) (Brennan, J., dissenting); Waugh v. Gray, 422 U.S. 1027, 96 S.Ct. 2622, 45 L.Ed.2d 684 (1975) (Brennan, J., ***769.** dissenting); Wells v. Missouri, 419 U.S. 1075, 95 S.Ct. 665, 42 L.Ed.2d 671 (1974) (Brennan, J., dissenting); Moton v. Swenson, 417 U.S. 957, 94 S.Ct. 3086, 41 L.Ed.2d 675 (1974) (Brennan, J., dissenting); Tijerina v. New Mexico, 417 U.S. 956, 94 S.Ct. 3085, 41 L.Ed.2d 674 (1974) (Brennan, J., dissenting); Ciuzio v. United States, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974) (Brennan, J., dissenting); Harris v. Washington, 404 U.S. 55, 57, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971) (concurring statement); Waller v. Florida, 397 U.S. 387, 395, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1975) (Brennan, J., concurring). See also People v. White, 390 Mich. 245, 212 N.W.2d 222 (1973); State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972); Commonwealth v. Campana, 452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), adhered to on remand, 455 Pa. 622, 314 A.2d 854 (1974); State v. Gregory, 66 N.J. 510, 333 A.2d 257 (1975).

The petition for a writ of certiorari is denied.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

***2912** 97 S.Ct. 2912

433 U.S. 682, 53 L.Ed.2d 1054

Supreme Court of the United States

Thomas Leon HARRIS
v.
State of OKLAHOMA.

No. 76-5663.
June 29, 1977.

Defendant was convicted in the District Court, Tulsa County, of robbery with firearms, and he appealed. The Court of Criminal Appeals, 555 P.2d 76, affirmed. Petition for writ of certiorari was granted. The Supreme Court held that where proof of underlying felony, i. e., robbery with firearms, was necessary to establish intent necessary for felony-murder conviction of petitioner for fatal shooting of grocery store clerk during armed robbery the double jeopardy clause barred subsequent prosecution and conviction for robbery with firearms.

Reversed.

Mr. Justice Brennan, with whom Mr. Justice Marshall joined, filed concurring statements.

West Headnotes

[1] Double Jeopardy 164

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(B) Included Offenses
135Hk164 Ruling on Greater as Bar to Prosecution for Lesser Offense.

(Formerly 110k199)

When conviction for a greater crime cannot be had without conviction for the lesser crime, the double jeopardy clause bars prosecution for the lesser crime after conviction for the greater one. U.S.C.A.Const. Amend. 5.

[2] Double Jeopardy 164

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(B) Included Offenses
135Hk164 Ruling on Greater as Bar to Prosecution for Lesser Offense.

(Formerly 110k200(1))

Since under Oklahoma law proof of underlying felony, i. e., robbery with firearms, was required to prove intent necessary for felony-murder conviction for fatal shooting of grocery store clerk during armed robbery, double jeopardy clause precluded subsequent prosecution and conviction of petitioner for robbery with firearms. U.S.C.A.Const. Amend. 5.

PER CURIAM.

A cleark in a Tulsa, Okla., grocery store was shot and killed by a companion of petitioner in the course of a robbery of the store by the two men. Petitioner was convicted of felony-murder in Oklahoma State court. The opinion of the Oklahoma Court of Criminal Appeals in this case states that '[i]n a felony murder case, the proof of underlying felony [here robbery with firearms] is needed to prove the intent necessary for a felony murder conviction.' 555 P.2d 76, 80-81 (1976). Petitioner nevertheless was thereafter brought to trial and convicted on a seperate information charging the robbery with firearms, after denial of his motion to dismiss on the ground that this prosecution violated the Double Jeopardy ***2913.** Clause of the Fifth Amendment because he had been already convicted of the offense in the felony-murder trial. The Oklahoma Court of Criminal Appeals affirmed.

1,2° When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one. (FN*) *In re [433 U.S. 683] Neilsen, 131 U.S. 176, 9 S.Ct. 672, 33 LEd. 118 (1889); cf. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).* '[ ] person [who] has been tried and convicted for a crime which has various incidents included in it, .... cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence. ' *In re Nielsen, supra,* 131 U.S., at 188, 9 S.Ct. at 676. See also *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Grafton v. United States,* 206 U.S. 333, 352, 27 S.Ct. 749, 754, 51 L.Ed. 1084 (1907).

The motion for leave to proceed *in forma pauperis* is granted, the petition for writ of certiorari is granted, and the judgment of the Court of Criminal Appeals is *Reversed.*

Mr. Justice BRENNAN, with whom Mr. Justice

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

MARSHALL joins, concurring.

I join the Court's opinion but in any event would reverse on a ground not addressed by the Court, namely, that the State did not prosecute the two informations in one proceeding. I adhere to the view that the Double Jeopardy Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, requires the prosecution in one proceeding, except in extremely limited circumstances not present here, of 'all the charges against a defendant that grow out of a single criminal act, occurence, episode, or transaction. ' *Ashe v. Swenson,* 397 U.S. 436, 453-454, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). See *Thompson v. Oklahoma,* 429 U.S. 1053, 97 S.Ct. 768, 50 L.Ed.2d 770 (1977) (Brennan, J., dissenting from denial of certiorari), and cases collected therin.

(FN*) The State conceded in its response to the petition for certiorari that 'in the Murder case, it was necessary for all the ingredients of the underlying felony of Robbery with Firearms to be proved . . . .' Brief in Opposition 4.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.